Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY MILLAR, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>EXPRESS TECHNOLOGIES, LTD.,<br><br>*Defendant.* | Case No. 8:25-cv-1273<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Class Action Complaint                                    Case No. 8:25-cv-1273

# Table of Contents

I.    Summary of the case..................................................................................1

II.   Parties. ....................................................................................................1

III.  Jurisdiction and Venue. ............................................................................2

IV.   Facts........................................................................................................4

      A.    California's Automatic Renewal Law. ..............................................4

      B.    ExpressVPN violates the Automatic Renewal Law...........................6

      C.    ExpressVPN illegally charged Mr. Millar for an automatic

            subscription. ............................................................................ 10

V.    Class Action Allegations........................................................................ 10

VI.   Claims. .................................................................................................. 11

      Count 1: False Advertising Law (FAL) .................................................. 11

      Count 2: Unfair Competition Law (UCL) .............................................. 12

VII.  Relief..................................................................................................... 14

VIII. Demand for Jury Trial............................................................................ 14

**I.    Summary of the case.**

1.    Companies that sell goods or services online often boost sales by enrolling customers in automatically renewing subscriptions.  Some companies fail to make clear to consumers that they are being signed up for automatic charges.

2.    To protect Californians from this practice, California passed the Automatic Renewal Law (the ARL). The ARL requires companies who sign consumers up for automatically renewing purchases to provide "clear and conspicuous" disclosures about the autorenewal plan and obtain "affirmative consent" to enroll consumers.

3.    Defendant Express Technologies Ltd. ("ExpressVPN") sells automatically renewing subscriptions to its virtual private network services. But ExpressVPN does not provide the required clear and conspicuous disclosures or obtain affirmative consent. This violates the Automatic Renewal Law and related California consumer protection laws.

4.    In September of 2022, Plaintiff Mr. Millar purchased one month of ExpressVPN's virtual private network services. Due to ExpressVPN's misleading advertisements and deficient disclosures, he thought he was making a one-time purchase of one-month of the service. Unbeknownst to him and without his consent, ExpressVPN enrolled him in an automatically renewing monthly plan. In October of 2022, ExpressVPN automatically charged his card for $12.95.  That charge was illegal and should be refunded. He noticed the unwanted charge on his credit card bill and cancelled the plan to stop ExpressVPN from charging him again.  Mr. Millar brings this case for himself and all other California consumers that were charged illegal autorenewal fees.

**II.    Parties.**

5.    Plaintiff Timothy Millar is domiciled in Santa Ana, California.

6.    The proposed class includes citizens of California.

7.    Defendant Express Technologies Ltd. is a British Virgin Islands corporate entity with its headquarters in Tortola, British Virgin Islands.

**III.    Jurisdiction and Venue.**

8.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

9.    The Court has personal jurisdiction over ExpressVPN because it both purposefully avails itself of California and purposefully directs its activities here.

10.    ExpressVPN exploits the California market, to enter contracts with California consumers. It directs its advertising specifically at California. For example, a Google search for "ExpressVPN California" yields the following sponsored hit (a Google keyword advertisement purchased by ExpressVPN). This ad claims that "The best VPN For California is ExpressVPN."



11.    Clicking this ad takes consumers to an ExpressVPN interactive webpage dedicated to soliciting California subscribers. As shown below, ExpressVPN claims to offer the "Best California VPN servers" with "Multiple locations in California" and explains "How to get a California VPN": [1]

---

[1] https://www.expressvpn.com/vpn-server/us-vpn/california-vpn?srsltid=AfmBOooI_I3_zrfafMo8sYFtEhIyg8Jt6bjrgNx38srEvCQdA0v7ioIB

Class Action Complaint                2                Case No. 8:25-cv-1273

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



Exhibit 1

21    12.    The full page goes on to explain "Why use a VPN in California?" It

22  advertises that users can "Stream California sports teams with a VPN," and "Download a

23  California VPN for all your devices." *See* Exhibit 1.  The page has a "California VPN"

24  "FAQ" that states "Connecting to the internet through a VPN is a good idea for all

25  Californians," the "best VPN for California is ExpressVPN," and "If you're looking for a

26  free California VPN, take advantage of our 30-day money-back guarantee." *Id.*

27    13.    To service the California businesses it solicits, ExpressVPN controls physical

28  servers located in California (in Los Angeles, San Francisco, and Santa Monica). For these

servers, ExpressVPN's related contracts would be centered in California (the location of the server).



Exhibit 1

14.    Plaintiff's claims arise out of Defendant's contacts with this forum. Due to Defendant's actions, Mr. Millar purchased an ExpressVPN subscription in California and was illegally autorenewed and charged here.

15.    Venue is proper because ExpressVPN is a foreign resident. *See* 28 U.S.C. § 1391(c)(3) ("a defendant not resident in the United States may be sued in any judicial district"). In any case, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here. Plaintiff purchased ExpressVPN services in Santa Ana, California, and was automatically renewed there.

