Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY MILLAR and MARCO MARTINEZ, each individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> EXPRESS TECHNOLOGIES, LTD., <br><br> *Defendant.* | Case No. 8:25-cv-01273 <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

First Amended Class Action Complaint                    Case No. 8:25-cv-01273

# Table of Contents

I.      Summary of the case..............................................................................1

II.     Parties. ...............................................................................................2

III.    Jurisdiction and Venue. .......................................................................2

IV.     Facts.................................................................................................7

        A.    California's Automatic Renewal Law. ..........................................7

        B.    ExpressVPN violates the Automatic Renewal Law........................9

        C.    ExpressVPN illegally charged Plaintiffs for automatic subscriptions. .......... 13

        D.    No adequate remedy at law. ....................................................14

V.      Class Action Allegations.....................................................................15

VI.     Claims. ...........................................................................................16

        Count 1: False Advertising Law (FAL) ...............................................16

        Count 2: Unfair Competition Law (UCL) ............................................17

        Count 3: Consumers Legal Remedies Act (CLRA) ................................19

VII.    Relief. .............................................................................................20

VIII.   Demand for Jury Trial. ......................................................................21

**I.    Summary of the case.**

1.    Companies that sell goods or services online often boost sales by enrolling customers in automatically renewing subscriptions. Some companies fail to make clear to consumers that they are being signed up for automatic charges.

2.    To protect Californians from this practice, California passed the Automatic Renewal Law (the ARL). The ARL requires companies who sign consumers up for automatically renewing purchases to provide "clear and conspicuous" disclosures about the autorenewal plan and obtain "affirmative consent" to enroll consumers.

3.    Defendant Express Technologies Ltd. ("ExpressVPN") sells automatically renewing subscriptions to its virtual private network services. But ExpressVPN does not provide the required clear and conspicuous disclosures or obtain affirmative consent. This violates the Automatic Renewal Law and related California consumer protection laws.

4.    In September of 2022, Plaintiff Mr. Millar purchased one month of ExpressVPN's virtual private network services. Due to ExpressVPN's misleading advertisements and deficient disclosures, he thought he was making a one-time purchase of one month of the service. Unbeknownst to him and without his consent, ExpressVPN enrolled him in an automatically renewing monthly plan. In October of 2022, ExpressVPN automatically charged his card for $12.95.  That charge was illegal and should be refunded. He noticed the unwanted charge on his credit card bill and cancelled the plan to stop ExpressVPN from charging him again.

5.    In June of 2023, Plaintiff Mr. Martinez purchased one year of ExpressVPN's virtual private network services. Due to ExpressVPN's misleading advertisements and deficient disclosures, he thought he was making a one-time purchase of one year of the service. Unbeknownst to him and without his consent, ExpressVPN enrolled him in an automatically renewing yearly plan. In June of 2024, ExpressVPN automatically charged his card for $116.95. That charge was illegal and should be refunded. He noticed the unwanted charge and cancelled the card so ExpressVPN could not charge him again.

6.      Plaintiffs bring this case for themselves and other California consumers that were charged illegal autorenewal fees by ExpressVPN.

**II.     Parties.**

7.      Plaintiff Timothy Millar is domiciled in Santa Ana, California.

8.      Plaintiff Marco Martinez is domiciled in Chula Vista, California.

9.      The proposed class includes citizens of California.

10.     Defendant Express Technologies Ltd. is a British Virgin Islands corporate entity with its headquarters in Tortola, British Virgin Islands.

**III.    Jurisdiction and Venue.**

<u>Subject Matter Jurisdiction</u>

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

<u>Personal Jurisdiction</u>

12.     The Court has personal jurisdiction over ExpressVPN because it both purposefully avails itself of California and purposefully directs its activities here.  This was true when Plaintiffs signed up for ExpressVPN and it remains true today.

*Advertisements specifically targeting California consumers*

13.     ExpressVPN directs its advertising specifically at California. Through this advertising, it exploits the California market to enter contracts with California consumers.

14.     Since at least June of 2022, ExpressVPN has been running Google advertisements targeting California consumers. For example, in June of 2022, a Google search for "vpn to california" displayed the following ExpressVPN advertisement:

You can trace every piece of information you see on **SpyFu** back to its source using our cache.

This page was obtained on 06/10/2022 at 1 PM by **SpyFu** while searching for the term **"vpn to california"**

Do you have an ad blocker turned on? It could be hiding the ads that appeared on this page. Once you turn it off, simply refresh this page for an accurate view.

