Stephen A. Broome (Cal. Bar No. 314605)
stephenbroome@quinnemanuel.com
John W. Baumann (Cal. Bar No. 288881)
jackbaumann@quinnemanuel.com
Laurenne M. Babayan (Cal. Bar No. 348075)
laurennebabayan@quinnemanuel.com
QUINN EMANUEL
  URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Nicolas G. Keller (N.Y. Bar No. 5549522)*
nicolaskeller@quinnemanuel.com
QUINN EMANUEL
  URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849 7000
Fax: (212) 849 7100
(*Admitted *Pro Hac Vice*)

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TIMOTHY MILLAR and MARCO MARTINEZ, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EXPRESS TECHNOLOGIES, LTD.,<br><br>Defendant. | Case No. 8:25-cv-1273<br><br>**DECLARATION OF JACK BUCKLEY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**<br><br>Trial Date:     None Set |

# DECLARATION OF JACK BUCKLEY

I, Jack Buckley, declare as follows:

1. I serve as Defendant Express Technologies Ltd.'s ("ExpressVPN") Director of Communications. I make this Declaration in Support of ExpressVPN's Motion to Dismiss Under Rule 12(b)(1), (b)(2), & (b)(6) and, in the Alternative, to Compel Arbitration as to Plaintiff Millar in the above-captioned matter. The following facts are based on personal knowledge acquired in the ordinary course of business and for the purpose of this litigation, and, if called as a witness, I could and would testify competently thereto.

2. I have reviewed Plaintiffs Timothy Millar and Marco Martinez's First Amended Complaint ("FAC").

3. ExpressVPN is organized under the laws of the British Virgin Islands and provides its services to customers worldwide. The company does not have any headquarters or offices in California or the United States.

4. ExpressVPN is an established provider of online privacy and security solutions to customers around the globe.

5. ExpressVPN's flagship service is its virtual private network ("VPN"), which uses software to encrypt users' internet connections and provide a secure tunnel between users' devices and the internet.

6. ExpressVPN's VPN service is routinely audited by external third parties for compliance with its rigorous privacy and security standards. A list of those audits is available at www.expressvpn.com/trust#security-audits.

7. In addition to providing worldwide privacy-first VPN services, ExpressVPN is committed to advancing digital security and privacy in other ways as well. This includes through the ExpressVPN Rights Center, which conducts research and provides resources designed to educate the public about online security threats and promote stronger digital privacy protections.

8. VPNs are often used by employers and organizations to enable remote employees to securely access institutional networks from across the globe. VPNs are also used by individuals for their everyday internet browsing around the world.

9. The ExpressVPN service purchased by Mr. Millar and Mr. Martinez was delivered entirely online through software applications and digital downloads. No purchase of hardware or other tangible product is required for access to the VPN service.

10. ExpressVPN's website is available at www.expressvpn.com and www.express-vpn.com.

11. In 2022 and 2023, ExpressVPN sold and provided VPN subscriptions to customers who placed orders from throughout the world, including in various U.S. states.

12. The checkout process to purchase ExpressVPN's VPN service that was in place on September 10, 2022, required a user to affirmatively click an action button to purchase an ExpressVPN subscription. For users, like plaintiffs, paying with credit card, the button "Join Now" appeared directly above the text "By submitting this form, you agree to our Terms of Use," where the words "Terms of Use" were hyperlinked to www.expressvpn.com/tos or www.express-vpn.com/tos (depending on which of the two ExpressVPN URLs the user had accessed). A user could not purchase an ExpressVPN subscription without affirmatively clicking the action button.

13. A true and correct copy of the ExpressVPN checkout page in use on the two ExpressVPN websites as of September 10, 2022, based on a review of internal records, is attached hereto as <u>Exhibit #1</u>.

14. A true and correct copy of the TOS in effect on September 10, 2022, based on a review of internal records, is attached hereto as <u>Exhibit #2</u>.

15. Among other provisions, these TOS contained the automatic renewal terms, dispute resolution provisions, and governing law applicable to ExpressVPN subscriptions. Ex. 2 §§ 4, 15.

16. ExpressVPN offered global access to more than 100 VPN server locations in 94 countries in September 2022 and June 2023. This meant that, should they so choose, non-California subscribers across the globe could use California servers with California IP addresses, and California subscribers could use non-California servers with non-California IP addresses.

17. ExpressVPN does not control a subscriber's decision to select a particular server or location.

18. Based on my review of internal records, at least as of September 2022, ExpressVPN was leasing VPN servers in California (*i.e.*, Los Angeles, San Francisco, and Santa Monica) from service providers located in the United Kingdom, Australia, and Brazil who offer—and have leased—servers around the world to ExpressVPN. Based on my review of the archived internal resources available, the agreements with those providers are governed by the laws of the service provider's home country and provide for local dispute resolution. Accordingly, none of the server providers are located in California or have contracts with ExpressVPN that apply California law or provide for dispute resolution in California.

19. The VPN servers that ExpressVPN uses to provide the VPN service globally are different from the servers that host the www.expressvpn.com and www.express-vpn.com websites. The physical location of the servers used for hosting the ExpressVPN websites is not decided by or controlled by ExpressVPN but rather by the third-party webhosting service provider hired by ExpressVPN to host the websites such that they are accessible globally.

20. ExpressVPN has an Affiliate Program, whereby it pays commissions to third-party affiliates who promote ExpressVPN's service. ExpressVPN does not require, request, or recommend that affiliates advertise to audiences residing or

located in any specific geographic location. To the extent an affiliate were to do so, that would be fully within the discretion and control of the affiliate, not ExpressVPN.

21. These third-party affiliates are neither employees nor agents of ExpressVPN.

22. The ExpressVPN affiliate with the YouTube username @geekman5883 appears to be based in India, based on its content.

23. I understand plaintiffs allege that, in June and July 2025, they sent "CLRA demand letter(s) to ExpressVPN's headquarters in Cyprus, via USPS Registered Mail International and FedEx." FAC ¶¶ 110-11. However, ExpressVPN has no record of having received the letter for Plaintiff Martinez.

I declare under penalty of perjury of the laws of the United States and of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed in Caldicot, Wales, United Kingdom, on October 8, 2025.

Signed by:
*Jack Buckley*
46611E675C30443...
Jack Buckley
Director of Communications
ExpressVPN