Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY MILLAR and MARCO MARTINEZ, each individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>EXPRESS TECHNOLOGIES, LTD.,<br><br>*Defendant*. | Case No. 8:25-cv-01273-FWS-DFM<br><br>**PLAINTIFFS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE WHY THE CASE SHOULD NOT BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Judge: Hon. Fred W. Slaughter |

The Court expressed "doubts whether $5 million is actually in controversy" here. Dkt. 25 at 1. This is because, with damages between "$13 or $117 per class member" (the renewal charges to the named Plaintiffs), it would "take a very high number of class members" to reach over $5 million. *Id.* at 2. The Court required "more information both about the number of class members and the amount each class member could possibly recover to be assured that the court has CAFA jurisdiction over this case." *Id.*

Plaintiffs provide more information showing that there are hundreds of thousands of class members and tens of millions at stake. If needed, Plaintiffs can amend to add these additional factual allegations.[1]

**A.   There are hundreds of thousands of class members.**

The proposed class includes all "persons in California who enrolled in an ExpressVPN plan through its website and were charged for at least one automatic renewal payment during the statute of limitations." Dkt. 24 (First Amended Complaint) ¶66. The class period goes back four years, to about June 2021.[2]

Start with the year 2023. That year, based on the following data points, Plaintiffs estimate that there were at least 107,520 class members:

- According to ExpressVPN's blog, in 2023 it reached 4 million worldwide subscribers.[3]
- About 40% of Express VPN subscribers are in North America.[4] This implies

---

[1] The parties are currently briefing ExpressVPN's challenges to the current complaint (the First Amended Complaint). Dkt. 26. If the Court requires amendment to better address subject matter jurisdiction, Plaintiffs would stipulate that the Parties' briefing will apply equally to the Second Amended Complaint (which will be no different except for the additional allegations included here). This would maintain the same briefs, briefing schedule, and hearing date for ExpressVPN's motion. Plaintiffs conferred with ExpressVPN and it agreed to this procedure if the Court requires or allows amendment (while reserving its rights to oppose any amendment).

[2] *E.g.*, the UCL statute of limitations is four years. Cal. Bus. & Prof. Code § 17208.

[3] https://www.expressvpn.com/blog/4-million-subscribers/.

[4] In 2021, ExpressVPN was acquired by Kape Technologies. In connection with that deal, Kape made a regulatory announcement to the London Stock Exchange stating

Plaintiffs' Response to
Order to Show Cause                             1                Case No. 8:25-cv-01273-FWS-DFM

- 40% x 4 million = 1.6 million North American subscribers.
- The United States is about 56% of North America by population.[5] This implies 56% x 1.6 million North American Subscribers = 896,000 US ExpressVPN subscribers.
- California is about 12% of the US population.[6] This implies 12% x 896,000 US Subscribers = 107,520 California Express VPN subscribers (members of the proposed class).

And this is in 2023 alone. Each year, subscribers leave and new ones join. For example, in 2021, ExpressVPN was achieving a compounded annual growth rate of over 35%.[7] During the four-year class period, it is reasonable to infer that there were hundreds of thousands of unique subscribers.

**B.    There at tens of millions at stake.**

Plaintiffs allege that all automatic renewal charges were illegal and seek a full refund of renewal charges. First Amended Complaint ¶¶4, 39, 52.  Based on the following data points, class damages are over $20 million.

- In 2021, ExpressVPN had "over 3 million" subscribers and "generated revenues of approximately $279.4 million" in 2020.[8] That implies an average revenue per subscriber of about $93 (279.4 million divided by 3 million).

---

that "over 40%" of ExpressVPN subscribers "are in North America." (available at https://www.investegate.co.uk/announcement/rns/kape-technologies--kape/-936m-acquisition-of-expressvpn-354m-placing/6825145 ).

[5] https://en.wikipedia.org/wiki/List_of_North_American_countries_by_population#.

[6] https://en.wikipedia.org/wiki/List_of_U.S._states_and_territories_by_population.

[7] Kape reported this in connection with its acquisition ("Over the past four years, ExpressVPN has achieved a revenue CAGR of 35.1%") https://www.investegate.co.uk/announcement/rns/kape-technologies--kape/-936m-acquisition-of-expressvpn-354m-placing/6825145.

[8] Kape disclosed this data to the London Stock Exchange in connection with its acquisition of ExpressVPN: (https://www.investegate.co.uk/announcement/rns/kape-technologies--kape/-936m-acquisition-of-expressvpn-354m-placing/6825145 ).

- Most of this revenue is likely renewal revenue: 82% of subscribers are "retained" (i.e. renewed) and some are renewed many times over.[9]
- If we conservatively assume that even half this revenue is renewal revenue, that is an average of $46.5 in renewal revenue, per subscriber, in 2023. That implies 2023 damages of $46.5 x 107,520 California subscribers = $5 million in 2023 alone.

Given ExpressVPN's reported strong performance and growth ambitions,[10] damages for the four-year class period likely exceed $20 million. The amount in controversy requirement is met and the Court has CAFA jurisdiction.

## C. Alternatively, Plaintiffs ask for time for jurisdictional discovery.

"Jurisdictional discovery 'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *LNS Enters. Ltd. Liab. Co. v. Cont'l Motors, Inc.*, 22 F.4th 852, 864 (9th Cir. 2022). As explained above, the additional facts that Plaintiffs can allege are sufficient. But if the Court decides otherwise, Plaintiffs request jurisdictional discovery.

This discovery is already in progress. On October 14, as part of the normal discovery process, Plaintiffs served interrogatories and document requests that ask for information on the number of proposed class members and their damages (renewal charges). If the Court finds that the additional facts that Plaintiffs can allege are insufficient, Plaintiffs ask for time to obtain and submit this discovery before the Court resolves the issue of subject matter jurisdiction.

---

[9] This is the average retention rate reported by Kape, for the combined company. (https://www.investegate.co.uk/announcement/rns/kape-technologies--kape/-936m-acquisition-of-expressvpn-354m-placing/6825145 ).

[10] As reported when it was purchased by Kape in 2021 (https://www.investegate.co.uk/announcement/rns/kape-technologies--kape/-936m-acquisition-of-expressvpn-354m-placing/6825145 ).

Plaintiffs' Response to
Order to Show Cause              3              Case No. 8:25-cv-01273-FWS-DFM

| | |
|---|---|
| Dated: October 28, 2025 | Respectfully submitted,<br><br>By: /s/ *Jonas Jacobson*<br>Jonas B. Jacobson (Cal. Bar No. 269912)<br>jonas@dovel.com<br>Simon Franzini (Cal. Bar No. 287631)<br>simon@dovel.com<br>Martin Brenner (Cal. Bar No. 333540)<br>martin@dovel.com<br>DOVEL & LUNER, LLP<br>201 Santa Monica Blvd., Suite 600<br>Santa Monica, California 90401<br>Telephone: (310) 656-7066<br>Facsimile: +1 (310) 656-7069<br><br>*Attorneys for Plaintiffs* |