Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TIMOTHY MILLAR and MARCO MARTINEZ, each individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> EXPRESS TECHNOLOGIES, LTD., <br><br> *Defendant*. | Case No. 8:25-cv-01273-FWS-DFM <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR COMPEL ARBITRATION** <br><br> Judge: Hon. Fred W. Slaughter |

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration

Case No. 8:25-cv-01273-FWS-DFM

**Table of Contents**

I.    The Court has specific personal jurisdiction over ExpressVPN. .......................... 1

    A.    ExpressVPN purposefully directs its activities to California. ................... 1

        1.    ExpressVPN ads: the "Best VPN for California" with "Fast Servers" in "Los Angeles" and "San Francisco." .............................. 2

        2.    ExpressVPN's California VPN servers. ............................................ 4

        3.    ExpressVPN's influencer marketing targeting California. ............... 5

    B.    Plaintiffs' claims "relate to" ExpressVPN's California conduct. .............. 6

    C.    ExpressVPN fails to make a compelling case that jurisdiction would be unreasonable. .......................................................................................... 7

II.   Plaintiffs have statutory and Article III standing. .................................................. 8

III.  The Court has equitable jurisdiction over the UCL and FAL claims.................. 10

IV.   Plaintiffs adequately allege their claims. ............................................................. 10

V.    The Court should deny ExpressVPN's motion to compel Mr. Millar to arbitration. ............................................................................................................ 12

    A.    ExpressVPN fails to establish an agreement to arbitrate. ........................ 12

        1.    ExpressVPN failed to provide reasonably conspicuous notice. ...... 13

        2.    ExpressVPN's sign-in wrap does not establish consumers' unambiguous assent. .................................................................... 20

    B.    The arbitration provision is unconscionable. ........................................... 21

        1.    The arbitration provision is substantively unconscionable............. 21

        2.    The arbitration provision is procedurally unconscionable.............. 22

        3.    The Court has the power to invalidate the arbitration provision. ... 23

        4.    The Court cannot reform ExpressVPN's unconscionable arbitration provision; it must be invalidated. ...................................................... 24

    C.    ExpressVPN waived any right to compel arbitration............................... 24

# Table of Authorities

**Cases**

*Am. Life Ins. Co. v. Stewart*,
   300 U.S. 203 (1937) ..................................................................... 10

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000)................................................................... 22

*Arnold v. Hearst Magazine Media, Inc.*,
   2021 U.S. Dist. LEXIS 25706 (S.D. Cal. Feb. 10, 2021) .......................... 8

*ASUS Computer Int'l v. Interdigital, Inc.*,
   2015 U.S. Dist. LEXIS 118794 (N.D. Cal. Sept. 4, 2015)........................ 23

*Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.*,
   11 F.4th 972 (9th Cir. 2021)............................................................ 2

*Battle v. Taylor James, LLC*,
   607 F. Supp. 3d 1025 (C.D. Cal. 2022)............................................ 1, 12

*Baxter v. Genworth N. Am. Corp.*,
   224 Cal. Rptr. 3d 556 (Cal. Ct. App. 2017) ...................................... 22

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022)...................................................... 13, 20

*Brayton Purcell LLP v. Recordon & Recordon*,
   606 F.3d 1124 (9th Cir. 2010) ..................................................... 3, 4

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ....................................................... 23

*Briskin v. Shopify, Inc.*,
   135 F.4th 739 (9th Cir. 2025)............................................ 1, 2, 6, 7, 8

*Brown v. Hain Celestial Grp., Inc.*,
   2015 U.S. Dist. LEXIS 67912 (N.D. Cal. May 26, 2015) ........................ 11

*Bruton v. Gerber Prods. Co.*,
   2017 U.S. App. LEXIS 12833 (9th Cir. July 17, 2017)........................... 12

*Capili v. Finish Line, Inc.*,
   116 F. Supp. 3d 1000 (N.D. Cal. 2015) ............................................ 24

*Chabolla v. ClassPass Inc.*,
   129 F.4th 1147 (9th Cir. 2025)................................................ 14, 19, 20

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    ii          Case No. 8:25-cv-01273-FWS-DFM

*DEX Sys. v. Deutsche Post AG*,
    727 F. App'x 276 (9th Cir. 2018)..................................................................4

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009)......................................................................8

*Doe v. WebGroup Czech, A.S.*,
    89 F.4th 1188 (9th Cir. 2024)......................................................................4

*Doe v. WebGroup Czech*, *A.S.*,
    93 F.4th 442 (9th Cir. 2024)........................................................................3

*Eiess v. USAA Fed. Sav. Bank*,
    404 F. Supp. 3d 1240 (N.D. Cal. 2019) ....................................................23

*Farmer v. Barkbox, Inc.*,
    2023 U.S. Dist. LEXIS 222435 (C.D. Cal. Oct. 6, 2023) ...........10, 17, 19

*Flores v. Transamerica HomeFirst, Inc.*,
    113 Cal. Rptr. 2d 376 (Cal. Ct. App. 2001) .............................................22

*Gill v. Chipotle Mexican Grill, Inc.*,
    2025 U.S. Dist. LEXIS 98878 (C.D. Cal. May 19, 2025)..........................11

*Godun v. JustAnswer LLC*,
    135 F.4th 699 (9th Cir. 2025).....................................................13, 19, 20

*Hadley v. Kellogg Sales Co.*,
    2019 U.S. Dist. LEXIS 136791 (N.D. Cal. Aug. 13, 2019)......................12

*Hidalgo v. JPMorgan Chase Bank, N.A.*,
    2025 U.S. Dist. LEXIS 90133 (S.D. Cal. May 12, 2025)............................2

*Hill v. Xerox Bus. Servs., LLC*,
    59 F.4th 457 (9th Cir. 2023)......................................................................24

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013)......................................................................9

*Ingle v. Circuit City Stores*,
    328 F.3d 1165 (9th Cir. 2003)....................................................................21

*J.P. v. Educ. Testing Servs.*,
    2020 U.S. Dist. LEXIS 259073 (C.D. Cal. Oct. 30, 2020) .......................23

*Key v. Qualcomm Inc.*,
    129 F.4th 1129 (9th Cir. 2025)...................................................................10

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    iii            Case No. 8:25-cv-01273-FWS-DFM

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ................................................................. 13

*L.A. Turf club, Inc. v. US Racing*,
   2025 U.S. Dist. LEXIS 93361 (C.D. Cal. May 15, 2025)........................... 5

