UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**PROCEEDINGS:    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [26], AND COMPELLING ARBITRATION AS TO PLAINTIFF TIMOTHY MILLAR**

In this putative class action, Plaintiffs Timothy Millar ("Millar") and Marco Martinez ("Martinez") allege that Defendant Express Technologies, Ltd. ("ExpressVPN") "sells automatically renewing subscriptions to its virtual private network services" without "provid[ing] the required clear and conspicuous disclosures or obtain[ing] affirmative consent," in violation of California's "Automatic Renewal Law and related California consumer protection laws." (Dkt. 24 (First Amended Complaint, "FAC") ¶ 3.) Before the court is ExpressVPN's Motion to Dismiss. (Dkt. 26 ("Motion" or "Mot.").) Plaintiffs oppose the Motion. (Dkt. 33 ("Opposition" or "Opp.").) ExpressVPN filed a reply in support of the Motion. (Dkt. 39 ("Reply").) The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Accordingly, the hearing set for December 11, 2025, (Dkt. 27), is **VACATED** and off calendar. Based on the record, as applied to the relevant law, the Motion is **GRANTED IN PART AND DENIED IN PART.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

## I.    Background

In September 2022, Millar "purchased one month of ExpressVPN's virtual private
network services.  Due to ExpressVPN's misleading advertisements and deficient disclosures,
he thought he was making a one-time purchase of one month of the service.  Unbeknownst to
him and without his consent, ExpressVPN enrolled him in an automatically renewing monthly
plan.  In October of 2022, ExpressVPN automatically charged his card for $12.95.  That charge
was illegal and should be refunded.  He noticed the unwanted charge on his credit card bill and
cancelled the plan to stop ExpressVPN from charging him again."  (FAC ¶ 4.)

The same thing happened to Martinez in June 2023 with regard to a one-year plan.  (*See
id.* ¶ 5.)  When Martinez noticed that Express VPN automatically charged his card in June 2024,
Martinez "noticed the unwanted charge and cancelled the card so ExpressVPN could not charge
him again."  (*Id.*)

"Plaintiffs bring this case for themselves and other California consumers that were
charged illegal autorenewal fees by ExpressVPN."  (*Id.* ¶ 6.)  They assert claims for violation of
California's False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), and
Consumers Legal Remedies Act ("CLRA"), arguing that ExpressVPN violated these laws by
"disseminating misleading advertisements concerning the automatically renewing nature of
ExpressVPN plans" which "misled reasonable consumers about the automatically renewing
nature of the plans."  (*Id.* ¶ 76; *see id.* ¶ 84, 90, 95, 104-05.)

## II.    Discussion

ExpressVPN moves to dismiss Plaintiffs' claims on the basis that (A) the court lacks
subject matter jurisdiction because Plaintiffs lack standing, (B) the court lacks equitable
jurisdiction because plaintiffs have an adequate remedy at law, (C) the court lacks personal
jurisdiction over ExpressVPN, and (D) Plaintiffs' claims are inadequately alleged.  (Mot. at 9-
17, 20-23.)  In the alternative, ExpressVPN argues (E) the court should compel arbitration as to
Millar.  (*Id.* at 18-19.)  The court considers these arguments in turn.

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.
_____

### A.    Subject Matter Jurisdiction: Standing

Article III of the United States Constitution requires that courts adjudicate only actual cases or controversies. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), *as revised* (May 24, 2016). To constitute an actual case or controversy, the plaintiffs bringing a case must have standing. *See id.* at 338; s*ee Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (describing Article III standing as an "irreducible constitutional minimum"). To satisfy the standing requirement, the plaintiffs bear the burden of demonstrating that they: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citations omitted). At the pleading stage, the plaintiffs must "clearly . . . allege facts demonstrating each element," *id.* (cleaned up), and "demonstrate standing separately for each form of relief sought," *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

In addition, in 2004, California voters passed Proposition 64, which changed who may sue to enforce the UCL from any person "acting for the interests of itself, its members or the general public" to any person "who has suffered injury in fact and has lost money or property as a result of such unfair competition.'" *In re Tobacco II Cases*, 207 P.3d 20, 31 (Cal. 2009). The same "lost money or property" requirement applies to FAL claims. Cal. Bus. & Prof. Code § 17535. To have standing under the UCL and FAL, then, plaintiffs must now "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice . . . that is the gravamen of the claim." *Id.* at 885. "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885-86 (Cal. 2011). The CLRA provides that "[a]ny consumer who suffers any damage as a result of" practices the CLRA prohibits may bring suit. Cal. Civ. Code § 1780.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

