Stephen A. Broome (Cal. Bar No. 314605)
stephenbroome@quinnemanuel.com
John W. Baumann (Cal. Bar No. 288881)
jackbaumann@quinnemanuel.com
Rex N. Alley (Cal. Bar No. 346525)
rexalley@quinnemanuel.com
QUINN EMANUEL
  URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Attorneys for Defendant*

*[Continued on next page]*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TIMOTHY MILLAR and MARCO MARTINEZ, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EXPRESS TECHNOLOGIES, LTD.,<br><br>Defendant. | Case No.: 8:25-cv-01273-FWS-DFM<br><br>**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Action Filed:  June 13, 2025<br>Judge:  Hon. Fred W. Slaughter<br>Trial Date:  None Set |

1  Nicolas G. Keller (N.Y. Bar No. 5549522)*
2  nicolaskeller@quinnemanuel.com
   QUINN EMANUEL
3    URQUHART & SULLIVAN, LLP
4  295 5th Avenue, 9th Floor
   New York, New York 10016
5  Tel:  (212) 849 7000
6  Fax:  (212) 849 7100
   (*Admitted *Pro Hac Vice*)
7
8  *Attorneys for Defendant*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Express Technologies Ltd. ("ExpressVPN"), by and through its undersigned counsel, answers Plaintiff Marco Martinez's First Amended Complaint, ECF No. 24 ("FAC"), as follows. The paragraph numbers below correspond to the paragraph numbers of the FAC.[1]

1.    ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the generalized allegations in paragraph 1 of the FAC, and on that basis denies them.

2.    The allegations in this paragraph contain legal conclusions as to which no response is required. To the extent a response is required, ExpressVPN denies any implication that it violated the ARL.

3.    The allegations in this paragraph contain legal conclusions as to which no response is required. To the extent a response is required, ExpressVPN denies the allegations in the second and third sentences of this paragraph.

4.    This paragraph contains allegations about Mr. Millar, whose claims have been either dismissed or compelled to arbitration. Accordingly, no response is required. To the extent a response is required, ExpressVPN admits that Mr. Millar purchased an automatically renewing ExpressVPN subscription in September 2022 with clear and conspicuous disclosures regarding automatic renewals, that his payment card was automatically charged $12.95 in October 2022, and that his subscription thereafter ended. ExpressVPN denies that ExpressVPN's advertisements were misleading, that its disclosures were deficient, and that Mr. Millar did not consent to automatic renewal. ExpressVPN lacks knowledge or information sufficient to form a belief as to what Mr. Millar thought when he purchased the automatically renewing subscription and the circumstances that led him to cancel his subscription, and on that basis denies the allegations in the second and

---

[1]  ExpressVPN responds only to the paragraphs in the FAC. ExpressVPN denies all allegations stated or implied by any headings or subheadings to the extent any response is required as to them.

final sentences of this paragraph. The penultimate sentence in this paragraph consists of legal conclusions to which no response is required. To the extent any facts are alleged within the penultimate sentence or a response is otherwise required, ExpressVPN denies the allegations therein.

5. ExpressVPN admits that Mr. Martinez purchased an automatically renewing ExpressVPN subscription in June 2023 with clear and conspicuous disclosures regarding automatic renewals, that his payment card was automatically charged $116.95 in June 2024, and that his thereafter subscription ended. ExpressVPN denies that ExpressVPN's advertisements were misleading, that its disclosures were deficient, and that Mr. Martinez did not consent to automatic renewal. ExpressVPN lacks knowledge or information sufficient to form a belief as to what Mr. Martinez thought when he purchased the automatically renewing subscription, whether he cancelled his credit card, and the circumstances that led him to cancel his subscription, and on that basis denies the allegations in the second and final sentences of paragraph 5. The penultimate sentence in this paragraph consists of legal conclusions to which no response is required. To the extent any facts are alleged within the penultimate sentence or a response is otherwise required, ExpressVPN denies the allegations therein.

6. Paragraph 6 consists of legal conclusions, to which no response is required. To the extent any facts are alleged within this paragraph or a response is otherwise required, ExpressVPN denies the allegations therein.