**IV.    Facts.**

**A.    California's Automatic Renewal Law.**

16.    The Automatic Renewal Law ("ARL") is part of California's False Advertising Law.  The purpose of the ARL is to "end the practice of ongoing" subscription charges "without the consumers' explicit consent." Cal. Bus. & Prof. Code §17600.  To this end, the law makes it illegal for companies to charge consumers for

Class Action Complaint                    4                    Case No. 8:25-cv-1273

automatically renewing subscriptions, unless the company meets strict disclosure and consent requirements.

17.    Under the ARL, a company must "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer." Cal. Bus. & Prof. Code §17602(a)(1).

18.    Also, if "the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial." Cal. Bus. & Prof. Code § 17602(a)(1).

19.    The "automatic renewal offer terms" that must be presented include:

    1)    That the subscription or purchasing agreement will continue until the consumer cancels.

    2)    The description of the cancellation policy that applies to the offer.

    3)    The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

    4)    The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

    5)    The minimum purchase obligation, if any.

Cal. Bus. & Prof. Code §17601(a)(2).

20.    A "clear and conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code §17601(a)(3).

21.     After presenting all of this information, the company must then obtain the "consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms."  Cal. Bus. & Prof. Code §17602(a)(2).

22.     The ARL also has post-purchase acknowledgment requirements (required in addition to the pre-purchase requirements described above). The post-purchase acknowledgment must include "the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code §17602(a)(3).

23.     If a company automatically charges a consumer for products, in violation of the ARL, the products are deemed an "unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business." Cal. Bus. & Prof. Code §17603. So if a company charges a consumer for an automatically renewing subscription, in violation of the ARL, the charges are illegal and must be refunded.

**B.     ExpressVPN violates the Automatic Renewal Law.**

24.     ExpressVPN sells virtual private network and related security services through its website, www.expressvpn.com. Around the time that Mr. Millar purchased the service, in the fall of 2022, here is what the sign-up page looked like:

Exhibit 2 (Internet Archive Capture December 1, 2022) [2]

25.    The "1 Month" price of $12.95 is in large, bold text. In contrast, the words "Billed every month" are in tiny, grey text that fades into the background.

26.    Lower down on this same screen, consumers enter their email and payment info:

_____

[2] https://archive.org/about/ ("The Internet Archive, a 501(c)(3) non-profit, is building a digital library of Internet sites and other cultural artifacts in digital form").

Exhibit 2

27.    Again, the words "billed monthly" are in small, faded grey text that gets lost amongst the large, bold statements and colors.

28.    This enrollment process violates the ARL.  Under the ARL, a "clear and conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code §17601(3). ExpressVPN's purported disclosure is in smaller (not larger) font than the surrounding text. The faded-grey text is low contrast so that it fades into the background. The text is not set off from the surrounding text in a manner that clearly calls attention to it.  Instead, the small font and low contrast are designed to go unnoticed.

29.    Express VPN also fails to require the user to press a button confirming that the consumer is consenting to automatic renewal (it does not say, for example: "By clicking Join Now, I agree to automatically recurring charges of $12.95 a month.").

30.    The purported disclosures also fail to say that the subscription will continue until the consumer cancels and fail to include a description of the cancellation policy.

31.    ExpressVPN also fails to send consumers a compliant post-purchase acknowledgment. The post-purchase acknowledgment must include "the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code §17602(a)(3).  This all Mr. Millar's post-purchase email said about the subscription:



PLAN
1 month

PRICE
12.95 USD billed monthly
Save 35% with the 12-month plan

PAYMENT METHOD
Credit card

SETTINGS
Manage your account
Reset your password

Exhibit 3

32.    This email does not say that the charges will automatically recur until the consumer cancels. There is nothing about the cancellation policy and no description of how to cancel.

33.    In sum, ExpressVPN violates the Automatic Renewal Law in nearly every way.  It fails to clearly and conspicuously disclose the automatic renewal terms, get

Class Action Complaint                              9                              Case No. 8:25-cv-1273

affirmative consent, or provide a compliant post-purchase acknowledgment. As a result, its automatic charges are illegal and must be refunded.

> **C.    ExpressVPN illegally charged Mr. Millar for an automatic subscription.**

34.    Mr. Millar purchased 1 month of ExpressVPN, via the ExpressVPN website, on September 10, 2022. His enrollment process was substantially similar to the process described above. When he signed up, he thought he was just buying one month of ExpressVPN for $12.95. He did not expect, want, or consent to automatic renewal.

35.    The next month, on October 10, 2022, ExpressVPN automatically charged Mr. Millar's card for another $12.95. He noticed the charge on his credit card and was surprised. He then cancelled the service so he would not be charged again.

36.    If ExpressVPN had complied with the ARL and made clear that it was going to automatically charge Mr. Millar in this way, he would not have signed up in the first place or would have cancelled before he was automatically charged.