<< Older                                                                                    Newer >>

Google    [ vpn to california                    ×  🎤  🔍 ]

🔍 All    🛒 Shopping    📰 News    🖼 Images    ▶ Videos    ⋮ More              Tools

About 14,700,000 results (0.59 seconds)

Ad · https://www.top10vpn.com/best-vpn/usa    ⋮
**Top 10 Best VPN USA 2022 - The 10 Fastest VPNs of 2022**
Connect Your Devices Securely to the Web with the Best High Bandwidth & Fast VPN
Services. Enjoy Secure Access to the Internet with a VPN. Compare & Find...

**Best Free Windows VPNs**
See the Best Free VPNs for windows. Working with All windows Versions.

**Best Free VPNs for iOS**
See the Best Free VPNs for iOS. Working with All iOS Versions.

Ad · https://www.strongvpn.com/    ⋮
**StrongVPN® For Only $2.47/mo - Limited Time Offer**
Sign Up Today Risk Free With Our Best Offer! Money Back Guarantee.

Ad · https://www.expressvpn.com/    ⋮
**The Best VPN for California - Get a Risk-Free VPN Today**
#1 VPN Service for California: Fast Servers in Los Angeles, San Francisco, and More.

Ex. 1 (ExpressVPN Google advertisement compilation) (June 2022) (red box added).[1] According to ExpressVPN, it is the "Best VPN for California" and the "#1 VPN Service for California," with "Fast Servers in Los Angeles" and "San Francisco."

15.    The advertisement linked to the ExpressVPN website, where California consumers could sign up for ExpressVPN. The linked page advertised ExpressVPN as the "Best VPN for the US," with server locations in "Los Angeles." Ex. 2.[2]  This page recommended that California consumers choose one of ExpressVPN's California servers:

_____

[1] Spyfu is an advertising research service that takes periodic snapshots of historical Google ads, based on target search keywords (www.spyfu.com).

[2] The link in the 2022 Spyfu archive is https://www.expressvpn.com/go/vpn-server/us-vpn-1.

First Amended Class Action Complaint        3            Case No. 8:25-cv-01273

"For best results, choose the server location closest to your actual geographic location."
*Id.*

16.     In August of 2022 (weeks before Mr. Millar signed up), a Google search for
"california vpn" displayed the following ExpressVPN ad:



Ex. 1 (August 2022) (red box added). Similar to the example above, this
advertisement targeted California consumers.

17.     Similar ExpressVPN advertisements—all targeting California— were
running in January 2023, May 2023 (the month before Mr. Martinez signed up), and
November 2023. Ex. 1.

18.     These advertisements still run today. A Google search for "express vpn
california" shows the following advertisement:

Ex. 1 (September 2025).

19.    In sum, when the events underlying this dispute occurred, ExpressVPN was specifically targeting California consumers with its advertisements. And it is still doing so today.

*California servers*

20.    As illustrated by the advertisements above—which advertise ExpressVPN's California servers— since at least June of 2022, ExpressVPN has maintained and advertised California-based VPN server locations (in Los Angeles and San Francisco). And as described above, ExpressVPN recommends that its California customers use these California servers. This is because the geographically closest server is typically fastest.

21.    California consumers can connect to ExpressVPN's California servers through the downloadable apps that ExpressVPN offers for phones, computers, and other devices.  The apps include a Smart Location feature that will recommend the best server. Consistent with ExpressVPN's general recommendation that California consumers select a California server, this is typically a California server for a California consumer.

22.    To service the California businesses it solicits, ExpressVPN controls these physical servers located in California (e.g. in Los Angeles and San Francisco). And for these servers, ExpressVPN's related contracts would be centered in California (the location of the server).

*California affiliates advertising to California consumers*

23.    Since at least January of 2022, ExpressVPN has operated an affiliates program that pays internet influencers to promote ExpressVPN's products. *See* Ex. 3 (January 2022 ExpressVPN affiliates page).

24.      According to ExpressVPN, its program provides affiliates with "dedicated account managers," and "marketing collateral and specialized landing pages tailored for your campaign." *Id.* ExpressVPN also "provide[s] optimization advice covering SEO [Search Engine Optimization], UX, design, and content." *Id.* And ExpressVPN provides affiliates with "affiliate links" to send business to ExpressVPN. Ex. 4 (May 2022 Program Terms Section 3).

25.      Under the program terms, "ExpressVPN reserves the right to view and/or reject any and all advertising creative, display creative, text, images, or other affiliate assets that result in user traffic being directed to our site." Ex. 4 (Section 2).