*Lim v. TForce Logistics, LLC*,
   8 F.4th 992 (9th Cir. 2021) .............................................................22, 24

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ..........................................................5, 6

*Mayron v. Google LLC*,
   269 Cal. Rptr. 3d 86 (Cal. Ct. App. 2020) .............................................. 9

*Mikhak v. Univ. of Phx.*,
   2016 U.S. Dist. LEXIS 80705 (N.D. Cal. June 21, 2016) ........................ 23

*Milliner v. Bock Evans Fin. Counsel, Ltd.*,
   114 F. Supp. 3d 871 (N.D. Cal. 2015) .................................................. 22

*Morrell v. WW Int'l, Inc.*,
   551 F. Supp. 3d 173 (S.D.N.Y. 2021) ................................................... 9

*Murray v. Under Armour, Inc.*,
   2019 U.S. Dist. LEXIS 231532 (C.D. Cal. Feb, 11, 2019) ...................... 23

*Patrick v. Running Warehouse, LLC*,
   93 F.4th 468 (9th Cir. 2024) ............................................................... 23

*Peter v. Doordash, Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020) ................................................. 21

*Prolacta Bioscience, Inc. v. Prolact Ltd.*,
   2025 WL 2078270 (C.D. Cal. June 18, 2025) ......................................... 4

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ............................................................... 8

*Rendon v. T-Mobile USA, Inc.*,
   747 F. Supp. 3d 1314 (C.D. Cal. 2024) ................................................ 23

*Rent-A-Ctr., W., Inc., v. Jackson*,
   561 U.S. 63 (2010) ............................................................................ 23

*Rio Props. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) .............................................................. 2

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    iv          Case No. 8:25-cv-01273-FWS-DFM

*Sanderson v. Whoop, Inc.*,
    2025 U.S. Dist. LEXIS 42118 (N.D. Cal. Mar. 7, 2025) ........................................... 10

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ............................................................................... 1, 2

*Sellers v. JustAnswer LLC*,
    289 Cal. Rptr. 3d 1 (Cal. Ct. App. 2021) ........................................................ 11, 19

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
    666 F. Supp. 3d 1089 (C.D. Cal. 2023) ............................................................ 16, 19

*Sheelit v. Amerisave Mortg. Corp.*,
    754 F. Supp. 3d 995 (C.D. Cal. 2024) .............................................................. 22, 24

*Shultz v. TTAC Publ'g, LLC*,
    2020 U.S. Dist. LEXIS 198834 (N.D. Cal. Oct. 26, 2020) ................................ 15, 19

*Silver v. BA Sports Nutrition, LLC*,
    2020 U.S. Dist. LEXIS 99320 (N.D. Cal. June 4, 2020) .......................................... 12

*Sonic-Calabasas A, Inc. v. Randolph*,
    57 Cal. 4th 1109 (2013) .................................................................................... 21, 22

*Steele Logistics, Inc. v. Advance Funds Network, LLC*,
    2025 U.S. Dist. LEXIS 23759 (C.D. Cal. Feb. 10, 2025) ........................................... 1

*Streedharan v. Stanley Indust. & Auto., LLC*,
    630 F. Supp. 3d 1244 (C.D. Cal. 2022) ................................................................... 24

*Surkhabi v. Tesla, Inc.*,
    2022 U.S. Dist. LEXIS 198699 (C.D. Cal. Oct. 27, 2022) ........................................ 20

*Three Valleys Mun. Water Dist. V. E.F. Hutton & Co.*,
    925 F.2d 1136, (9th Cir. 1991) ................................................................................ 13

*Ugalde v. Syngenta Flowers, LLC*,
    2025 U.S. Dist. LEXIS 125545 (N.D. Cal. July 1, 2025) .......................................... 25

*Viveros v. Audible, Inc.*,
    2023 U.S. Dist. LEXIS 189161 (W.D. Wash. Oct. 20, 2023) ..................................... 9

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ..................................................................... 9

*Will Co. v. Lee*,
    47 F.4th 917 (9th Cir. 2002) ..................................................................................... 2

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    v          Case No. 8:25-cv-01273-FWS-DFM

*Wiseley v. Amazon.com, Inc.*,
    709 F. App'x 862 (9th Cir. 2017)...............................................................20

*Yamashita v. LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023).....................................................................6

*Zeller v. Optavia LLC*,
    2024 U.S. Dist. LEXIS 51882 (S.D. Cal. Mar. 14, 2024)........................10

*Zeller v. Optavia, LLC*,
    2022 U.S. Dist. LEXIS 230895 (S.D. Cal. Dec. 22, 2022).........................9

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration          vi        Case No. 8:25-cv-01273-FWS-DFM

ExpressVPN's jurisdictional, 12(b)(6), and arbitration arguments lack merit. We address each in turn.

## I.     The Court has specific personal jurisdiction over ExpressVPN.

The three-part test for specific jurisdiction is:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Briskin v. Shopify, Inc.*, 135 F.4th 739, 750-51 (9th Cir. 2025) (quotes omitted).

On the first two prongs, Plaintiffs need only make a "prima facie showing of jurisdictional facts." *Battle v. Taylor James*, *LLC*, 607 F. Supp. 3d 1025, 1036 (C.D. Cal. 2022) (Slaughter, J.). Courts "deem all uncontroverted allegations in the complaint to be true and resolve factual disputes in favor of the nonmoving party." *Id.* Once Plaintiffs make this showing, the "burden shifts" to ExpressVPN to "present a compelling case" that "other considerations would render jurisdiction unreasonable." *Briskin*, 135 F.4th at 751 (quotes omitted). Plaintiffs meet their burden on the first two prongs and ExpressVPN fails to make a compelling, contrary case.

### A.     ExpressVPN purposefully directs its activities to California.

Because false advertising cases sound in tort, the "purposeful direction" test applies. *Steele Logistics, Inc. v. Advance Funds Network, LLC*, 2025 U.S. Dist. LEXIS 23759, at *10 (C.D. Cal. Feb. 10, 2025); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); Mot. 10 (applying purposeful direction). This test is met if ExpressVPN: "(1) committed an intentional act, (2) expressly aimed at the

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    1          Case No. 8:25-cv-01273-FWS-DFM

forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state" (i.e., harm was foreseeable). *Schwarzenegger,* 374 F.3d at 803 (quotes omitted).