ExpressVPN argues the Complaint should be dismissed under Federal Rule of Civil
Procedure 12(b)(1) because "Plaintiffs' theory of standing rests on the premise that they were
charged for an auto-renewed period of ExpressVPN's services without consent, . . . But
plaintiffs do not suggest that ExpressVPN failed to provide the services for which they paid" or
"that the services they received were deficient or that they were worth less than the amount
paid. . . . In short, plaintiffs received precisely what they paid for and thus obtained the benefit
of their bargain." (Mot. at 15.) The court is not persuaded. Plaintiffs allege that if
ExpressVPN had "made clear that it was going to automatically charge Mr. Millar in this way,
he would not have signed up in the first place or would have cancelled before he was
automatically charged." (FAC ¶ 55; *id.* ¶ 59 (same for Mr. Martinez).) "Plaintiffs have alleged
a harm which is concrete: loss of money they otherwise would not have paid. They allege they
lost money as a result of [ExpressVPN's] unlawful conduct, or in other words, [ExpressVPN's]
failure to provide the disclosures the [Automatic Renewal Law] requires. Accepting the
allegations in the FAC as true, Plaintiffs have satisfied Article III standing." *Zeller v. Optavia,
LLC*, 2022 WL 17858032, at *6 (S.D. Cal. Dec. 22, 2022); *see also Arnold v. Hearst Mag.
Media, Inc.*, 2021 WL 488343, at *7 (S.D. Cal. Feb. 10, 2021 ("Plaintiffs' allegations that they
paid Defendants for term magazine subscriptions and would not have paid Defendants any
money if they knew they were going to be enrolled in automatic subscription programs are
sufficient to satisfy the standing requirements of the FAL."); *cf. Mayron v. Google LLC*, 54 Cal.
App. 5th 566, 574 (2020) ("To establish standing, plaintiff would also need to allege that he
ordered increased Google Drive storage but would not have done so had the disclosures been
provided, or that he would have cancelled the additional storage had it been easier to do so.").

The two cases ExpressVPN cites—*Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083 (C.D.
Cal. 2015) and *Roz v. Nestle Waters N. Am., Inc.*, 2017 WL 132853, at *2 (C.D. Cal. Jan. 11,
2017)—are materially distinguishable. (Mot. at 15-16.) In both of those cases, the plaintiff did
not allege that they did not want the products they received when their purchase was allegedly
wrongfully renewed. *Warner*, 105 F. Supp. 3d at 1095 ("Warner does not allege that he did not
want Tinder Plus (at any price), that Tinder Plus was unsatisfactory, or that Tinder Plus was
worth less than what he paid for it. He has therefore not pled that he suffered a loss capable of
restitution under the FAL or UCL."); *Roz*, 2017 WL 132853, at *2 ("The Plaintiffs never allege
that they did not want the water they received, nor do they allege that the water was worth less

---

**CIVIL MINUTES – GENERAL**                                                          **4**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

than what they were charged. Therefore, since paying money for a product that you in fact want
is not an injury, the Plaintiffs cannot demonstrate that they have standing to bring suit under the
UCL.").  Here, in contrast, Plaintiffs allege they "did not expect, want, or consent to automatic
renewal."  (FAC ¶¶ 53 (Millar), 56 (Martinez).)

   At this stage of the proceedings, the court does not find dismissal is warranted due to a
lack of standing.  The Motion on this basis is **DENIED**.

### B.     Equitable Jurisdiction: UCL and FAL Claims

   Having concluded the court has subject matter jurisdiction, the court turns to whether it
has equitable jurisdiction over Plaintiffs' UCL and FAL claims.  A plaintiff seeking equitable
relief must sufficiently allege that remedies at law are inadequate.  *Sonner v. Premier Nutrition
Corp.*, 971 F.3d 834, 841-44 (9th Cir. 2020); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308,
1311-15 (9th Cir. 2022).  This means that courts "generally require plaintiffs seeking equitable
relief to allege some facts suggesting that damages are insufficient to make them whole."
*Rodriguez v. FCA US LLC*, 2023 WL 3150075, at *3 (C.D. Cal. Mar. 21, 2023) (quoting
*Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020)
(collecting cases)); *see also Int'l Westminster Bank Ltd. v. Fed. Deposit Ins. Corp.*, 509 F.2d
641, 644 (9th Cir. 1975) (affirming dismissal of complaint that was "plainly deficient in its
attempt to allege basic equity jurisdiction"); *O'Shea v. Littleton*, 414 U.S. 488, 499, 502 (1974)
(noting complaint seeking equitable relief failed where it did not "establish the basic requisites
of the issuance of equitable relief" including "the inadequacy of remedies at law"); *Bonner v.
Circuit Court of City of St. Louis*, 526 F.2d 1331, 1335-36 (8th Cir. 1975) (en banc) (affirming
the district court's dismissal of complaint seeking equitable relief for failure to allege the lack of
an adequate remedy at law); *Klayman v. Rao*, 49 F.4th 550, 553-54 (D.C. Cir. 2022) (same);
*Smith v. RecordQuest, LLC*, 989 F.3d 513, 520 (7th Cir. 2021) (same).