7. This paragraph contains allegations about Mr. Millar, whose claims have been either dismissed or compelled to arbitration. Accordingly, no response is required. To the extent any response is required, ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph, and on that basis denies them.

8.     ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 8, and on that basis denies them.

9.     ExpressVPN admits that plaintiff proposes a putative class that includes citizens of California but denies the propriety of any such class.

10.     ExpressVPN admits that Express Technologies Ltd. is a British Virgin Islands entity with its registered address in Tortola, British Virgin Islands.  This paragraph otherwise contains legal conclusions, to which no response is required.  To the extent a response is required, ExpressVPN denies the remaining allegations in this paragraph.

11.     The first sentence of paragraph 11 consists of a legal conclusion that requires no response.  To the extent a response is required, ExpressVPN admits the allegation therein.  ExpressVPN admits the allegations of the second sentence of this paragraph, including as to the "amount in controversy," but denies the propriety of any monetary recovery or any proposed class.

12.     ExpressVPN denies the allegations of paragraph 12.

13.     ExpressVPN denies the allegations of paragraph 13.

14.     ExpressVPN admits that it has been purchasing Google advertisements since at least June of 2022 but denies that those advertisements were or are targeting California consumers.  ExpressVPN lacks knowledge or information sufficient to form a belief as to what results a Google search for "vpn to california" displayed in June 2022, and on that basis denies the allegations in the second sentence of this paragraph.  ExpressVPN admits that it has run one or more advertisements containing the same or substantially similar language to that pictured in the red box of the excerpt of Exhibit #1 and to that quoted in the final sentence of the paragraph but denies plaintiff's characterizations of the advertisements and submits that the full advertisements speak for themselves.  ExpressVPN also avers that these advertisements predominantly convey that ExpressVPN is the best VPN service for

users to access VPN servers in California, wherever those users are geographically located.  ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph (including in footnote #1), and on that basis denies them.

15.    ExpressVPN admits that Exhibit #2 to plaintiff's complaint depicts an archived ExpressVPN webpage.  ExpressVPN admits that this webpage contains the language quoted in paragraph 15 but denies plaintiff's characterization of this language and submits that the full webpage speaks for itself.  ExpressVPN denies plaintiff's allegation that the advertisement "recommended that California consumers choose one of ExpressVPN's California servers."  Rather, ExpressVPN avers that the plain language of the advertisement states that consumers will achieve the "best results" if they use the server "closest to [their] actual geographic location," regardless of where they are located.  ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in footnote #2, and on that basis denies it.

16.    The first sentence of this paragraph contains allegations about Mr. Millar, whose claims have been either dismissed or compelled to arbitration. Accordingly, no response is required as to such allegations.  To the extent a response is required, ExpressVPN lacks knowledge or information sufficient to form a belief as to what results a Google search for "california vpn" displayed in August 2022, and on that basis denies the allegations in the first sentence of paragraph 16.  ExpressVPN admits that it has run one or more advertisements containing the same or substantially similar language to that pictured in the red box of the excerpt of Exhibit #1 but denies plaintiff's characterizations of the advertisement and submits that the full advertisement speaks for itself.  ExpressVPN denies the allegations in the final sentence of this paragraph.

17.    ExpressVPN admits that it ran advertisements throughout the time period referenced in paragraph 17 but denies plaintiff's characterization of these

advertisements as "targeting California."   ExpressVPN submits that the full advertisements speak for themselves.

18.    It is not clear what set of advertisements is intended to be included within the vague phrase "[t]hese advertisements still run today."  Accordingly, ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in the first sentence of this paragraph, and on that basis denies it. ExpressVPN lacks knowledge or information sufficient to form a belief as to what advertisements may show for any Google user based on a search for a particular phrase.  ExpressVPN avers that Google search results may depend on a variety of variables, including operating system, browser, and the user's physical location. ExpressVPN thus denies the allegations in this paragraph on this basis.

19.    ExpressVPN denies the allegations of paragraph 19.

20.    ExpressVPN admits it has maintained and advertised server locations in Los Angeles and San Francisco but denies the implication that such advertisements targeted California residents and submits that the full advertisements speak for themselves.  Express VPN admits that, all else being equal, a geographically closer server may facilitate a faster connection, but denies that its advertisements recommend California consumers use California servers in particular.