37.    Mr. Millar has no adequate remedy at law. The equitable claims asserted (the UCL and FAL) offer relief, including restitution, that is more prompt, certain, and efficient than legal damages.

## V.    Class Action Allegations.

38.    Mr. Millar brings his claims for the following Class: All persons in California who enrolled in an ExpressVPN plan through the website and were charged for at least one automatically recurring payment during the statute of limitations.

39.    The following people are excluded from the Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and

Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

40.    The proposed class contains members so numerous that it is impractical to bring every individual claim.  There are at least tens of thousands of class members.

41.    Class members can be identified through Defendant's sales records and public notice.

### *Predominance of Common Questions*

42.    Common questions of law and fact predominate over individual issues. Common questions of law and fact include, without limitation: (1) whether the automatic renewal plans violate the ARL and California consumer protection law and; (2) restitution needed to compensate Plaintiff and the class.

### *Typicality and Adequacy*

43.    Plaintiff's claims are typical of the class. Like the class, Plaintiff was illegally charged for a subscription in California.  There are no conflicts of interest between Plaintiff and the class.

### *Superiority*

44.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### Count 1: False Advertising Law (FAL)

45.    Plaintiff incorporates the facts alleged above.

46.    Plaintiff brings this claim individually and for the Class.

47.    The FAL authorizes a private right of action for any violation of Chapter 1, including the ARL. See Cal. Bus. & Prof. Code § 17535 (actions can be brought by "any

person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter"); § 17602 (ARL); *see Arnold v. Hearst Magazine Media, Inc.*, 2021 U.S. Dist. LEXIS 25706, at *17-18 (S.D. Cal. Feb. 10, 2021) (explaining how the FAL authorizes a private right of action under the ARL).

48.    Defendant violated Section 17500 by disseminating misleading advertisements concerning the automatically renewing nature of ExpressVPN plans. As described in detail above, ExpressVPN's advertising of the subscriptions (and its failure to display ARL compliant disclosures) misled reasonable consumers about the automatically renewing nature of the plans.

49.    The same conduct violates Section 17602 (the ARL). As alleged in detail above, Defendant violated the ARL by failing to clearly and conspicuously present its automatic renewal terms, failing to get affirmative consent, and failing to send a compliant post-purchase acknowledgment.

50.    Defendant should have known that its violations were misleading to reasonable consumers.

51.    Plaintiff relied upon Defendant's misleading representations and omissions.

52.    Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy ExpressVPN plans or deciding when to cancel.

53.    Defendant's violations were a substantial factor and proximate cause of economic harm to Plaintiff and class members.

## Count 2: Unfair Competition Law (UCL)

54.    Plaintiff incorporates the facts alleged above.

55.    Plaintiff brings this claim individually and for the Class.

*Unlawful*

56.    Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.  Defendant committed unlawful practices because, as alleged above and incorporated here, it violated the ARL and FAL.

Class Action Complaint                    12                    Case No. 8:25-cv-1273

*Unfair*

57.    As alleged in detail above, Defendant committed unfair acts by enrolling consumers in automatically recurring subscriptions, in violation of the ARL and FAL.

58.    The harm to Plaintiff and the class greatly outweighs the public utility of Defendant's conduct.  There is no public utility to illegal automatic renewal practices. This injury was not outweighed by any countervailing benefits to consumers or competition.  Illegal auto-renewal practices only injure healthy competition and harm consumers.

59.    Plaintiff and the class could not have reasonably avoided this injury. Defendant's representations and omissions were deceiving to reasonable consumers like Plaintiff. There were reasonably available alternatives to further Defendant's legitimate business interests, such as complying with the ARL.

60.    Defendant violated established public policy by violating the ARL.  The unfairness of this practice is tethered to a legislatively declared policy (that of the FAL and ARL).

61.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

*Deceptive*

62.    As alleged in detail above, Defendant committed deceptive acts by enrolling consumers in automatically recurring subscriptions, in violation of the ARL.

63.    Defendant's representations and deficient ARL disclosures were misleading to Plaintiff and other reasonable consumers.

64.    Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

65.    Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy ExpressVPN plans or deciding when to cancel.

* * *

66. Defendant's violative conduct was a substantial factor and proximate cause of economic harm to Plaintiff and class members.

## VII. Relief.

67. Plaintiff seeks the following relief for himself and the proposed class:

    i.    An order certifying the asserted claims, or issues raised, as a class action;

    ii.    A judgment in favor of Plaintiff and the class;

    iii.    Recission;

    iv.    Restitution, disgorgement, and other just equitable relief;

    v.    Pre- and post-judgement interest;

    vi.    Reasonable attorneys' fees and costs, as allowed by law; and

    vii.    Any additional relief that the Court deems reasonable and just.

## VIII. Demand for Jury Trial.

68. Plaintiff demands the right to a jury trial on all claims so triable.

Date: June 13, 2025

Respectfully submitted,

By: */s/ Jonas B. Jacobson*
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*