26.      Under this affiliate program, ExpressVPN helps California content creators sell ExpressVPN subscriptions to California consumers. For example:



Geekman YouTube Video (Uploaded September 28, 2021)[3]

27.      This video uses SEO keywords targeted to California ("Best California VPN" and "Get California IP"). These are similar to the SEO keywords ExpressVPN targets with its Google advertisements (illustrated above). And the video has an ExpressVPN affiliate link that California consumers can click to buy ExpressVPN products: "Exclusive ExpressVPN Discount ➤ https://go.expressvpn.com/LX6Aga."

28.      All of this indicates that ExpressVPN entered an affiliate contract with this content creator, helped him choose keywords targeting California, approved the content targeting California, and provided him with an affiliate link to get paid for referring California consumers to ExpressVPN.

---

[3] Available at https://www.youtube.com/watch?v=lFYdhYjo7QQ.

29.     In sum, ExpressVPN purposefully avails itself of California and purposefully directs its activities here through its California advertisements, its California servers, and its California affiliate advertising. It should be no surprise to ExpressVPN that, if the products it marketed to California consumers violated California law, it could get sued here.

30.     Plaintiffs' claims arise out of Defendant's contacts with this forum. Due to Defendant's actions, Plaintiffs purchased an ExpressVPN subscription in California and were illegally autorenewed and charged here. Both Plaintiffs downloaded the ExpressVPN app to their computers, to use the service in California. As best he can recall, Mr. Millar elected the recommended ExpressVPN server. Given that he was in California, this would have been a California server. Mr. Martinez recalls using the Los Angeles server.

Venue

31.     Venue is proper because ExpressVPN is a foreign resident. *See* 28 U.S.C. § 1391(c)(3) ("a defendant not resident in the United States may be sued in any judicial district"). In any case, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here. Plaintiff Millar purchased ExpressVPN services in Santa Ana, California, and was automatically renewed there.

IV.    **Facts.**

A.    **California's Automatic Renewal Law.**

32.     The Automatic Renewal Law ("ARL") is part of California's False Advertising Law.  The purpose of the ARL is to "end the practice of ongoing" subscription charges "without the consumers' explicit consent." Cal. Bus. & Prof. Code §17600.  To this end, the law makes it illegal for companies to charge consumers for automatically renewing subscriptions, unless the company meets strict disclosure and consent requirements.

33.     Under the ARL, a company must "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the

First Amended Class Action Complaint          7          Case No. 8:25-cv-01273

subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer." Cal. Bus. & Prof. Code §17602(a)(1).

34.     Also, if "the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial." Cal. Bus. & Prof. Code § 17602(a)(1).

35.     The "automatic renewal offer terms" that must be presented include:

    1)     That the subscription or purchasing agreement will continue until the consumer cancels.

    2)     The description of the cancellation policy that applies to the offer.

    3)     The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

    4)     The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

    5)     The minimum purchase obligation, if any.

Cal. Bus. & Prof. Code §17601(a)(2).

36.     A "clear and conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code §17601(a)(3).

37.     After presenting all of this information, the company must then obtain the "consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms." Cal. Bus. & Prof. Code §17602(a)(2).

38.    The ARL also has post-purchase acknowledgment requirements (required in addition to the pre-purchase requirements described above). The post-purchase acknowledgment must include "the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code §17602(a)(3).

39.    If a company automatically charges a consumer for products, in violation of the ARL, the products are deemed an "unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business." Cal. Bus. & Prof. Code §17603. So if a company charges a consumer for an automatically renewing subscription, in violation of the ARL, the charges are illegal and must be refunded.

### B.    ExpressVPN violates the Automatic Renewal Law.

40.    ExpressVPN sells virtual private network and related security services through its website, www.expressvpn.com and www.express-vpn.com. Around the time that Mr. Millar purchased the service, in the fall of 2022, here is what the sign-up page looked like:



Exhibit 5 (Internet Archive Capture December 1, 2022) [4]

41.    The sign-up page was substantially similar when Mr. Martinez signed up in mid-2023. Ex. 6 (September 2023 Order Page archive).

42.    Looking at Exhibit 5, the "1 Month" price of $12.95 is in large, bold text. In contrast, the words "Billed every month" are in tiny, grey text that fades into the background.

43.    Lower down on this same screen, consumers enter their email and payment info:

---

[4] https://archive.org/about/ ("The Internet Archive, a 501(c)(3) non-profit, is building a digital library of Internet sites and other cultural artifacts in digital form").