<u>Intentional acts</u>. Generally, everything a company does in its "regular course of business is an intentional act." *Briskin* at 756; *Hidalgo v. JPMorgan Chase Bank, N.A.*, 2025 U.S. Dist. LEXIS 90133, at *5 (S.D. Cal. May 12, 2025) ("intent under *Calder* focuses on the act itself (e.g., publishing an advertisement), not the intent to cause harm"). Intentional acts include running advertisements and operating a website. *Schwarzenegger* at 806 (advertisements); *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2002) (website).

Plaintiffs allege three buckets of intentional acts: (1) ExpressVPN's California advertising; (2) its California VPN servers; and (3) its influencer marketing program targeting California. For each bucket, we address express aiming and foreseeable harm.

## 1.    ExpressVPN ads: the "Best VPN for California" with "Fast Servers" in "Los Angeles" and "San Francisco."

<u>Express aiming</u>. An internet company "expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous," even if the company "cultivates a nationwide audience for commercial gain." *Briskin* at 758 (cleaned up); *Hidalgo,* 2025 U.S. Dist. LEXIS 90133, at *11 (under *Briskin,* "intentional conduct affecting a known California resident suffices.").

*Briskin* affirmed previous holdings that, if a company chooses to advertise in a forum, that is express aiming. *Briskin* at 753 (affirming *Rio*); *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (running print and radio ads in the forum is express aiming). If a company uses forum-specific keywords in its ads, this shows that it chose to target the forum and establishes express aiming. *See Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (the ad "ATTENTION USA BABES" was expressly aimed at USA).

From June of 2022 to today, ExpressVPN has run Google ads targeting California with California keywords. FAC ¶14. For example:



Ad · https://www.expressvpn.com/ ⋮

The Best VPN for California - Get a Risk-Free VPN Today

#1 VPN Service for California: Fast Servers in Los Angeles, San Francisco, and More.

*Id.* ¶14. This ad is displayed when a consumer searches "vpn to california." *Id.* It says that ExpressVPN is the best "VPN for California," and the "#1 VPN Service for California," with "Fast Servers in Los Angeles" and "San Francisco." *Id.* The ad links to a webpage touting ExpressVPN's "Fast Servers in Los Angeles" and "San Francisco" and recommending that California customers use these servers. *Id.* ¶15. And this is just one of several, similar ExpressVPN ads targeting California, over the last three years. *Id.* ¶¶16-18. This is express aiming.

<u>Foreseeable harm</u>. This element "is satisfied when defendant's intentional act has foreseeable effects" in California resulting in the alleged harm. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010) (quotes omitted); *Doe v. WebGroup Czech, A.S.*, 93 F.4th 442, 456 (9th Cir. 2024) ("A defendant causes harm in a particular forum when the 'bad acts' that form the basis of the plaintiff's complaint occur in that forum."). Here, the alleged harm is illegal, automatically-renewing subscriptions. The point of ExpressVPN's ads was to sign up California consumers for these subscriptions. FAC ¶15. So the ads caused foreseeable harm.

According to ExpressVPN, its ads merely suggest to a "global" or "nationwide" audience that consumers can use California servers from anywhere. Mot. 10-11. But the ads don't say that ExpressVPN is the best VPN if you want to use a California server from somewhere else—they say that ExpressVPN is the "Best VPN for California" and the "#1 VPN Service for California" (i.e. for use by Californians). The ads also recommend California servers because they are geographically close to

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    3              Case No. 8:25-cv-01273-FWS-DFM

California residents and provide faster service. FAC ¶¶14-15.

ExpressVPN asserts that here, like in *Prolacta*, its ads are merely "random, isolated, or fortuitous" contacts with California and do not show that ExpressVPN "actually desired" California customers. Mot. 12 (quoting *Prolacta Bioscience, Inc. v. Prolact Ltd*., 2025 WL 2078270, at *10 (C.D. Cal. June 18, 2025).[1] But in *Prolacta*, all the defendant did was display banners saying "WE SHIP TO US AND CANADA" and make two sales to the plaintiffs' private investigators in the United States. Jacobson Decl., Ex. 1 (*Prolacta* Order) at 19-20. In contrast, ExpressVPN ran a persistent, California-targeted ad campaign. As in *Brayton*, ExpressVPN "had every reason to believe" that California consumers would click on the ads—"indeed, attracting new [California] business was the point." *Brayton,* 606 F.3d at 1130 (finding express aiming based on a website targeting California).

ExpressVPN's California ads establish purposeful direction. The Court need go no further. But there is more.

### 2.    ExpressVPN's California VPN servers.

Express aiming. When a company intentionally locates servers in California to serve California customers—as opposed to its servers fortuitously being here—this is express aiming. *See DEX Sys. v. Deutsche Post AG*, 727 F. App'x 276, 278 (9th Cir. 2018) (finding express aiming when the parties intended to use a server in California); *Doe v. WebGroup Czech, A.S.,* 89 F.4th 1188, 1199 (9th Cir. 2024) (By using "U.S.-based" servers to "improve the viewing experience of persons near those" servers defendant expressly aimed its conduct at the US). ExpressVPN chose California VPN servers so it could advertise its geographically close (and fast) servers to better serve Californians. FAC ¶¶15, 20-22. That is express aiming.

ExpressVPN asserts that its web servers aren't purposefully located in California. Mot. 12. But Plaintiffs point to the VPN servers, not the web servers.

---

[1] The order is attached as Exhibit 1 to the Jacobson Declaration.

<u>Foreseeable harm</u>. ExpressVPN used its California servers to encourage California customers to sign up for automatically renewing VPN subscriptions. FAC ¶15. It was foreseeable that this would result in the alleged harm.

ExpressVPN's servers are a second basis for finding purposeful direction. The Court need go no further. And there is still another bucket of acts.

### 3. ExpressVPN's influencer marketing targeting California.

<u>Express aiming</u>. When third-party conduct shows that a defendant "knows — either actually or constructively — about its California user base" and the company "exploits that base for commercial gain," this is express aiming. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011).

Here, ExpressVPN pays online influencers to advertise its VPN subscriptions. FAC ¶¶23-28. ExpressVPN helps these influencers create marketing content and reserves the right to view and approve this content. *Id.* ¶¶24-25. For example, one influencer targeted California with a video about the "Best California VPN Servers," using keywords mirroring ExpressVPN's own. *Id.* ¶26.[2] This shows that ExpressVPN had actual (or constructive) knowledge that its influencers were targeting California.

ExpressVPN's declarant only says that ExpressVPN does not "require, request, or recommend" that affiliates market to geographies. Dkt. 26-1 at ¶20. He does not deny that ExpressVPN knew that its influencers were targeting California.