   In this case, Plaintiffs do not argue that money could not make them whole, but rather
argue that "their CLRA claims have more stringent elements, as compared to the UCL," which
they argue "[a]t this early stage . . . is sufficient to plead an inadequate remedy at law."  (Opp. at
10; *see also* FAC ¶¶ 60-65.)  The court disagrees.  "[T]he fact that one remedy may be simpler

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

or easier to obtain does not demonstrate that Plaintiffs lack an adequate remedy at law." *Clevenger v. Welch Foods Inc.*, 2022 WL 18228288, at *6 (C.D. Cal. Dec. 14, 2022) ("[Plaintiffs] argue, however, that achieving an award of the full purchase price under the UCL would be simpler than achieving an award of the full purchase price in damages under the CLRA."); *see also Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *2 (N.D. Cal. Mar. 28, 2024) (rejecting sufficiency of the plaintiff's argument "that he has no adequate remedy at law because his legal claims have different elements that are harder to prove and require additional showings of proof"). In other words, the court finds insufficient support in the record for the notion that legal "damages are insufficient to make [Plaintiffs] whole" for the injury they allegedly suffered because their payment to ExpressVPN was automatically renewed. *Rodriguez*, 2023 WL 3150075, at *3.

"Although leave to amend 'shall be freely given when justice so requires,' it may be denied" where it "would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)). Here, the court finds granting Plaintiffs leave to amend the UCL and FAL claims would not serve any purpose because to grant it would be futile; nothing in the record suggests that Plaintiffs could allege any new facts that would suffice to show why money damages cannot make them whole for their alleged injury. *See id.*; *Rodriguez*, 2023 WL 3150075, at *3. Accordingly, Plaintiffs' UCL and FAL claims are **DISMISSED WITHOUT LEAVE TO AMEND** but **WITHOUT PREJUDICE** to refiling in state court.

**C.    Personal Jurisdiction**

As to Plaintiffs' remaining claim, the CLRA claim, the court turns to ExpressVPN's argument that the court does not have personal jurisdiction over it. (Mot. at 9-15.) "ExpressVPN is organized under the laws of the British Virgin Islands and provides its services to customers worldwide. The company does not have any headquarters or offices in California or the United States." (Dkt. 26-1 (Declaration of Jack Buckley, Express VPN's Director of Communications).)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

"For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotations omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum state can give rise to either general or specific jurisdiction. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). Plaintiffs argue that the court has specific personal jurisdiction over ExpressVPN. (Opp. at 1-8.)

Specific jurisdiction depends upon "the relationship among the defendant, the forum, and the litigation." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (citation modified) (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84, (2014)). In the Ninth Circuit, courts use the following three-part test for specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

### 1.      Purposeful Direction

In cases involving intentional torts, the court analyzes "purposeful direction" by applying the three-part "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). "[T]he purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

in the forum state." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025); *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir. 2018) (explaining that the purposeful direction test "applies in suits sounding in tort where the tort was committed outside the forum state"). The parties agree the purposeful direction test applies here. (*See* Mot. at 10; Opp. at 1.)

The court finds that the first prong of the *Calder* effects test, which requires an intentional act, is satisfied by, at a minimum, ExpressVPN's advertising to California users and hosting VPN servers in California. *See Briskin*, 135 F.4th at 756 ("[E]ach of Shopify's actions in its regular course of business is an intentional act."); *Hidalgo v. JPMorgan Chase Bank, N.A.*, 2025 WL 1370488, at *2 (S.D. Cal. May 12, 2025) (finding the first prong satisfied where plaintiff "actively chose to transmit the disputed data rather than correct or cease reporting"). Likewise, the court finds that the third prong is satisfied because it is foreseeable that a person who subscribes to Express VPN's services in California would suffer harm in California. *See SuperTECH, Inc.*, 2025 WL 2983126, at *5 ("The circumstances of this case make clear that My Choice knew that if it breached its obligations under the contract, SuperTECH would feel that harm in the CNMI."); *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1170 (C.D. Cal. 2024) (noting there was "no real dispute" about the third element where the plaintiff "was aware that it was using and was allowing Salesforce to use data gleaned from the customer chat feature, which could foreseeably cause harm to users in California"). The court focuses its analysis on the second prong—express aiming.