21.    ExpressVPN admits the allegations in the first two sentences of paragraph 21.  ExpressVPN denies the allegation in the third sentence of this paragraph that it has ever made a "general recommendation that California consumers select a California server."   Express VPN admits that, all else being equal, a geographically closer server may facilitate a faster connection, but denies that its advertisements recommend California consumers use California servers in particular.

22.    ExpressVPN admits that it leases "physical servers located in California" but denies that it "controls" such servers.  ExpressVPN also denies that it "solicits" any "California businesses" and denies the implication that it "controls these physical

Case No. 8:25-cv-01273-FWS-DFM
Defendant's Answer and Affirmative Defenses to Plaintiff's FAC

servers located in California" only in order "[t]o service . . . California businesses." ExpressVPN denies the allegations of the second sentence of this paragraph.

23.    ExpressVPN admits the allegations of paragraph 23.    ExpressVPN submits that its descriptions of its third-party affiliate program speak for themselves.

24.    This paragraph contains selective quotations of the Program Terms of ExpressVPN's third-party affiliates program.    The Program Terms speak for themselves and ExpressVPN denies plaintiff's characterization of them.    ExpressVPN denies the implication that the quoted terms are universally applied in practice to every ExpressVPN third-party affiliate.

25.    This paragraph contains selective quotations of the Program Terms of ExpressVPN's third-party affiliates program.    The Program Terms speak for themselves and ExpressVPN denies plaintiff's characterization of them.    ExpressVPN denies the implication that the quoted term is universally applied in practice to every ExpressVPN third-party affiliate.

26.    ExpressVPN denies the allegations in the first sentence of paragraph 26. ExpressVPN avers that the video referenced in this paragraph was created by a third-party affiliate.    ExpressVPN denies plaintiff's characterization of this video as "sell[ing] ExpressVPN subscriptions to California consumers" and submits that the full video and its description speak for themselves.

27.    ExpressVPN lacks knowledge or information sufficient to form a belief as to whether the phrases in the title of the referenced third-party video were intended to serve as "SEO keywords," and on that basis denies such allegation.    ExpressVPN denies that these phrases are "targeted to California."    ExpressVPN admits that the referenced YouTube video's description contains a third-party affiliate link that consumers based anywhere, including in California, could use to purchase ExpressVPN's products.

28.    ExpressVPN admits that it entered an affiliate contract with this third-party content creator and that it provided him with a third-party affiliate link through

which he was eligible to receive a fee for referring consumers located anywhere in the world who purchased ExpressVPN subscriptions. ExpressVPN denies that it helped the third-party content creator "choose keywords targeting California," that it "approved the content targeting California," and that the "content target[ed] California."

29. Paragraph 29 consists of legal conclusions that require no response. To the extent any facts are alleged within this paragraph or a response is otherwise required, ExpressVPN denies the allegations therein.

30. The first sentence in this paragraph contains legal conclusions as to which no response is required. To the extent a response is required, ExpressVPN denies the allegations in the first sentence. ExpressVPN denies the allegations in the second sentence of this paragraph. ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third and sixth sentences of this paragraph, and on that basis denies them. The fourth and fifth sentences of this paragraph contain allegations about Mr. Millar, whose claims have been either dismissed or compelled to arbitration. Accordingly, no response is required as to such allegations. To the extent a response is required, ExpressVPN lacks knowledge or information sufficient to form a belief as to these allegations' truth or falsity, and on that basis denies them.

31. This first and second sentences of this paragraph contain legal conclusions as to which no response is required. This third sentence of this paragraph contains allegations about Mr. Millar, whose claims have been either dismissed or compelled to arbitration. Accordingly, no response is required as to such allegations.

32. This paragraph contains legal conclusions as to which no response is required. ExpressVPN submits that the full text of the law speaks for itself.

33. This paragraph contains legal conclusions as to which no response is required. ExpressVPN submits that the full text of the law speaks for itself.

34.    This paragraph contains legal conclusions as to which no response is required.  ExpressVPN submits that the full text of the law speaks for itself.

35.    This paragraph contains legal conclusions as to which no response is required.  ExpressVPN submits that the full text of the law speaks for itself.