Exhibit 5.

44.    Again, the words "billed monthly" are in small text that gets lost amongst the large, bold statements and colors.

45.    This enrollment process violates the ARL.  Under the ARL, a "clear and conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code §17601(3). ExpressVPN's purported disclosure is in smaller (not larger) font than the surrounding text. The small text (which is not bolded or highlighted) fades into the background. The text is not set off from the surrounding text in a manner that clearly calls attention to it. Instead, the small font is designed to go unnoticed.

First Amended Class Action Complaint      11            Case No. 8:25-cv-01273

46.    ExpressVPN also fails to disclose "that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known." Cal. Bus. & Prof. Code § 17601(a)(2)(C).

47.    ExpressVPN further fails to require the user to press a button confirming that the consumer is consenting to automatic renewal (it does not say, for example: "By clicking Join Now, I agree to automatically recurring charges of $12.95 a month.").

48.    The purported disclosures also fail to say that the subscription will continue until the consumer cancels and fail to include a description of the cancellation policy.

49.    ExpressVPN also fails to send consumers a compliant post-purchase acknowledgment. The post-purchase acknowledgment must include "the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code §17602(a)(3). This is all Mr. Millar's post-purchase email said about the subscription:



Exhibit 7.

50.    This email does not say that the charges will automatically recur until the consumer cancels. There is nothing about the cancellation policy and no description of how to cancel.

First Amended Class Action Complaint        12        Case No. 8:25-cv-01273

51.    Mr. Martinez has been unable to locate a copy of any post-purchase acknowledgment email sent to him by ExpressVPN, But ExpressVPN has a copy of any such email it sent. Based on the email sent to Mr. Millar, any post-purchase acknowledgment sent to Mr. Martinez was similarly deficient.

52.    In sum, ExpressVPN violates the Automatic Renewal Law in nearly every way.  It fails to clearly and conspicuously disclose the automatic renewal terms, get affirmative consent, or provide a compliant post-purchase acknowledgment. As a result, its automatic charges are illegal and must be refunded.

**C.    ExpressVPN illegally charged Plaintiffs for automatic subscriptions.**

53.    On September 10, 2022, Mr. Millar purchased one month of ExpressVPN's virtual private network services, via the ExpressVPN website. His enrollment process was substantially similar to the process described above. When he signed up, he thought he was just buying one month of ExpressVPN for $12.95. He did not expect, want, or consent to automatic renewal.

54.    The next month, on October 10, 2022, ExpressVPN automatically charged Mr. Millar's card for another $12.95. He noticed the charge on his credit card and was surprised. He then cancelled the service so he would not be charged again. He cancelled renewal, using the ExpressVPN website, on October 22, 2022.

55.    <u>Standing</u>. If ExpressVPN had complied with the ARL and made clear that it was going to automatically charge Mr. Millar in this way, he would not have signed up in the first place or would have cancelled before he was automatically charged. This establishes Mr. Millar's standing.

56.    On June 6, 2023, Mr. Martinez purchased one year of ExpressVPN's virtual private network services, via the ExpressVPN website. His enrollment process was substantially similar to the process described above. When he signed up, he thought he was just buying one year of ExpressVPN for $99.95. He did not expect, want, or consent to automatic renewal. And he did not expect, want, or consent to an automatically increased renewal price.

57.    The next year, on June 6, 2024, ExpressVPN automatically charged Mr. Martinez's card $116.95, for another year.  He noticed the charge and was surprised. He cancelled the credit card so ExpressVPN could not charge him again, without his consent.

58.    When ExpressVPN illegally charged Mr. Martinez, it also illegally increased the price (from the original price of $99.95 to $116.95). As described above, ExpressVPN failed to disclose the potential for this price increase when Mr. Martinez signed up. *See* Ex. 6 (2023 order page).

59.    <u>Standing.</u> If ExpressVPN had complied with the ARL and made clear that it was going to automatically charge Mr. Martinez in this way, he would not have signed up in the first place or would have cancelled before he was automatically charged. This establishes Mr. Martinez's standing.

**D.    No adequate remedy at law.**

60.    The equitable claims asserted (the UCL and FAL) offer relief, including restitution, that is more prompt, certain, and efficient than the legal claims (the CLRA damages claim).

61.    Plaintiffs assert two prongs of the CLRA (Cal. Civ. Code §1770, (a)):

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.
(9) Advertising goods or services with intent not to sell them as advertised.