ExpressVPN suggests that "the unilateral activity" of third-party influencers "is all that connects" it to California. Mot. 13 (quoting *L.A. Turf club, Inc. v. US Racing*, 2025 U.S. Dist. LEXIS 93361, at *7 (C.D. Cal. May 15, 2025) (Slaughter, J.)). But ExpressVPN's influencers were not acting unilaterally: ExpressVPN paid them to sell subscriptions, helped them with their marketing, and had actual (or constructive) knowledge that they were targeting California. This is express aiming. *See Mavrix*, 647

---

[2] ExpressVPN argues that this video only suggests that consumers outside of California might use a California server. Mot. 13. This is unpersuasive for the same reasons it is unpersuasive for ExpressVPN's own ads.

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                5              Case No. 8:25-cv-01273-FWS-DFM

F.3d at 1230.

Foreseeable harm. It was foreseeable that influencers targeting California would sign up California consumers for ExpressVPN subscriptions.

ExpressVPN's influencer marketing is a third basis for finding purposeful direction.

## B.    Plaintiffs' claims "relate to" ExpressVPN's California conduct.

This prong is met if Plaintiffs' claims either (a) "arise out of" or, alternatively, (b) "relate to" ExpressVPN's forum-related activities. *Briskin* at 760 (quotes omitted). The "Supreme Court announced in *Ford* that 'arise out of' and 'relate to' are alternatives: for a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts, even absent causation…." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504-05 (9th Cir. 2023). ExpressVPN's conduct relates to Plaintiffs' claims if ExpressVPN's California contacts would tend to injure other California consumers in a similar way. *Id.* at 505 ("a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts"); *Briskin* at 760 (plaintiff's claims related to defendant's contacts because plaintiff alleged the "kind of injury that would tend to be caused by" the defendant's contacts (quotes omitted)).

ExpressVPN targeted California with its own ads, put VPN servers in California, and helped influencers target California, all to sign up Californians for automatically renewing subscriptions. This would tend to injure other Californians in the same way Plaintiffs were injured: signing them up for automatically renewing subscriptions. ExpressVPN's California contacts "relate to" Plaintiffs' claims.[3]

ExpressVPN asserts that Plaintiffs "allege no facts indicating ExpressVPN's conduct targeted them—or anyone—in California in September 2022 or June 2023."

---

[3] ExpressVPN suggests that Plaintiffs' claims do not "arise out of" its VPN servers. Mot. 12. But as explained above, ExpressVPN's ads touted these fast, California servers to encourage Californians to sign up for subscriptions.

Mot. 14. But Plaintiffs need not allege that ExpressVPN targeted them personally, and Plaintiffs do allege that ExpressVPN targeted other Californians in a way that would tend to cause similar harm.

ExpressVPN tries to distinguish *Briskin* because there, the "nexus between Shopify's conduct and Briskin's claims was clear." Mot. 13. But that is true here. In *Briskin,* the defendant's conduct related to the plaintiff's claims because it was "the kind of contact that would tend to cause" the alleged privacy injuries. *Briskin* at 760. Here, ExpressVPN's contacts relate to Plaintiffs' claims because these contacts would tend to cause the alleged automatic renewal injuries.

### C.    ExpressVPN fails to make a compelling case that jurisdiction would be unreasonable.

ExpressVPN must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Briskin* at 751 (quotes omitted). The Ninth Circuit applies a seven-factor balancing test: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.* at 761. ExpressVPN makes only a cursory attempt to apply this test. Mot. 14.

ExpressVPN repeats its argument that Plaintiffs fail to allege purposeful direction. Mot. 14. As addressed above, this is unpersuasive. *See Briskin* at 761 (rejecting a similar argument because "we have already concluded that the extent of Shopify's purposeful direction… supports specific personal jurisdiction.")

ExpressVPN suggests that jurisdiction would be unreasonable because "ExpressVPN subscriptions are not governed by California law" (referring to its terms

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    7          Case No. 8:25-cv-01273-FWS-DFM

of service, which elect British Virgin Islands law). Mot. 14. If ExpressVPN is saying that California has little interest in adjudicating the dispute, or that this would conflict with BVI sovereignty, that is unpersuasive. Plaintiffs are California residents bringing a putative California class action based on California law. There is no forum that has a greater interest. And California enforcing its own consumer protection laws does not conflict with BVI sovereignty.[4]

ExpressVPN suggests that jurisdiction would be unreasonable because Plaintiff Millar "agreed to resolve his claims elsewhere" (arbitration in the BVI). Mot. 15. But as addressed below, Mr. Millar was not bound to arbitration. And ExpressVPN does not contend that Mr. Martinez must arbitrate.

ExpressVPN does not address other factors, like the burden of litigating here, the importance of the forum to the plaintiff's interest in convenient and effective relief, or the efficiency of judicial resolution. ExpressVPN fails to make a "compelling case" that jurisdiction would be "unreasonable." *Briskin* at 751.

## II. Plaintiffs have statutory and Article III standing.

To "establish standing" under California consumer protection laws, "plaintiffs must meet an economic injury-in-fact requirement, which demands no more than the corresponding requirement under Article III." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015).

In ARL cases, federal and state courts consistently hold that a plaintiff establishes statutory and Article III standing by alleging that the defendant's failure to comply with the ARL caused them to spend money they would not otherwise have spent. *See Arnold v. Hearst Magazine Media, Inc.*, 2021 U.S. Dist. LEXIS 25706, at *19-20 (S.D. Cal. Feb. 10, 2021) (standing established when plaintiff "would not have

---

[4] ExpressVPN never argues that its terms waive Plaintiffs' California consumer protection claims. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1085 (9th Cir. 2009) (this would violate the "anti-waiver provision" of the CLRA as well as "California's strong public policy to protect consumers" (quotes omitted)).

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    8              Case No. 8:25-cv-01273-FWS-DFM

paid Defendants any money if they knew they were going to be enrolled in automatic subscription programs"); *Zeller v. Optavia, LLC*, 2022 U.S. Dist. LEXIS 230895, at *21 (S.D. Cal. Dec. 22, 2022) (same); *Morrell v. WW Int'l, Inc.*, 551 F. Supp. 3d 173, 181 (S.D.N.Y. 2021) (same); *Viveros v. Audible, Inc.*, 2023 U.S. Dist. LEXIS 189161, at *15 (W.D. Wash. Oct. 20, 2023) (same); *Mayron v. Google LLC*, 269 Cal. Rptr. 3d 86, 92 (Cal. Ct. App. 2020) (statutory standing would be established by allegation that "Google's failure to adequately disclose that the Google Drive storage plan would automatically renew each month caused plaintiff to spend money he otherwise would not have spent").