The express aiming prong considers a defendant's connection to the forum state and whether the defendant specifically targeted the forum state. *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). The "express aiming" analysis largely depends "on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. "Express aiming does not require differential targeting, or a forum-specific focus. Instead, a defendant 'expressly aims' at a forum when its contacts are its own choice and not random, isolated, or fortuitous." *SuperTECH, Inc. v. My Choice Software, LLC*, --- F.4th ---, 2025 WL 2983126, at *5 (9th Cir. Oct. 23, 2025).

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.
======================================================================

In *Briskin*, the *en banc* court held that defendant Shopify "expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws."  135 F.4th at 756.  The court analogized to real-world activities in its analysis of personal jurisdiction based on online activities: "Pre-internet, there would be no doubt that the California courts would have specific personal jurisdiction over a third party who physically entered a Californian's home by deceptive means to take personal information from the Californian's files for its own commercial gain."  *Id.* at 756-57.

*Briskin* supports the court's exercise of personal jurisdiction over ExpressVPN in this case.  ExpressVPN is a business that allows California residents to purchase the ability to access servers in other locations that make it appear that the California resident's computer is operating from that location; advertises to California residents, including through targeted Google keywords; and has servers in California.  (*See* Opp. at 2-6.)  By setting up a business advertises and sells to California residents and has servers in California, ExpressVPN "individually targeted" California residents.  *Mavrix Photo, Inc.*, 647 F.3d at 1229; *see Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1012 (9th Cir. 2002) (finding "something more— conduct directly targeting the forum" through "radio and print advertisements in Las Vegas"); *see also Shirokov v. Ardatovskiy*, 2025 WL 2042224, at *2 (N.D. Cal. July 21, 2025) (finding direct targeting of the U.S. market where defendant made their "website/app accessible to the United States and have included U.S. consumers as an audience through their use of Google Ads which were targeted to the United States").  Where, "as here, a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state."  *Id.* at 1231.

ExpressVPN's arguments to the contrary—which focus on the fact that ExpressVPN has a "global—or at minimum nationwide—audience that it offers access to thousands of VPN servers in hundreds of locations around the globe, with California and its cities merely serving as some of the hundreds of examples advertised" and the fact that the nature of ExpressVPN's business involves remote access to servers in different locations, (Mot. at 10-11)—parallel "the proposition that differential targeting, in which a company targets one forum more than another, is required for express aiming," but the Ninth Circuit "expressly rejected that contention in [its]

_____

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                     Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

en banc decision in *Briskin.*" *SuperTECH, Inc.*, 2025 WL 2983126, at *5; (*see also* Mot. at 13 ("[T]his type of VPN Server messaging is equally if not predominately for the benefit of customers outside of California who would like to browse the internet from a California IP address.")). Similarly, contrary to ExpressVPN's arguments, (Opp. at 12), these contacts with California are not fortuitous, random, or isolated; again, the record reflects ExpressVPN advertises to California residents and has California servers, (*id.* at 2-6). That ExpressVPN also advertises elsewhere and has servers elsewhere does not mean it has not expressly aimed its conduct at California for purposes of personal jurisdiction. *See SuperTECH, Inc.*, 2025 WL 2983126, at *5.

## 2.    Arise out of or Relate to Forum Activities

The second requirement for specific personal jurisdiction is that the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum" such that there is "an affiliation between the forum and the underlying controversy." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citation modified). For an injury to "arise out of" a defendant's forum contacts, a plaintiff must show "a direct nexus ... between a defendant's contacts with the forum ... and the cause of action." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023). For an injury to "relate to" the defendant's forum contacts, there must be "a close connection between contacts and injury." *Id.* at 506.

The court finds that the second requirement of personal jurisdiction is satisfied because Plaintiffs' claim that ExpressVPN unlawfully renewed their payments arises out of ExpressVPN's advertising and making available VPN services to California consumers. *See Alhathloul v. DarkMatter Grp.*, 2025 WL 2320474, at *14 (D. Or. Aug. 12, 2025) ("Defendants' extraction of personal data from Plaintiff's iPhone in the U.S. is the kind of contact that would tend to cause privacy injuries. This alone satisfies the second requirement for specific jurisdiction.") (citation modified).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                     Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

### 3.    Fair Play and Substantial Justice

If a plaintiff satisfies its burden as to the first two elements of the specific personal jurisdiction analysis, the burden then shifts to the defendant to "present a compelling case" that exercising jurisdiction would be unreasonable.  *Burger King,* 471 U.S. at 476.  The Ninth Circuit has "developed a seven-factor balancing test to determine the reasonableness of asserting personal jurisdiction," looking to:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Briskin*, 135 F.4th at 761.