36.    This paragraph contains legal conclusions as to which no response is required.  ExpressVPN submits that the full text of the law speaks for itself.

37.    This paragraph contains legal conclusions as to which no response is required.  ExpressVPN submits that the full text of the law speaks for itself.

38.    This paragraph contains legal conclusions as to which no response is required.  ExpressVPN submits that the full text of the law speaks for itself.

39.    This paragraph contains legal conclusions as to which no response is required.  ExpressVPN submits that the full text of the law speaks for itself.

40.    ExpressVPN admits the allegations in the first sentence of this paragraph.  The second sentence of this paragraph contains allegations about Mr. Millar, whose claims have been either dismissed or compelled to arbitration. Accordingly, no response is required.

41.    This paragraph characterizes an image that speaks for itself and can be located at DEC-CA-000003.  ExpressVPN avers that the visual depiction of the image referenced in this paragraph, as reprinted in the FAC, is substantially degraded from its original quality.

42.    This paragraph characterizes an image that speaks for itself and can be located at DEC-CA-000003.  To the extent a response is otherwise required, ExpressVPN denies plaintiff's allegation that "the words 'Billed every month' are in tiny, grey text that fades into the background."  ExpressVPN avers that the visual depiction of the image referenced in this paragraph, as reprinted in the FAC, is substantially degraded from its original quality.

43.    This paragraph characterizes an image that speaks for itself and can be located at DEC-CA-000003.  ExpressVPN avers that the visual depiction of the image

referenced in this paragraph, as reprinted in the FAC, is substantially degraded from its original quality.

44.     ExpressVPN denies the allegations in paragraph 44.  Further, this paragraph characterizes an image that speaks for itself and can be located at DEC-CA-000003.  ExpressVPN avers that the visual depiction of the image referenced in this paragraph, as reprinted in the FAC, is substantially degraded from its original quality.

45.     The first two sentences of this paragraph contain legal conclusions as to which no response is required.  To the extent any facts are alleged within these sentences or a response is otherwise required, ExpressVPN denies them.  ExpressVPN denies the remaining allegations in this paragraph.  Further, this paragraph characterizes an image that speaks for itself and can be located at DEC-CA-000003.  ExpressVPN avers that the visual depiction of the image referenced in this paragraph, as reprinted in the FAC, is substantially degraded from its original quality.

46.     This paragraph contains legal conclusions as to which no response is required.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

47.     ExpressVPN admits that the specific text plaintiff proposes in the quotation does not appear near a button on the webpage. Express VPN denies the remaining allegations in this paragraph.

48.     ExpressVPN denies the allegations in this paragraph. ExpressVPN avers that all of the information plaintiff refers to is detailed in the Terms of Service clearly and conspicuously hyperlinked in the relevant checkout flow.

49.     This first two sentences of this paragraph contain legal conclusions as to which no response is required.  To the extent any facts are alleged therein or a response is otherwise required, ExpressVPN denies the allegations.  The third sentence of this paragraph contains allegations about Mr. Millar, whose claims have

been either dismissed or compelled to arbitration. Accordingly, no response is required.

50. This paragraph contains allegations about Mr. Millar, whose claims have been either dismissed or compelled to arbitration. Accordingly, no response is required.

51. ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in the first clause of the first sentence this paragraph, and on that basis denies it. ExpressVPN admits that, after a reasonably diligent search and to the best of its knowledge, it has the template of the acknowledgement email sent to new customers as of the time of Mr. Martinez's purchase in June 2023, but it denies that it "has a copy" of its specific email to Mr. Martinez. The second sentence of this paragraph consists of a legal conclusion as to which no response is required. To the extent a response is required, ExpressVPN denies the allegations in the second sentence.

52. This paragraph contains legal conclusions as to which no response is required. To the extent there are facts alleged therein or a response is otherwise required, ExpressVPN denies the allegations.

53. This paragraph contains allegations about Mr. Millar, whose claims have been either dismissed or compelled to arbitration. Accordingly, no response is required. To the extent a response is required, ExpressVPN lacks knowledge or information sufficient to form a belief as to the allegations in the third or fourth sentences of this paragraph, except that it denies the allegation that Mr. Millar did not consent to automatic renewal, as he did so consent.