The UCL and FAL, in contrast, more broadly prevent unfair, unlawful, or deceptive conduct.  Thus the CLRA includes additional elements beyond those required to prove a UCL or FAL claim.

62.    The UCL unlawful prong, in particular, requires only a bare violation of either the ARL or ROSCA. Because neither the ARL nor ROSCA requires deception (i.e., that a reasonable consumer would be deceived), neither does the corresponding UCL

unlawful claim. And the UCL unlawful prong uniquely allows Plaintiffs to assert a ROSCA violation (a theory that cannot be asserted via the CLRA).

63.     The CLRA also has a pre-suit notice element not required for a UCL or FAL claim.

64.     Finally, the damages claims require a jury trial, which can result in greater delay, as compared to the equitable claims.

65.     In any event, under controlling law, if Plaintiffs cannot assert their equitable claims here, they must be allowed to pursue them in state court. *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025); *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022).

## V.    Class Action Allegations.

66.     Plaintiffs bring claims for the following Class: All persons in California who enrolled in an ExpressVPN plan through its website and were charged for at least one automatic renewal payment during the statute of limitations.

67.     The following people are excluded from the Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

68.     The proposed class contains members so numerous that it is impractical to bring every individual claim.  There are at least tens of thousands of Class members.

69.     Class members can be identified through Defendant's sales records and public notice.

*Predominance of Common Questions*

70.    Common questions of law and fact predominate over individual issues. Common questions of law and fact include, without limitation: (1) whether the automatic renewal plans violate the ARL and California consumer protection laws and; (2) restitution or damages needed to compensate Plaintiffs and the Class.

*Typicality and Adequacy*

71.    Plaintiffs' claims are typical of the class. Like the class, Plaintiffs were illegally charged for an automatically-renewing subscription in California.  There are no conflicts of interest between Plaintiffs and the class.

*Superiority*

72.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

### Count 1: False Advertising Law (FAL)

73.    Plaintiffs incorporate the facts alleged above.

74.    Plaintiffs bring this claim individually and for the Class.

75.    The FAL authorizes a private right of action for any violation of Chapter 1, including the ARL. See Cal. Bus. & Prof. Code § 17535 (actions can be brought by "any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter"); § 17602 (ARL); *see Arnold v. Hearst Magazine Media, Inc.*, 2021 U.S. Dist. LEXIS 25706, at *17-18 (S.D. Cal. Feb. 10, 2021) (explaining how the FAL authorizes a private right of action under the ARL).

76.    Defendant violated Section 17500 by disseminating misleading advertisements concerning the automatically renewing nature of ExpressVPN plans. As described in detail above, ExpressVPN's advertising of the subscriptions (and its failure to

First Amended Class Action Complaint        16            Case No. 8:25-cv-01273

display ARL compliant disclosures) misled reasonable consumers about the automatically renewing nature of the plans.

77.     The same conduct violates Section 17602 (the ARL). As alleged in detail above, Defendant violated the ARL by failing to clearly and conspicuously present its automatic renewal terms, failing to get affirmative consent, and failing to send a compliant post-purchase acknowledgment.

78.     Defendant should have known that its violations were misleading to reasonable consumers.

79.     Plaintiffs relied upon Defendant's misleading representations and omissions.

80.     Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy ExpressVPN plans or deciding when to cancel.

81.     Defendant's violations were a substantial factor and proximate cause of economic harm to Plaintiffs and class members.

## Count 2: Unfair Competition Law (UCL)

82.     Plaintiffs incorporate the facts alleged above.

83.     Plaintiffs bring this claim individually and for the Class.

*Unlawful*

84.     Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.  Defendant committed unlawful practices because, as alleged above and incorporated here, it violated the ARL.

85.     ExpressVPN also violated the unlawful prong by violating the the Restore Online Shoppers Confidence Act ("ROSCA"), 15 U.S.C. § 8403.  This act bars companies from charging "any consumer for any goods or services sold in a transaction effected on the Internet through a negative option feature," unless certain requirements are met.

86.     The FTC defines "negative option feature" to mean "a provision under which the customer's silence or failure to take an affirmative action to reject goods or

services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w). Automatic renewals are a negative option feature under ROSCA.

87.     Before companies can charge a consumer through a negative option feature, they must "provide[] text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information." 15 U.S.C. § 8403(1).

88.     Additionally, companies must "obtain[] a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction." 15 U.S.C. § 8403(2).