Plaintiffs allege that if "ExpressVPN had complied with the ARL and made clear that it was going to automatically charge" Plaintiffs, they "would not have signed up in the first place or would have cancelled before" they were "automatically charged." FAC ¶¶55, 59. That is, ExpressVPN's violations caused them to spend money they would not otherwise have spent. This establishes statutory and Article III standing.

Quoting *Warner*, ExpressVPN asserts that being "induced to purchase a product one would not otherwise have purchased is not loss of money or property within the meaning of the statute as long as one still receives the benefit of the bargain." *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1094 (C.D. Cal. 2015). But in *Warner*, the plaintiff did "not allege that he did not want" the product. *Id.* Here, Plaintiffs allege that they did not "expect, want, or consent to automatic renewal." FAC ¶¶53, 56. In other words, automatic renewal was not part of the bargain. ExpressVPN's overbroad reading of *Warner* is also foreclosed by *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013) (standing established by allegation that a plaintiff "bought" a product when "they otherwise would not have done so").

ExpressVPN says that Plaintiffs are improperly relying on the ARL's "unconditional gift" provision to establish standing. Mot. 16. For standing, however,

Plaintiffs are not relying on this provision. FAC ¶¶53, 56 (no mention of the unconditional gift provision). So the Court need not resolve the dispute about whether the unconditional gift provision applies to ExpressVPN's software.[5]

## III.     The Court has equitable jurisdiction over the UCL and FAL claims.

ExpressVPN argues that Plaintiffs' equitable claims under the FAL and UCL should be dismissed because Plaintiffs have an "adequate legal remedy." Mot. 17. But "a legal remedy is only adequate" if "it is equally as prompt, certain, and in other ways efficient as the equitable remedy proposed." *Farmer v. Barkbox, Inc.*, 2023 U.S. Dist. LEXIS 222435, at *15 (C.D. Cal. Oct. 6, 2023) (quotes omitted); *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937) (same). And in an ARL case, a CLRA claim "includes more stringent elements" than a "UCL claim," such that a plaintiff may show a "right to restitution under the UCL but fall short of establishing … damages under the CLRA." *Farmer*, 2023 U.S. Dist. LEXIS 222435, at *15-16. Here, Plaintiffs plead that their CLRA claims have more stringent elements, as compared to the UCL. FAC ¶¶60-63. At this early stage, this is sufficient to plead an inadequate remedy at law.

If the Court disagrees, controlling law requires that dismissal be without prejudice to Plaintiffs refiling their UCL and FAL claims in state court. *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025) (The district court "should have dismissed [Plaintiffs'] UCL claim without prejudice to refiling the same claim in state court."); FAC ¶65.

## IV.     Plaintiffs adequately allege their claims.

ExpressVPN does not contend that it complies with the ARL as a matter of law.

---

[5] To be sure, the unconditional gift provision may apply to Plaintiffs' damages. *Zeller v. Optavia LLC*, 2024 U.S. Dist. LEXIS 51882, at *22 (S.D. Cal. Mar. 14, 2024) (Plaintiffs may invoke the unconditional gift provision to calculate damages); *Sanderson v. Whoop, Inc.*, 2025 U.S. Dist. LEXIS 42118, at *32 (N.D. Cal. Mar. 7, 2025) (certifying an ARL class damages model based on the unconditional gift provision). But that is a dispute for a later day.

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    10          Case No. 8:25-cv-01273-FWS-DFM

Mot. 2. Nor could it: Plaintiffs plausibly plead that it violates the ARL in nearly every way. FAC ¶¶40-52; *see* Dkt. 26-2 (the ExpressVPN sign-up page at issue). ExpressVPN instead argues that, under the reasonable consumer standard, "any reasonable consumer would have understood that ExpressVPN's subscriptions were automatically-renewing" as a matter of law. Mot. 20. According to ExpressVPN, this defeats the claims that sound in fraud (the CLRA, FAL, and UCL deceptive prong claim). This argument fails on two levels.

First, because ExpressVPN plausibly violates the ARL, there is a presumption that this violation is deceptive. When "the California legislature has deemed certain conduct material" by passing a law specifically prohibiting that conduct, "courts must presume … that that conduct is 'likely to deceive' ordinary consumers." *Brown v. Hain Celestial Grp., Inc.*, 2015 U.S. Dist. LEXIS 67912, at *29 (N.D. Cal. May 26, 2015). The ARL was passed specifically to prohibit "fine print" automatic renewal terms that deceived consumers. *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 11 (Cal. Ct. App. 2021) (quotes omitted). So the prohibited conduct is presumed likely to deceive.

Second, whether a reasonable consumer would notice ExpressVPN's disclosures is a "question of fact not appropriate" to resolve on the pleadings. *Gill v. Chipotle Mexican Grill, Inc.*, 2025 U.S. Dist. LEXIS 98878, at *8 (C.D. Cal. May 19, 2025). "It is a rare situation in which a motion to dismiss will be granted for failure to satisfy" the reasonable consumer test. *Id.* Plaintiffs plausibly allege that ExpressVPN failed to clearly and conspicuously disclose its automatic renewal. FAC ¶¶40-52. So this is not one of those rare cases where this fact issue can be resolved on the pleadings.

ExpressVPN asserts that Plaintiffs failed to satisfy Rule 9(b) because "their own allegations admit that ExpressVPN ***did*** repeatedly, explicitly, and visibly disclose the fact that the subscriptions autorenewed." Mot. 21. This is not a Rule 9(b) argument (i.e., an argument that Plaintiffs fail to sufficiently detail their claims); it is a repeat of

ExpressVPN's argument that, under the pleaded facts, its conduct was non-deceptive as a matter of law. As addressed above, that argument is unpersuasive. [6]

ExpressVPN argues that the UCL unlawful and unfair prong claims fail because "[P]laintiffs merely repackage the same underlying conduct" as for the other claims. Mot. 21-22. This argument fails for similar reasons: Plaintiffs plausibly plead a violation of the ARL. And for the UCL unlawful prong, the reasonable consumer test does not apply, because consumer deception is not an element of the predicate ARL violation. *See, e.g.*, *Bruton v. Gerber Prods. Co.*, 2017 U.S. App. LEXIS 12833, at *6 (9th Cir. July 17, 2017) ("The best reading of California precedent is that the reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation."); *Silver v. BA Sports Nutrition, LLC*, 2020 U.S. Dist. LEXIS 99320, at *10 (N.D. Cal. June 4, 2020) (following *Bruton*); *Hadley v. Kellogg Sales Co.*, 2019 U.S. Dist. LEXIS 136791, at *71 (N.D. Cal. Aug. 13, 2019) (same).