The court finds ExpressVPN fails to present a compelling case that the exercise of personal jurisdiction would be unreasonable.  Indeed, ExpressVPN does not even make such an argument; rather, ExpressVPN argues "it would be unreasonable to exercise personal jurisdiction over ExpressVPN" because "plaintiffs fail to adequately allege ExpressVPN purposefully directed its conduct toward California or that their claims arise out of ExpressVPN's alleged California contacts, their ExpressVPN subscriptions are not governed by California law, and because Millar agreed to resolve his claims elsewhere."  (Mot. at 14-15.) ExpressVPN has failed to carry its burden to "present a compelling case" that exercising jurisdiction would be unreasonable.  *Burger King,* 471 U.S. at 476.

In summary, the court concludes the court has personal jurisdiction over ExpressVPN. The Motion on this basis is **DENIED**.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

### D.    Rule 12(b)(6)

#### 1.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

require the opposing party to be subjected to the expense of discovery and continued litigation."
*Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,
550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both
the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff
survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory
(DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652
F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent
with a defendant's liability, it stops short of the line between possibility and plausibility of
entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678).
Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-
Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

### 2.    Analysis

ExpressVPN argues that Plaintiffs' CLRA claim—the only claim remaining in this case,
*see* Section II.B., *supra*—fails because no reasonable consumer could have been deceived given
ExpressVPN's disclosures. (Mot. at 20-21.) California laws including the CLRA "prohibit not
only advertising which is false, but also advertising which, *although true*, is either actually
misleading or which has a capacity, likelihood or tendency to deceive or confuse the
public." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (cleaned
up). "Whether a business practice is deceptive or misleading under these California statutes is
governed by the 'reasonable consumer' test," under which a plaintiff "must show that members
of the public are likely to be deceived." *Id.* (cleaned up); *see also McGinity v. Procter &
Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (similar); *Eidmann v. Walgreen Co.*, 522 F.
Supp. 3d 634, 643 (N.D. Cal. 2021) ("Conduct that is considered deceptive or misleading runs
afoul of the FAL, CLRA, and fraudulent prong of the UCL when it is likely to deceive a
reasonable consumer.") (quotations omitted).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

_____

"[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882-83 (9th Cir. 2021). However, "[b]ecause what a reasonable person would believe is generally a question of fact, it is a 'rare situation' in which a motion to dismiss will be granted for failure to satisfy this test." *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *9 (N.D. Cal. Mar. 16, 2020). Put another way, "[w]hether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer or motions to dismiss." *Moore*, 966 F.3d at 1017 (cleaned up); *see also Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 841 (E.D. Cal. 2024) ("Courts rarely grant a motion to dismiss for failure to satisfy this test in the initial pleadings.").

In this case, the court finds the FAC does not present the "rare situation" where dismissal is appropriate for failure to adequately allege that a reasonable consumer could be deceived. *Rice-Sherman*, 2020 WL 1245130, at *9 (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Although the webpage screenshots Plaintiffs include in the FAC certainly contain indications that a purchase would involve a renewing subscription, there are also indications that could possibly mislead a consumer into thinking the purchase was a one-time purchase. (*See, e.g.*, FAC ¶¶ 40, 43.) "Taking Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, as the Court must at this stage, the Court finds Plaintiffs have satisfied the reasonable consumer test." *Watson*, 736 F. Supp. 3d at 841.[1] The Motion on this basis is therefore **DENIED**.

### E.    Whether to Compel Arbitration as to Millar

Finally, if the court concludes it has jurisdiction over this case, ExpressVPN asks the court to compel arbitration as to Millar. "The checkout process to purchase ExpressVPN's VPN service that was in place on September 10, 2022," (Dkt. 26-2 (Declaration of Jack

_____

[1] For similar reasons, the court is not persuaded by ExpressVPN's argument that Plaintiffs' CLRA claim is not sufficiently pleaded under Rule 9(b) on the basis that Plaintiffs cannot make a Rule 9(b) "showing, as their own allegations admit that ExpressVPN *did* repeatedly, explicitly, and visibly disclose the fact that the subscriptions autorenewed." (Mot. at 21.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                     Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