54. This paragraph contains allegations about Mr. Millar, whose claims have been either dismissed or compelled to arbitration. Accordingly, no response is required. To the extent a response is required, ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of this paragraph, and on that basis denies them.

55.   This paragraph contains legal conclusions and allegations about Mr. Millar, whose claims have been either dismissed or compelled to arbitration. Accordingly, no response is required.  To the extent any facts are alleged in this paragraph or a response is otherwise required, ExpressVPN denies the allegations in this paragraph.

56.   ExpressVPN admits the allegations in the first and second sentences of this paragraph, and avers that the enrollment process included clear and conspicuous disclosures regarding automatic renewals.   ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third, fourth, and fifth sentences of this paragraph, except that it denies the allegation that Mr. Martinez did not consent to automatic renewal and that he did not consent to an automatically increased renewal price, as he did so consent in both respects.

57.   ExpressVPN admits the allegation in the first sentence of this paragraph. ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of this paragraph, and on that basis denies them.  ExpressVPN denies that Mr. Martinez was ever charged "without his consent."

58.   ExpressVPN denies the allegations in the second sentence of this paragraph, and avers that it clearly and conspicuously disclosed the price increase to Mr. Martinez.  The first sentence of this paragraph consists of legal conclusions that require no response.  To the extent that any facts are alleged therein or a response is otherwise required, ExpressVPN denies the allegations in the first sentence of this paragraph.

59.   Paragraph 59 consists of legal conclusions that require no response.  To the extent any facts are alleged therein or a response is otherwise required, ExpressVPN denies the allegations in this paragraph.

60.     This paragraph concerns claims that have been dismissed and therefore does not require a response.  To the extent a response is required, ExpressVPN denies the allegations in this paragraph.

61.     This paragraph concerns claims that have been dismissed and contains legal conclusions and therefore does not require a response.  To the extent a response is required, ExpressVPN denies the allegations in the penultimate sentence of this paragraph and any implication that it violated any law.

62.     This paragraph concerns claims that have been dismissed and contains legal conclusions and therefore does not require a response.  To the extent a response is required, ExpressVPN denies any implication that it violated any law.

63.     This paragraph concerns claims that have been dismissed and contains legal conclusions and therefore does not require a response.  To the extent a response is required, ExpressVPN denies any implication that it violated any law.

64.     This paragraph concerns claims that have been dismissed and contains legal conclusions and therefore does not require a response.  To the extent a response is required, ExpressVPN denies any implication that it violated any law.

65.     This paragraph concerns claims that have been dismissed and contains legal conclusions therefore does not require a response.  To the extent a response is required, ExpressVPN denies any implication that it violated any law.

66.     This paragraph contains legal conclusions as to which no response is required.  To the extent a response is required, ExpressVPN denies the propriety of any putative class.

67.     This paragraph contains legal conclusions as to which no response is required.  To the extent a response is required, ExpressVPN denies the propriety of any putative class.

68.     This paragraph contains legal conclusions as to which no response is required.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations in this paragraph.

69.    This paragraph contains legal conclusions as to which no response is required.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations in this paragraph.

70.    This paragraph contains legal conclusions as to which no response is required.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations in this paragraph.

71.    This paragraph contains legal conclusions as to which no response is required.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations in this paragraph.

72.    This paragraph contains legal conclusions as to which no response is required.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations in this paragraph.

73.    This paragraph concerns a claim that has been dismissed and therefore does not require a response.

74.    This paragraph concerns a claim that has been dismissed and therefore does not require a response.

75.    This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.

76.    This paragraph concerns a claim that has been dismissed and contains legal conclusions therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

77.    This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

78.    This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

79.    This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

80.    This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

81.    This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

82.    This paragraph concerns a claim that has been dismissed and therefore does not require a response.

83.    This paragraph concerns a claim that has been dismissed and therefore does not require a response.

84.    This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations in this paragraph.

85.    This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is required, ExpressVPN denies the allegations in the first sentence of this paragraph.