89.     As alleged in detail above, ExpressVPN violated ROSCA by failing to clearly and conspicuously disclose the automatically renewing nature of its subscriptions and failing to obtain express informed consent.

*Unfair*

90.     As alleged in detail above, Defendant committed unfair acts by enrolling consumers in automatically recurring subscriptions, in violation of the ARL and FAL.

91.     The harm to Plaintiffs and the class greatly outweighs the public utility of Defendant's conduct.  There is no public utility to illegal automatic renewal practices. This injury was not outweighed by any countervailing benefits to consumers or competition.  Illegal auto-renewal practices only injure healthy competition and harm consumers.

92.     Plaintiffs and the class could not have reasonably avoided this injury. Defendant's representations and omissions were deceiving to reasonable consumers like Plaintiff. There were reasonably available alternatives to further Defendant's legitimate business interests, such as complying with the ARL.

93.     Defendant violated established public policy by violating the ARL.  The unfairness of this practice is tethered to a legislatively declared policy (that of the FAL and ARL).

94.     Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

### *Deceptive*

95.     As alleged in detail above, Defendant committed deceptive acts by enrolling consumers in automatically recurring subscriptions, in violation of the ARL.

96.     Defendant's representations and deficient ARL disclosures were misleading to Plaintiffs and other reasonable consumers.

97.     Plaintiffs relied upon Defendant's misleading representations and omissions, as detailed above.

98.     Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy ExpressVPN plans or deciding when to cancel.

\* \* \*

99.     Defendant's violative conduct was a substantial factor and proximate cause of economic harm to Plaintiffs and class members.

### Count 3: Consumers Legal Remedies Act (CLRA)

100.    Plaintiffs incorporate the facts alleged above.

101.    Plaintiffs bring this count individually and for the Class.

102.    Plaintiffs bought ExpressVPN services for personal, family, or household purposes.

103.    The ARL imposes a statutory duty to disclose the required Automatic Renewal Terms.

104.    ExpressVPN violated Cal. Civ. Code §1770, (a)(5) by representing that its subscription plans have certain characteristics that they do not have. As alleged in detail above, Defendant represented that its plans would not automatically renew, failed to adequately disclose the automatic renewal terms, and failed to obtain affirmative consent.

105.    ExpressVPN violated Cal. Civ. Code §1770, (a)(9) by advertising services with the intent not to sell them as advertised. As alleged in detail above, Defendant's advertisements represented that its plans would not automatically renew, failed to adequately disclose the automatic renewal terms, and failed to obtain affirmative consent.

106.    Defendant's representations and omissions were misleading to Plaintiffs and other reasonable consumers.

107.    Plaintiffs relied on Defendant's representations and omissions when deciding to subscribe to ExpressVPN and when deciding not to cancel before the end of their initial period.

108.    Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy ExpressVPN plans or deciding when to cancel.

109.    Defendant's violative conduct was a substantial factor and proximate cause of economic harm to Plaintiffs and Class members

110.    CLRA § 1782 NOTICE.  On June 13, 2025, Mr. Millar sent a CLRA demand letter to ExpressVPN's headquarters in Cyprus, via USPS Registered Mail International and FedEx (USPS does not offer international certified mail). Plaintiffs used the contact address identified by ExpressVPN.[5]

111.    On July 25, 2025 Mr. Martinez sent a CLRA demand letter to ExpressVPN's headquarters in Cyprus, via USPS Registered Mail International.

112.    Both letters provided notice of Defendant's particular violations of the CLRA and demanded that Defendant correct the violations alleged above. Defendant failed to cure under the CLRA. Accordingly, Plaintiffs and the Class seek all monetary relief allowed under the CLRA.

113.    CLRA venue declarations are attached.

## VII.    Relief.

114.    Plaintiffs seek the following relief for themselves and the Class:

---

[5] https://store.expressvpn.com/policies/contact-information.

i.      An order certifying the asserted claims, or issues raised, as a class action;

ii.     A judgment in favor of Plaintiffs and the Class;

iii.    Recission;

iv.    Restitution, disgorgement, and other just equitable relief;

v.     Damages;

vi.    Pre- and post-judgement interest;

vii.   Reasonable attorneys' fees and costs, as allowed by law; and

viii.   Any additional relief that the Court deems reasonable and just.

## VIII. Demand for Jury Trial.

115.   Plaintiffs demand the right to a jury trial on all claims so triable.

Date: September 12, 2025

Respectfully submitted,

By:  */s/ Jonas B. Jacobson*
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*