## V. The Court should deny ExpressVPN's motion to compel Mr. Millar to arbitration.

ExpressVPN's motion fails for multiple, independent reasons: (A) There was no binding agreement to arbitrate, (B) the arbitration provision is unconscionable, and (C) ExpressVPN waived any right to compel arbitration.

### A. ExpressVPN fails to establish an agreement to arbitrate.

ExpressVPN "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771

---

[6]And Plaintiffs do satisfy 9(b). They plausibly plead the "who, what, when, where, and how" of ExpressVPN's deceptive conduct. *Battle*, 607 F. Supp. 3d at 1046. They allege how ExpressVPN's online subscription process violated the ARL (the who, what and how). FAC ¶¶40-52. And they allege where they live, when they signed up, and when they were illegally renewed (the when and where). FAC ¶¶53-58, ¶¶7-8.

F.3d 559, 565 (9th Cir. 2014).[7] California state law governs. To establish mutual assent, ExpressVPN must show that: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).[8] ExpressVPN fails to show either.

### 1.    ExpressVPN failed to provide reasonably conspicuous notice.

"This test has two aspects: the visual design of the webpages and the context of the transaction." *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025).

<u>Visual design.</u> The question is whether the terms "advisal is displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* While there is no "bright-line" test, courts consider the "location of the [terms] advisal on the webpage," and "the font size, color, and contrast (against the page's background)." *Id.* at 709-10. When an advisal is in tiny, low-contrast font, on a page dominated by other information, the Ninth Circuit and district courts find the advisal insufficient. Here are four examples:

---

[7] ExpressVPN agrees that the Court, not an arbitrator, decides whether a valid arbitration agreement exists. Mot. 19; *Three Valleys Mun. Water Dist. V. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991).

[8] This test governs sign-in wrap agreements like ExpressVPN's. *Id.* at 865-66 (describing sign-in wrap agreements).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15





16  Jacobson Decl., Ex. 2; *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1157 (9th Cir.

17  2025) (notice was inconspicuous because it was "place[d] outside of the user's natural

18  flow"—below the "Continue" button and "its font" was "notably timid in both size and

19  color").

20

21

22

23

24

25

26

27

28

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    14        Case No. 8:25-cv-01273-FWS-DFM

Jacobson Decl., Ex. 3; *Shultz v. TTAC Publ'g, LLC*, 2020 U.S. Dist. LEXIS 198834, at *10-11 (N.D. Cal. Oct. 26, 2020) (pre-checked box notice was inconspicuous because it was "in very small text, and [was] dwarfed by the large and colorful green 'Complete

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration          15          Case No. 8:25-cv-01273-FWS-DFM

Purchase' button below it").



Jacobson Decl., Ex. 4; *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) (advisal inconspicuous because it was in "smaller font than both the 'Sign Up' button and the line for account-holders to sign in" and "the lighter font of the notice language also blends into the white background more than the darker writing above it, drawing attention away from it.").



Jacobson Decl., Ex. 5; *Farmer* at *6 (notice was inconspicuous because it was "printed small, [in] light-colored font at the bottom of a page crowded with graphics and text more likely to attract the user's attention").

The common thread is that the advisal is in tiny, lower contrast font, and the pages are dominated by prominent order and product information. The same is true of ExpressVPN's terms advisal. Here is that page:



Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    18          Case No. 8:25-cv-01273-FWS-DFM

Dkt. 26-2.

The advisal font ("By submitting this form, you agree...") is tiny, with low-contrast gray font.[9] The advisal is below the prominent "Join Now" button and "outside of the user's natural flow," so "[a] reasonably prudent user would likely click [Join Now] and read no further." *Chabolla*, 129 F.4th at 1157; *see Shultz*, 2020 U.S. Dist. LEXIS 198834, at *10-11. The page is also dominated by prominent information advertising the products. This fails the visual conspicuousness test.

According to ExpressVPN, it's enough that its hyperlink is green and underlined. That is not enough. The hyperlinks were colored in *Chabolla* and *Shultz*, underlined in *Serrano*, and colored and underlined in *Farmer. See* above. The problem there (and here) is that the advisal clause is in tiny, low-contrast font that is lost among other content dominating the page.

Context of the transaction. The "context of the transaction is informed by the fact that there is an automatically renewing subscription at issue." *Godun,* 135 F.4th at 712 (applying *Sellers*, 289 Cal. Rptr. 3d at 26). In this context, "the Legislature has acknowledged that consumers often do not expect to enter into an ongoing relationship" and are less likely to be looking out for contractual terms. *Sellers* at 22; *Godun* at 712. So the terms advisal must be clear and conspicuous. *Sellers* at 21-22. *see Farmer*, 2023 U.S. Dist. LEXIS 222435, at *7 (in an ARL case, rejecting defendant's "suggestion that a less demanding conspicuous-notice standard should apply because the transaction here concerned a potentially 'ongoing' relationship"). This context confirms that ExpressVPN's advisal was insufficient.

ExpressVPN asserts that "courts in the Ninth Circuit consistently find assent under materially identical circumstances." Mot. 18 (citing *Wiseley* and *Surkhabi*). But in *Wiseley*, the plaintiff "conceded before the district court that there was sufficient

---

[9] ExpressVPN describes the advisal clause as "black font." Mot. 6. It's actually low-contrast grey font.

notice to create a valid contract" and the only issue on appeal was unconscionability. *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017). And *Surkhabi* involved the purchase of a Tesla—a different context where consumers would be much more on the look out for detailed contractual terms. *Surkhabi v. Tesla, Inc.*, 2022 U.S. Dist. LEXIS 198699 (C.D. Cal. Oct. 27, 2022).

ExpressVPN's terms advisal was insufficiently conspicuous. This is sufficient reason to find that there was no agreement to arbitrate. And as addressed next, there is a second, sufficient reason.