Buckley, "Buckley Decl.") ¶ 12), when Millar purchased his one month of ExpressVPN service, (FAC ¶ 53), "required a user to affirmatively click an action button to purchase an ExpressVPN subscription," (Buckley Decl. ¶ 12). The screen looked like this:



(Dkt. 26-2.) The "Terms of Service" under the "Join Now" button contained an arbitration agreement. (Dkt. 26-3 at 11-13 ("Arbitration Agreement").)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

1.    **Legal Standard**

Under the Federal Arbitration Act (the "FAA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the court answers both questions in the affirmative, it must 'enforce the arbitration agreement in accordance with its terms.'" *Johnson v. Walmart Inc.*, 57 F.4th 677, 680-81 (9th Cir. 2023) (quoting *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020)); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (stating the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

Although "doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014) (quoting *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011)). "The first principle of a court's arbitration decision is that arbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Johnson*, 57 F.4th at 681 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)) (emphasis in original) (cleaned up); *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) ("For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                  Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

### 2.    Analysis

ExpressVPN moves to compel arbitration as to Millar based on the Arbitration
Agreement.  (Mot. at 18-20.)  Plaintiffs argue this "motion fails for multiple, independent
reasons: (A) There was no binding agreement to arbitrate, (B) the arbitration provision is
unconscionable, and (C) ExpressVPN waived any right to compel arbitration."  (Opp. at 12.)

### a.    Binding Agreement to Arbitrate

"[A]rbitration is a matter of contract and a party cannot be required to submit to
arbitration any dispute which he has not agreed so to submit."  *Norcia v. Samsung
Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (citations omitted).  "To
form a contract under . . . California law, the parties must manifest their mutual assent to the
terms of the agreement."  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir.
2022).  "Mutual assent is determined under an objective standard applied to the outward
manifestations or expressions of the parties."  *Long v. Provide Com., Inc.*, 245 Cal. App. 4th
855, 862 (2016).  The "elemental principles of contract formation apply with equal force to
contracts formed online.  Thus, if a website offers contractual terms to those who use the site,
and a user engages in conduct that manifests her acceptance of those terms, an enforceable
agreement can be formed."  *Berman*, 30 F.4th at 855-56.

"Contracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-
through') agreements, in which website users are required to click on an 'I agree' box after
being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where
a website's terms and conditions of use are generally posted on the website via a hyperlink at
the bottom of the screen."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir.
2014).  "[C]ourts have routinely found clickwrap agreements enforceable" because "[i]n that
scenario, the consumer has received notice of the terms being offered and, in the words of the
Restatement, 'knows or has reason to know that the other party may infer from his conduct that
he assents' to those terms."  *Berman*, 30 F.4th at 856 (quoting Restatement (Second) of
Contracts § 19(2)).  However, "[c]ourts are more reluctant to enforce browsewrap agreements
because consumers are frequently left unaware that contractual terms were even offered, much

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                              Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

less that continued use of the website will be deemed to manifest acceptance of those terms."
*Id.*  That is because "[t]he defining feature of browsewrap agreements is that the user can
continue to use the website or its services without visiting the page hosting the browsewrap
agreement or even knowing that such a webpage exists."  *Be In, Inc. v. Google Inc.*, 2013 WL
5568706, at *6 (N.D. Cal. Oct. 9, 2013).

"To avoid the unfairness of enforcing contractual terms that consumers never intended to
accept, courts confronted with online agreements such as those at issue here have devised rules
to determine whether meaningful assent has been given.  Unless the website operator can show
that a consumer has actual knowledge of the agreement,[2] an enforceable contract will be found
based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous
notice of the terms to which the consumer will be bound; and (2) the consumer takes some
action, such as clicking a button or checking a box, that unambiguously manifests his or her
assent to those terms."  *Berman*, 30 F.4th at 856.

As stated, Plaintiffs argue ExpressVPN's website failed to provide reasonably
conspicuous notice of the terms to which Plaintiffs would be bound, including the Arbitration
Agreement.  (Opp. at 13-20.)  The court disagrees.  "[T]o be conspicuous in this context, a
notice must be displayed in a font size and format such that the court can fairly assume that a
reasonably prudent Internet user would have seen it."  *Berman*, 30 F.4th at 856.  "[W]hile it is
permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is
present must be readily apparent.  Simply underscoring words or phrases, as in the webpages at
issue here, will often be insufficient to alert a reasonably prudent user that a clickable link
exists."  *Id.*  Indeed, "[a] web designer must do more than simply underscore the hyperlinked
text in order to ensure that it is sufficiently 'set apart' from the surrounding text."  *Id.* at 857.
"Customary design elements denoting the existence of a hyperlink include the use of a
contrasting font color (typically blue) and the use of all capital letters, both of which can alert a
user that the particular text differs from other plain text in that it provides a clickable pathway to
another webpage."  *Id.*