86.    This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.

87.    This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.

88.    This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.

89.     This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

90.     This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

91.     This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

92.     This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

93.     This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

94.     This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

95.     This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

96.     This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

97.     This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

98.   This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

99.   This paragraph concerns a claim that has been dismissed and contains legal conclusions and therefore does not require a response.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.

100.   ExpressVPN incorporates the responses above.

101.   This paragraph contains legal conclusions as to which no response is required.

102.   ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph, and on that basis denies them.

103.   This paragraph contains legal conclusions as to which no response is required.

104.   The first sentence of this paragraph contains legal conclusions as to which no response is required.  To the extent any facts are alleged or a response is otherwise required, ExpressVPN denies the allegations.  ExpressVPN denies the allegations of the second sentence of this paragraph.

105.   The first sentence of this paragraph contains legal conclusions as to which no response is required.  To the extent the first sentence of this paragraph contains factual allegations or otherwise requires a response, ExpressVPN denies the allegations.  ExpressVPN denies the allegations of the second sentence of this paragraph.

106.   This paragraph contains legal conclusions as to which no response is required.  To the extent any facts are alleged therein or a response is otherwise required, ExpressVPN denies the allegation in this paragraph.

107.   This paragraph contains legal conclusions as to which no response is required. To the extent any facts are alleged therein or a response is otherwise

required, ExpressVPN lacks knowledge or information sufficient to form a belief as to whether plaintiff "relied" on any "representations and omissions" by ExpressVPN, and on that basis denies the allegation. ExpressVPN also denies the allegation that it has made "representations and omissions" to the extent that phrase is intended to or does imply that ExpressVPN in any way misrepresented its offerings or failed to make any disclosures required by law.

108.    This paragraph contains legal conclusions as to which no response is required.   To the extent any facts are alleged therein or a response is otherwise required, ExpressVPN denies the allegations in this paragraph.

109.    This paragraph contains legal conclusions as to which no response is required.   To the extent any facts are alleged therein or a response is otherwise required, ExpressVPN denies the allegations in this paragraph.

110.    This paragraph contains allegations about Mr. Millar, whose CLRA claim has been compelled to arbitration.  Accordingly, no response is required.

111.    ExpressVPN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph but otherwise denies any implication that notice to ExpressVPN was legally adequate.

112.    ExpressVPN admits that plaintiffs seek monetary relief under the CLRA but denies the propriety of the relief sought.  The first and second sentences of this paragraph contain legal conclusions as to which no response is required.  To the extent any facts are alleged therein or a response is otherwise required, ExpressVPN admits that Mr. Martinez's letter demanded that ExpressVPN cure its supposed "violations" but denies that any such violations occurred.  ExpressVPN also denies the allegation that the letters "provided notice of [ExpressVPN's] particular violations of the CLRA," as no such violations exist.  This paragraph also contains allegations about Mr. Millar, whose CLRA claim has been compelled to arbitration.  Accordingly, no response is required as to such allegations.

113. ExpressVPN admits that plaintiffs' CLRA venue declarations are attached to the FAC but denies having violated the CLRA in any way. In any event, this paragraph contains allegations about Mr. Millar, whose CLRA claim has been compelled to arbitration. Accordingly, no response is required as to such allegations.

114. This paragraph contains legal conclusions as to which no response is required. To the extent a response is required, ExpressVPN denies the propriety of the relief Mr. Martinez requests.

115. This paragraph contains legal conclusions as to which no response is required. ExpressVPN demands the right to a jury trial on all claims so triable.

## **AFFIRMATIVE AND OTHER DEFENSES**

ExpressVPN, without prejudice to the denials and other statements made in this Answer, asserts the following affirmative and other defenses. Unless otherwise indicated, these defenses apply to each and every cause of action asserted in the FAC. By designating such matters as "defenses" or "affirmative defenses," ExpressVPN does not intend to, and does not, assume the burden of proof, persuasion, or production as to any fact issue or other element of any cause of action as to which plaintiff bears the burden of proof. Nor does ExpressVPN's assertion of any defense constitute an admission or concession that the matter in question is not an element of one or more of plaintiff's causes of action. The statement of any specific ground for any defense is not intended to, and does not, waive the applicability of the defense on other grounds not specifically stated. Nothing stated herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to plaintiff's allegations. ExpressVPN reserves the right to amend this Answer to assert other and further defenses when and if, in the course of its investigation, discovery, or preparation for trial, it becomes appropriate to do so.