### 2. ExpressVPN's sign-in wrap does not establish consumers' unambiguous assent.

For a sign-in wrap to be effective, the "action taken by the internet user—such as clicking a button or checking a box" must "unambiguously manifest [the user's] assent to [the] proposed contractual terms." *Godun*, 135 F.4th at 710. California law is strict: the user must be "*explicitly* advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* (quoting *Berman*, 30 F.4th at 857). And there must be no mismatch between the user's action and the advisal. "*Chabolla*, relying on California law, emphasizes that the explanation of the legal significance of an action must truly be unambiguous: there, an advisal read '[b]y signing up you agree ....' Because the action button read 'Continue,' however, rather than 'Sign Up,' the court concluded that there was no unambiguous manifestation of assent." *Id.* at 711 (quoting *Chabolla*, 129 F.4th at 1158).

ExpressVPN's terms advisal states: "By submitting this form, you agree to our Terms of Service." Dkt. 26-2. But there "is no [submit] button." *Chabolla*, 129 F.4th at 1158. "[T]he only button on" the screen "reads [Join Now]." *Id.*; Dkt. 26-2. "At no point on [the] screen is a user advised that a particular action has [submitted the form] or will [submit the form]." *Chabolla* at 1158. "It is up to the user to assume that . . . clicking the [Join Now] button amounts to [submitting the form]." *Id.* Because of this

mismatch, Mr. Millar could not have "unambiguously assented" to the arbitration terms. This is another reason to deny ExpressVPN's Motion.

### B.    The arbitration provision is unconscionable.

ExpressVPN's arbitration provision is also substantively and procedurally unconscionable. *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

### 1.    The arbitration provision is substantively unconscionable.

Unconscionable fees. It "is substantively unconscionable" to impose "arbitral forum fees that are prohibitively high." *Sonic-Calabasas A, Inc. v. Randolph*, 57 Cal. 4th 1109, 1144-45 (2013)[10]*; Gostev v. Skillz Platform, Inc.*, 305 Cal. 3d Rptr. 248, 267 (Cal. Ct. App. 2023) (finding unconscionable arbitration fees of $6,250 to bring a claim for $50).

ExpressVPN's arbitration provision applies the "Rules of Arbitration" of the "International Centre for Dispute Resolution" (ICDR). Dkt. 26-3 ("Terms") §15. Under those rules, Mr. Millar would pay a $1,450 filing fee. Jacobson Decl., Ex. 6 (fee for claims under $75,000). The "Final Fee" fee would then be $1,150. *Id.* And then there is arbitrator compensation. *Id*. ExpressVPN's terms require that an arbitrator be "qualified and have a background in the area of computer networks, including but not limited to the internet." Terms §15. That would cost nearly $1,000 an hour. Jacobson Decl., Ex. 7 (example arbitrator charging $950 per hour). If the arbitrator spends five hours on the case, that is about $5,000. ExpressVPN's terms require splitting these costs. Terms §15 ("the costs of the arbitration shall be borne equally"). But even splitting costs, that is over $3,000 to Mr. Millar (on top of his $1,450 filing fee). So to pursue his claim for $12.95 (one month of illegal renewal), ExpressVPN would require him to spend $4,500. That is unconscionable.

One-sided fee provision. An arbitration provision is also unconscionable if it

---

[10] California law applies. *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 584 (N.D. Cal. 2020) (The "forum will apply its own rule of decision [California law] unless a party litigant timely invokes the law of a foreign state.").

contains a one-sided "loser pays" fee-shifting provision adverse to the plaintiff. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1002 (9th Cir. 2021). If ExpressVPN wins in arbitration, Mr. Millar (the party that "commenced the arbitration") must pay all "[r]easonable costs (including all costs of arbitration) and attorney's fees." Terms §15. The arbitrator has no discretion on this. *Id.* ("The Arbitrator shall have no power or authority to add to or detract from this Agreement"). The fee-shifting provision here is even worse than the unconscionable one in *Gostev*, which at least allowed either side to prevail and get fees. *Gostev*, 305 Cal. Rptr. 3d at 267.

Forum in the BVI. Imposing a faraway venue is unconscionable. *Milliner v. Bock Evans Fin. Counsel, Ltd.*, 114 F. Supp. 3d 871, 880 (N.D. Cal. 2015). ExpressVPN's terms mandate arbitration in the British Virgin Islands. Terms §15. And that the arbitration venue can be changed if the "parties agree otherwise," *id.*, does not cure the unconscionability, *Sheelit v. Amerisave Mortg. Corp.*, 754 F. Supp. 3d 995, 1012 (C.D. Cal. 2024) ("No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it." (quoting *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 125 (2000))).

ExpressVPN's prohibitive arbitration fees, one-sided fee shifting, and BVI forum "effectively block[] every forum for the redress of disputes, including arbitration itself." *Sonic-Calabasas*, 57 Cal. 4th at 1148. This is substantively unconscionable.

## 2.    The arbitration provision is procedurally unconscionable.

"A finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 382 (Cal. Ct. App. 2001). Mr. Millar had no opportunity to negotiate, the agreement "was presented in a take-it or leave-it manner," and he "lacked equal bargaining power." *Baxter v. Genworth N. Am. Corp.*, 224 Cal. Rptr. 3d 556, 565 (Cal. Ct. App. 2017). ExpressVPN's terms had no opt-out provision. This adhesive contract was procedurally unconscionable.

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    22          Case No. 8:25-cv-01273-FWS-DFM

3.    **The Court has the power to invalidate the arbitration provision.**

<u>Unconscionability is not delegated.</u> ExpressVPN relies on *ASUS* for the premise that the incorporation of the ICDR rules effectively delegates arbitrability. *ASUS Computer Int'l v. Interdigital, Inc.*, 2015 U.S. Dist. LEXIS 118794, at *13 (N.D. Cal. Sept. 4, 2015). But *ASUS* involved a patent dispute between two large technology companies and it does not apply to everyday consumers. *ASUS* based its finding of delegation on *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). And *Brennan*, and therefore *ASUS*, are "limited" to "arbitration clause[s] between two 'sophisticated parties.'" *Mikhak v. Univ. of Phx.*, 2016 U.S. Dist. LEXIS 80705, at *9 (N.D. Cal. June 21, 2016). When "one of the parties is an ordinary consumer," the majority of courts have confirmed that "incorporation of the AAA rules, standing by itself, does not amount to clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Murray v. Under Armour, Inc.*, 2019 U.S. Dist. LEXIS 231532, at *10 (C.D. Cal. Feb, 11, 2019)*; Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019).

ExpressVPN relies on *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024), and *Rendon v. T-Mobile USA, Inc.*, 747 F. Supp. 3d 1314, 1318 (C.D. Cal. 2024). But there, the arbitration provision directed consumers to the applicable rules, including delegation, through a hyperlink or URL address. Here, ExpressVPN fails to do that.