---

[2] ExpressVPN does not argue that Millar had actual knowledge of the Arbitration Agreement.
(*See generally* Mot.; Reply.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.
===============================================================

Here, the court observes that the "Terms of Service" hyperlink is in a bright, blue/green font and is underlined. (Dkt. 26-2.) Courts regularly conclude hyperlinks are reasonably conspicuous when the hyperlinks are in a different color than surrounding text and underlined. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) ("[T]he hyperlinked phrase 'terms of use' is colored bright green—contrasted against the surrounding white background and adjacent black text."); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. 2020) (finding terms reasonably conspicuous where, among other characteristics, "in both contexts, 'Terms of Use' was displayed in blue font and contained a hyperlink to Ticketmaster's Terms"); *Dohrmann v. Intuit, Inc.*, 823 Fed. App'x 482, 484 (9th Cir. 2020) ("The terms 'Turbo Terms of Use,' 'TurboTax Terms of Use' and 'Privacy Statements' were each light blue hyperlinks which, if clicked, directed the user to a new webpage."); *Dickey v. Ticketmaster LLC*, 2019 WL 9096443, at *7 (C.D. Cal. Mar. 12, 2019) ("find[ing] persuasive . . . undisputed facts" including that "the TOU hyperlink was in blue font to indicate as much and draw attention to it"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020) ("DoorDash's sign-in page includes two hyperlinks, to its T & C and privacy statement. The hyperlinks are both in blue, indicating to users that they are clickable.") (record citation omitted); *Driskill v. Experian Info. Sols., Inc.*, 2024 WL 4453292, at *3 (N.D. Cal. Oct. 8, 2024) ("The phrase 'Terms of Use Agreement' in the disclosure was a blue hyperlink that, if clicked, would have presented Driskill with the full text of the Terms of Use Agreement, including the arbitration agreement. Further, the 'Terms of Use Agreement' hyperlink is conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent.") (record citation and quotations omitted); *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1070 (C.D. Cal. 2023) ("Further, the hyperlink to the Terms and Conditions within the notice is prominent and emphasized. The hyperlink is underlined and formatted in bright magenta which is clearly set apart from the surrounding text.").[3]

_____

[3] *See also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77-78 (2d Cir. 2017) ("Although the sentence is in a small font, the dark print contrasts with the bright white background, and the hyperlinks are in blue and underlined," and "a reasonably prudent smartphone user knows that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found."); *Selden v. Airbnb, Inc.*, 4 F.4th 148, 157 (D.C. Cir. 2021) ("Reasonable notice does not turn on where the hyperlinked text falls on the color wheel; rather we consider whether the text was conspicuous. Here, the red terms were conspicuous and

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

In addition to the contrasting color, the court observes that the hyperlink is on a page that is not otherwise crowded with text, is not in exceedingly small font, and is not otherwise so visually obscured that would render it not reasonably conspicuous.  (*See* Dkt. 26-2.)  In other words, the court disagrees with Plaintiffs' contention that ExpressVPN "fails the visual conspicuousness test" because "the advisal clause is in tiny, low-contrast font that is lost among other content dominating the page" in the "context of the transaction."[4]  (Opp. at 19.)

**b.  Unconscionability and Waiver**

Plaintiffs next argue the court should not compel arbitration as to Millar because the Arbitration Agreement is unconscionable and ExpressVPN has waived its ability to compel arbitration.  (Opp. at 21-25.)  ExpressVPN responds that Millar agreed to delegate these arbitrability disputes to the arbitrator.  (Reply at 16-18.)

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–944 (1995)).  Courts will not disturb such agreements as long as the agreement delegates these issues to the arbitrator by "clear and unmistakable" evidence.  *Id.*; *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("The question whether the parties have submitted a particular dispute to arbitration, i.e., the '*question of arbitrability*,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" (citation modified)).  "Indeed, agreements to allow an arbitrator to decide issues of arbitrability are so sacred that courts may not override them and decide these issues even if the court thinks the

put a reasonable user on notice that they were hyperlinks. The only red text in the warning indicated the legal policies, which were set off from the surrounding black text.").

[4] The court is also not persuaded by Plaintiffs' argument that clicking the "Join Now" button did not constitute an "unambiguous manifestation of assent."  (Opp. at 20-21.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                      Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

application of the arbitration agreement is wholly groundless." *Crypto Asset Fund, LLC v.
OPSkins Grp. Inc.*, 478 F. Supp. 3d 919, 930 (C.D. Cal. 2020) (citing *Henry Schein*, 586 U.S. at
68).