As separate and distinct defenses, ExpressVPN alleges as follows:

### **First Affirmative Defense (Forum Non Conveniens)**

This action should be dismissed or stayed on the grounds of forum non conveniens. Given that ExpressVPN is a BVI entity, litigating in the Central District of California would be highly inconvenient, as evidenced by language ExpressVPN has included in its terms of service requiring claims such as those asserted in the present litigation to be litigated in the BVI. Witnesses and other sources of proof potentially relevant to this matter will largely be located outside the bounds of this District. The difficulty, time, and expense that would result from litigating this matter in this District far outweigh any local interest in the subject matter of the litigation.

**Second Affirmative Defense (Good Faith)**

Plaintiff and the putative class's claim under the CLRA fails, in whole or in part, because it is predicated on ExpressVPN's alleged violations of the California ARL, but ExpressVPN "complie[d]" with all provisions of the ARL "in good faith" and is therefore "not … subject to civil remedies." Cal. Bus. & Prof. Code § 17604(b). ExpressVPN substantially complied with the ARL when it disclosed the automatically renewing nature of its services on the checkout page, and also disclosed multiple, easy-to-use procedures purchasers could use to cancel in its terms of service, which were hyperlinked on ExpressVPN's checkout page in bright green underlined text. Even if plaintiff or the putative class could establish technical noncompliance with any provision of the ARL (they cannot), ExpressVPN's disclosures sufficiently effectuated the purpose of the statute—to provide adequate notice of automatically renewing subscription arrangements and a simple mechanism to cancel.

**Third Affirmative Defense (Consent)**

This action is barred, in whole or in part, because plaintiff and/or some or all members of the putative class knowingly and affirmatively consented to the subscription charges at issue. Plaintiff and/or putative class members had knowledge of the automatically renewing nature of ExpressVPN's services. ExpressVPN's automatic renewal terms were clearly and conspicuously disclosed on its checkout page at all relevant times, such as through language stating that the service was "billed . . . monthly" or "billed . . . yearly," such that no customer making a purchase could have failed to notice such terms. Moreover, all pertinent and required information respecting ExpressVPN's automatic renewal and cancellation policies were provided in ExpressVPN's terms of service, which were hyperlinked in bright green, underlined text immediately adjacent to the button purchasers clicked to submit an order and were available to purchasers on ExpressVPN's website at all times before, during, and after their purchases.

**Fourth Affirmative Defense (Waiver)**

This action is barred, in whole or in part, by waiver, as plaintiff and/or some or all members of the putative class waived any right to assert the claims now alleged to the extent they continued to use ExpressVPN's services after discovering the automatically renewing nature of those services. As discussed above, plaintiff and/or putative class members had knowledge of ExpressVPN's automatically renewing nature via clear and conspicuous disclosures at checkout and in its terms of service, which included automatic-renewal disclosures and clear instructions as to how to cancel the service. Plaintiff and/or putative class members also may have received communications from ExpressVPN disclosing or discussing the subscription-based and automatically renewing nature of ExpressVPN's services. By continuing to use ExpressVPN's services with knowledge that those services automatically renew, despite the ready availability of multiple, simple cancellation procedures, plaintiff and/or putative class members waived any right to assert their present claims.

**Fifth Affirmative Defense (Estoppel)**

Plaintiff and/or some or all putative class members should be estopped from asserting claims against ExpressVPN based on their prior acceptance of the benefits ExpressVPN provided. As discussed above, plaintiff and/or putative class members purchased ExpressVPN's services with knowledge of the automatically renewing nature of those services, and/or continued to use ExpressVPN's services and did not cancel after receiving knowledge that their subscriptions would automatically renew. It would be inconsistent with this prior course of conduct for plaintiff and/or putative class members to now contend that ExpressVPN engaged in wrongful acts.