Because unconscionability was not effectively delegated, the Court can invalidate the arbitration provision.

<u>The delegation clause is unconscionable.</u> The delegation clause fails for an independent reason: it is itself unconscionable. Courts can hear challenges to the delegation clause itself. *Rent-A-Ctr., W., Inc., v. Jackson*, 561 U.S. 63, 72 (2010); *see J.P. v. Educ. Testing Servs.*, 2020 U.S. Dist. LEXIS 259073, at *15 (C.D. Cal. Oct. 30, 2020) (finding a delegation clause "unenforceable because it is unconscionable"). The

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                23        Case No. 8:25-cv-01273-FWS-DFM

delegation clause is unconscionable for the same reasons as the broader arbitration provision: under ExpressVPN's adhesive terms, to have the arbitrator decide unconscionability, Mr. Millar would have to pay prohibitive arbitration costs, risk the one-way fee-shifting provision, and travel to the BVI. *Lim*, 8 F.4th at 1006.

### 4. The Court cannot reform ExpressVPN's unconscionable arbitration provision; it must be invalidated.

ExpressVPN's severance and reform clause cannot save its arbitration provision. Terms §17 ("If any provision in this Agreement is held invalid or unenforceable, that provision shall be construed in a manner consistent with applicable law…"). "An arbitration agreement permeated by unconscionability ... should not be enforced." *Streedharan v. Stanley Indust. & Auto., LLC*, 630 F. Supp. 3d 1244, 1274 (C.D. Cal. 2022). Courts refuse to sever agreements containing even just some of the unconscionable terms in ExpressVPN's provision. *See, e.g., Sheelit*, 754 F. Supp. 3d at 1013 (refusing to sever a provision containing a lack of mutuality and an arduous venue provision). When, as here, there are many unconscionable provisions, "no case" supports severance, because the unconscionability could only be saved "by a reformation beyond the Court's authority." *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1009 (N.D. Cal. 2015) (cleaned up).

### C. ExpressVPN waived any right to compel arbitration.

A "party waives its right to compel arbitration when (1) it has knowledge of the right, and (2) it acts inconsistently with that right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023).[11]

There is "no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, we consider the totality of the parties' actions." *Hill* at 471. If an internet company updates its online terms to remove its

---

[11] "The Supreme Court's recent decision in *Morgan v. Sundance*, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022), has removed prejudice to the non-moving party as an element of waiver in the context of arbitration contracts." *Id*. at 460.

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                 24        Case No. 8:25-cv-01273-FWS-DFM

arbitration clause, and attempts to bind customers to the new terms, the company has waived its right to compel arbitration.[12]

ExpressVPN waived any right to compel arbitration by updating its online terms to remove the arbitration provision and repeatedly attempting to bind Mr. Millar to the new terms. According to ExpressVPN, when Mr. Millar signed up on September 10, 2022, its terms required arbitration. Mot. 4, 7: Dkt. 26-1 (Buckley Decl.) ¶14; Terms §15. Those terms also had the following "Modification" provision:

> 2. ExpressVPN may update the Terms from time to time without notice. If you continue to use ExpressVPN's Services, Content, Site, Apps, or Software after these changes take effect, then you agree to the revised Terms. The current version of the Terms is available on the Site. You understand and agree that it is your obligation to review these Terms from time to time in order to stay informed on current rules and obligations. Notification on any core changes to the Terms will be provided to subscribers through an email message or update to the Site. Your use of the Content or Services following the changes to these Terms constitutes your acceptance of the changed Terms.

Terms §2.

According to this provision, if anybody uses ExpressVPN's "Services, Content, Site, Apps, or Software" after the terms are updated, they "agree to the revised Terms." *Id.* So if anybody uses the website, VPN software, or even receives ExpressVPN emails ("Content") they are purportedly bound. *See id.* (introductory paragraph). The Modification provision also says that everyone has an "obligation to review these Terms from time to time in order to stay informed." Since reviewing the terms means using the ExpressVPN website, this would purport to bind everyone too.

By at least October 20, 2022, ExpressVPN updated its terms to remove its

---

[12] "The waiver inquiry is exclusively focused on the waiving party's words or conduct; neither the effect of that conduct on the party seeking to avoid enforcement of the contractual right nor that party's subjective evaluation of the waiving party's intent is relevant." *Ugalde v. Syngenta Flowers, LLC*, 2025 U.S. Dist. LEXIS 125545, at *13 (N.D. Cal. July 1, 2025) (quotes omitted).

arbitration provision.[13] Jacobson Decl., Ex. 8 (October 20, 2022 archive) and Ex. 9 (November 30, 2022 archive). The updated terms had a Modification provision similar to the older terms. *Id.* §2. So when ExpressVPN wrote its updated terms, it chose to remove its arbitration provision. It then chose to try to bind its customers to the new terms in every plausible way it could think of.

On October 20, 2022—when ExpressVPN's updated terms were in effect—Mr. Millar was still subscribed. Millar Decl. ¶¶2-3; FAC ¶54. He used the ExpressVPN website to cancel on October 22, 2022. Millar Decl. ¶3; FAC ¶54. His monthly renewal did not expire until around November 10, and he continued to receive emails from ExpressVPN until at least November 11. Millar Decl. ¶4. Under ExpressVPN's Modification provision, he was purportedly bound to the new terms by: (1) his duty to periodically check the website for updated terms; (2) his use of the website to cancel on October 22; (3) his continued receipt of ExpressVPN emails (its "Content"). And under the new terms, ExpressVPN had no right to compel arbitration. As a result, ExpressVPN waived any right to compel arbitration.

---

[13] The update almost certainly occurred earlier. This is just the archive available closest in time to Mr. Millar's September 10 sign up.

Dated: October 31, 2025

Respectfully submitted,

By: */s/ Jonas B. Jacobson*
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration            27        Case No. 8:25-cv-01273-FWS-DFM

**<u>Certification of Compliance</u>**

The undersigned, counsel of record for Plaintiffs certifies that this memorandum contains 6,832 words, which complies with the word limit of L.R. 11-6.1

Dated: October 31, 2025                    By: *<u>/s/ Jonas B. Jacobson</u>*
                                                                    Jonas B. Jacobson

Plaintiffs' Opposition to Defendant's
Motion to Dismiss or
Compel Arbitration                    28          Case No. 8:25-cv-01273-FWS-DFM