Courts have found that "the incorporation of a particular set of arbitration rules—such as
the ICDR rules—that provide for the arbitrator to decide questions of arbitrability constitutes
clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability."
*ASUS Computer Int'l v. InterDigital, Inc.*, 2015 WL 5186462, at *3 (N.D. Cal. Sept. 4, 2015);
*see also, e.g.*, *Hong Kong Cont'l Trade Co. Ltd. v. Nat. Balance Pet Foods, Inc.*, 2023 WL
2664246, at *9 (C.D. Cal. Mar. 28, 2023) ("The incorporation of the ICDR Rules in the
Agreement constitutes clear and unmistakable evidence that the parties agreed to delegate
threshold issues of arbitrability to the arbitrator, including challenges to the validity of the
Agreement, e.g., whether it is unconscionable."); *Valley Power Sys., Inc. v. Gen. Elec. Co.*,
2012 WL 665977, at *5 (C.D. Cal. Feb. 27, 2012) ("Accordingly, by selecting the ICDR Rules,
the parties manifested their unmistakable intent that the arbitrators, rather than a court, would
decide whether there is an enforceable agreement to arbitrate."). That is what the Arbitration
Agreement does here. (Arb. Agr. at 11 ("All disputes arising out of or relating to this
Agreement or the use of the Site or Services shall be finally settled under the Rules of
Arbitration of the International Centre for Dispute Resolution (ICDR) by one arbitrator
appointed in accordance with said Rules.") (internal definitions omitted).) Accordingly, "[t]he
Court agrees with [ExpressVPN] and finds that the parties clearly and unmistakably delegated
arbitrability to an arbitrator." *ASUS Computer Int'l v. InterDigital, Inc.*, 2015 WL 5186462, at
*4 ("The Ninth Circuit has clearly held that an agreement incorporating arbitration rules which
include a rule giving an arbitrator the power to decide arbitrability is clear and unmistakable
evidence of the parties' intention to delegate arbitrability to the arbitrator. Here, the parties
agreed to arbitration under the ICDR rules, and these rules allow an arbitrator to decide
arbitrability."); *Hong Kong Cont'l Trade Co. Ltd.*, 2023 WL 2664246, at *10 ("For the
foregoing reasons, it is determined that the Agreement delegates issues of arbitrability to the
arbitrator."); *Valley Power Sys.*, 2012 WL 665977, at *5 ("Accordingly, the Court finds that
whether the arbitration provision is enforceable is a determination to be made by the
arbitrators.").

---

**CIVIL MINUTES – GENERAL**                                      21

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-01273-FWS-DFM                    Date: November 25, 2025
Title: Timothy Millar *et al.* v. Express Technologies Ltd.

"Although Plaintiffs state that the delegation provision . . . is unconscionable, they make no arguments on this issue separate from whether the [Arbitration Agreement] as a whole [is] unenforceable." *Crypto Asset Fund*, 478 F. Supp. 3d at 931; (*see* Opp. at 23-24 ("The delegation clause is unconscionable for the same reasons as the broader arbitration provision."). "[S]ince [Millar] failed to make any arguments specific to the delegation provision, and instead argued that the Arbitration [Agreement] *as a whole* is unconscionable under state law, [the court] need not consider that claim, because it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question." *Brennan v. Opus Bank*, 796 F.3d 1125, 1133 (9th Cir. 2015).

In sum, the court concludes that Millar signed a binding arbitration agreement that delegates arbitrability issues to an arbitrator, and that the delegation clause is enforceable. Accordingly, the court **ORDERS** that Millar's CLRA claim is **COMPELLED** to arbitration; only Martinez's CLRA claim will proceed in this court.

**III.    Disposition**

For the reasons set forth above, the Motion is **GRANTED IN PART AND DENIED IN PART.**  Plaintiffs' UCL and FAL claims are **DISMISSED WITHOUT LEAVE TO AMEND** but **WITHOUT PREJUDICE** to refiling in state court.  Millar's CLRA claim is **COMPELLED** to arbitration.  The court **ORDERS** the parties to file a joint status report regarding the arbitration proceedings every **120 days,** with the first status report due on **March 25, 2026**; and to file a joint status report within **5 days** of the completion of arbitration proceedings.  In all other respects, the Motion is **DENIED**.

The only claim remaining in this case is Martinez's CLRA claim.  ExpressVPN shall file an Answer to that claim on or before **December 16, 2025.**

---