**Sixth Affirmative Defense (Failure to Mitigate Damages)**

This action is barred, in whole or in part, because plaintiff and/or some or all members of the putative class failed to take actions reasonable under the circumstances to mitigate their alleged damages, including through failing to timely cancel their subscriptions in accordance with the multiple simple procedures

described in the terms of service or review their account settings and payment history after receiving knowledge of the automatically renewing nature of ExpressVPN's services.  Plaintiff or putative class members also failed to make a reasonable effort to notify ExpressVPN of any purportedly unwanted charges and request a refund, including through contacting ExpressVPN customer support.

**Seventh Affirmative Defense (Laches)**

This action is barred, in whole or in part, because unreasonable delay by plaintiff and/or some or all members of the putative class in asserting their rights has caused prejudice to ExpressVPN.  For instance, though plaintiff alleges he was first automatically charged for a subscription renewal in June 2024, this action was not brought until a year later.  There is no justification for this significant delay, which has prejudiced ExpressVPN to the extent it has led to the loss of documentary and testimonial evidence, including evidence pertaining to the ExpressVPN subscription process as it existed at the time plaintiff made his purchase.  Plaintiff and/or putative class members sat on their rights for at least a year and cannot now cry foul.

**Eighth Affirmative Defense (Offset/Credit)**

To the extent plaintiff and/or members of the putative class are entitled to any monetary recovery, such recovery must be offset by the value of the VPN services ExpressVPN provided as well as any chargebacks and refunds.  Plaintiff and putative class members received valuable VPN services in exchange for the purportedly unwanted automatic-renewal charges, and they would receive an unearned and unjust windfall were they permitted to retain the benefits those services provided without compensation to ExpressVPN.  ExpressVPN also is entitled to an offset or credit to the extent any allegedly unauthorized charges have already been refunded, cancelled, charged back, or otherwise negated, either by ExpressVPN, a payment issuer, or some other entity.

Case No. 8:25-cv-01273-FWS-DFM
Defendant's Answer and Affirmative Defenses to Plaintiff's FAC

**<u>Ninth Affirmative Defense (Agreement to Arbitrate)</u>**

This action is barred, in whole or in part, because some or all members of the putative class, when they purchased ExpressVPN's services, agreed to ExpressVPN terms of service containing a valid arbitration agreement providing that "[a]ll disputes arising out of or relating to this Agreement or the use of the Site or Services shall be finally settled under the Rules of Arbitration ('Rules') of the International Centre for Dispute Resolution (ICDR) by one arbitrator ('Arbitrator') appointed in accordance with said Rules," or similar language providing that claims of the sort brought in this litigation must be resolved in mandatory binding arbitration.

**<u>Tenth Affirmative Defense (Statute of Limitations)</u>**

This action is barred, in whole or in part, because some or all members of the putative class brought their claims "more than three years from the date of the commission" of the "method, act, or practice" of which they complain—that is, from the date on which ExpressVPN allegedly enrolled consumers in automatically renewing subscriptions without adequate disclosures.  Cal. Civ. Code § 1783.

**<u>DEMAND FOR TRIAL BY JURY</u>**

ExpressVPN requests a jury trial on all issues so triable.

*[Remainder of page intentionally left blank]*

Case No. 8:25-cv-01273-FWS-DFM
Defendant's Answer and Affirmative Defenses to Plaintiff's FAC

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, ExpressVPN respectfully requests that this Court:

1. Dismiss Mr. Martinez's remaining CLRA claim with prejudice;

2. Enter judgment in favor of ExpressVPN;

3. Award ExpressVPN its costs, expenses, and attorneys' fees to the extent permitted by law; and

4. Grant such other and further relief as the Court deems just and proper.

DATED:  December 22, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Stephen A. Broome*
    Stephen A. Broome (Cal. Bar No. 314605)
    stephenbroome@quinnemanuel.com
    John W. Baumann (Cal. Bar No. 288881)
    jackbaumann@quinnemanuel.com
    Rex N. Alley (Cal. Bar No. 346525)
    rexalley@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
    Facsimile:  (213) 443-3100

    Nicolas G. Keller (N.Y. Bar No. 5549522)*
    nicolaskeller@quinnemanuel.com
    295 5th Avenue, 9th Floor
    New York, New York 10016
    Tel:  (212) 849 7000
    Fax:  (212) 849 7100
    (*Admitted *Pro Hac Vice*)

    *Attorneys for Defendant*