Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY MILLAR and MARCO MARTINEZ, each individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> EXPRESS TECHNOLOGIES, LTD., <br><br> *Defendant*. | Case No. 8:25-cv-01273-FWS-DFM <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** <br><br> Hearing Date: March 12, 2026 <br> Time: 10:00 a.m. <br> Judge: Hon. Fred W. Slaughter |

Reply in Support of
Motion for Leave to File 2AC

Case No. 8:25-cv-01273-FWS-DFM

**Table of Contents**

I.    Introduction....................................................................................................1

II.    There is good cause to amend under Rule 16.......................................................1

    A.    Plaintiffs acted diligently in seeking amendment after the Court's arbitration order. ............................................................................1

    B.    Plaintiffs were not required to seek amendment before the Court's arbitration order. ...........................................................................3

    C.    ExpressVPN's contention that some class members were exposed to materially different disclosures is another reason to allow the amendment. ....................................................................................6

III.    Plaintiffs' proposed amendment satisfies Rule 15. .............................................8

    A.    Amendment is not futile.............................................................................9

    B.    Amendment will not unduly prejudice ExpressVPN. ..............................10

IV.    Conclusion. ...............................................................................................13

**Table of Authorities**

**Cases**

*Brown v. Hain Celestial Grp., Inc.*,
2015 U.S. Dist. LEXIS 67912 (N.D. Cal. May 26, 2015) ........................................ 10

*Butler v. Clarendon Am. Ins. Co.*,
2006 U.S. Dist. LEXIS 118118 (N.D. Cal. Nov. 27, 2006) ..................................... 11

*Clarke v. Upton*,
703 F. Supp. 2d 1037 (E.D. Cal. 2010) ................................................................. 9

*Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*,
2021 U.S. Dist. LEXIS 250481 (C.D. Cal. Feb. 16, 2021) ....................................... 7

*Ellsworth v. United States Bank, N.A.*,
2013 U.S. Dist. LEXIS 179134 (N.D. Cal. Dec. 19, 2013) ..................................... 11

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .............................................................................. 9

*Foster v. Kraft Goods Global, Inc.*,
285 F.R.D. 343 (W.D. Pa. 2012) ........................................................................... 7

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*,
2006 U.S. Dist. LEXIS 94421 (E.D. Cal. Dec. 15, 2006) ......................................... 8

*GB, LLC v. Certain Underwriters at Lloyd's London*,
2010 U.S. Dist. LEXIS 151767 (S.D. Fla. Apr. 16, 2010) ......................................... 4

*Genentech, Inc. v. Abbott Lab'ys*,
127 F.R.D. 529 (N.D. Cal. 1989) ........................................................................... 9

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .............................................................................. 5

*Hazdovac v. Mercedes-Benz USA, LLC*,
2022 U.S. Dist. LEXIS 7110 (N.D. Cal. Jan. 13, 2022) ......................................... 11

*Hinojos v. Kohl's Corp.*,
2013 U.S. Dist. LEXIS 157931 (C.D. Cal. Oct. 29, 2013) ....................................... 2

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ............................................................................ 10

*ImprimisRx, LLC v. Osrx, Inc.*,
2022 U.S. Dist. LEXIS 196183 (S.D. Cal. Oct. 27, 2022) ......................................... 8

*In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.*,
2002 U.S. Dist. LEXIS 20163 (D. Minn. Oct. 7, 2002) ............................................ 4

*In re Volkswagen*,
2023 U.S. Dist. LEXIS 27448 (N.D. Cal. Feb. 17, 2023).............................................. 12

*J.P. v. Sessions*,
2019 U.S. Dist. LEXIS 217560 (C.D. Cal. Nov. 5, 2019) ..............................................6

*Jones v. Twentieth Century Studios, Inc.*,
2022 U.S. Dist. LEXIS 248130 (C.D. Cal. Dec. 20, 2022) ............................................9

*Kelly Moore Paint Co. v. Nat'l Union Fire Ins. Co.*,
2014 U.S. Dist. LEXIS 148064 (N.D. Cal. Oct. 17, 2014)...........................................11

*Kendrick v. Cnty. of San Diego*,
2017 U.S. Dist. LEXIS 96863 (S.D. Cal. June 22, 2017) ..............................................6

*Kirby v. McMenamins Inc.*,
2023 U.S. Dist. LEXIS 125674 (W.D. Wash. July 19, 2023).......................................7

*M.H. v. Cnty. of Alameda*,
2012 U.S. Dist. LEXIS 168412 (N.D. Cal. Nov. 16, 2012)...........................................8

*Miller v. Rykoff-Sexton, Inc.*,
845 F.2d 209 (9th Cir. 1988).........................................................................................9

*Noyes v. Kelly Servs.*,
488 F.3d 1163 (9th Cir. 2007)........................................................................................2

*Torres v. Rhoades*,
2015 U.S. Dist. LEXIS 169965 (W.D. Wis. Dec. 21, 2015) .........................................7

*United States v. Dang*,
488 F.3d 1135 (9th Cir. 2007)........................................................................................6

*Vision Constr. Ent Inc. v. Argos Ready Mix LLC*,
2020 U.S. Dist. LEXIS 219239 (N.D. Fla. May 20, 2020)........................................4, 5

*Whelan v. Miles Indus.*,
2012 U.S. Dist. LEXIS 207628 (N.D. Cal. Sept. 10, 2012).........................................11

*Wiener v. Dannon Co.*,
255 F.R.D. 658 (C.D. Cal. 2009) ...................................................................................7

*Wong v. Regents of Univ. of Cal.*,
410 F.3d 1052 (9th Cir. 2005)........................................................................................8

*Woods v. Google LLC*,
2018 U.S. Dist. LEXIS 143879 (N.D. Cal. Aug. 23, 2018)...........................................3

*Zyda v. Four Seasons Hotels & Resorts*,
371 F. Supp. 3d 803 (D. Haw. 2019) .........................................................................5, 6

**Statutes**

Cal. Bus. & Prof. Code § 17601(a)(3) ...............................................................................9

Cal. Bus. & Prof. Code § 17602(a)(2) .............................................................................10

Cal. Bus. & Prof. Code § 17602(a)(4) .............................................................................10

Cal. Bus. & Prof. Code § 17602(a)(8)(A).........................................................................10

## I.    Introduction.

In class actions, courts regularly grant leave to amend a complaint when a plaintiff takes three or four months to locate an additional representative and move to amend. Here, Plaintiffs did it in only two months. Plaintiffs found a new representative weeks after the Court compelled Mr. Millar to arbitration. Plaintiffs promptly raised amendment with Express VPN, spent a month thoroughly conferring with ExpressVPN to try to avoid this motion practice, and promptly moved as soon as ExpressVPN said it would oppose. As courts have found in similar circumstances, this satisfies the Rule 16 diligence standard.

In its Opposition, ExpressVPN argues that leave to amend should be denied because Plaintiffs did not act quickly enough. Yet it identifies no case where a party seeking amendment acted quicker, and fails to distinguish this case from those finding diligence when a party seeks leave to amend months after a court order motivating the amendment. ExpressVPN also argues that amendment is futile and unduly prejudicial, but fails to overcome the presumption for allowing amendment under Rule 15.

The proposed amendment does not alter the nature of the case, introduce new legal theories, or expand the alleged liability. It only adds an additional plaintiff to ensure that the proposed class (and potential subclasses) have adequate representation. Courts favor such amendments to ensure that a class has adequate representation, to pursue its claims on the merits. The Court should grant Plaintiffs' motion to amend.

## II.    There is good cause to amend under Rule 16.

### A.    Plaintiffs acted diligently in seeking amendment after the Court's arbitration order.

As explained in Plaintiffs' Motion, Plaintiffs worked diligently after the Court's order compelling Mr. Millar's claims to arbitration. As ExpressVPN recognizes, about three weeks after that ruling, Plaintiffs had already identified and vetted a new proposed class representative, prepared a draft Second Amended Complaint, and conferred with ExpressVPN regarding amendment. Opp. 4-5. ExpressVPN then spent a

Reply in Support of
Motion for Leave to File 2AC                    1          Case No. 8:25-cv-01273-FWS-DFM

month considering its position on the amendment and looking into the new proposed class representative (with the help of information provided by Plaintiffs). *Id.* After ExpressVPN stated that it would oppose amendment, Plaintiffs prepared and filed their Motion for Leave to Amend within two weeks. *Id.* In that time, Plaintiffs also revised the proposed amended complaint to address ExpressVPN's stated objections in a continued effort to avoid contested motion practice. *Id.* at 4-5, 11 (noting that Plaintiffs revised the proposed Second Amended Complaint in response to positions taken by ExpressVPN during the conferral process).

Still, ExpressVPN faults Plaintiffs for not filing a motion to extend the amendment deadline (or some other placeholder motion) during the sixteen days between the Court's order on November 25 and the December 11 deadline to hear a motion to amend. Opp. 9-10. But Plaintiffs did not know they would be able to find a suitable new class representative—or how long it would take—until they did. As soon as they found and vetted a suitable representative (just weeks after the Court's ruling on the motion to compel arbitration and only a day after the December 11 deadline for motions to amend to be heard), they raised the issue with ExpressVPN.

Rule 16 requires reasonable diligence in light of the circumstances. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007). What Plaintiffs did was reasonable and diligent: quickly finding a new class representative, promptly raising the issue with ExpressVPN, seeking to avoid motion practice through the meet-and-confer process, and then promptly moving to amend when ExpressVPN stated that it would oppose. Plus, given ExpressVPN's position here—asserting that the amendment is too late, futile, and prejudicial—it would have opposed the very extension motion it says Plaintiffs should have filed.

Courts regularly recognize that locating and diligencing a new class representative takes time, and that doing so within several months constitutes reasonable diligence. *Hinojos v. Kohl's Corp.*, 2013 U.S. Dist. LEXIS 157931, at *3-4 (C.D. Cal. Oct. 29, 2013) (finding "three months" a "reasonable" amount of time "to

Reply in Support of                                                Case No. 8:25-cv-01273-FWS-DFM
Motion for Leave to File 2AC                    2

find suitable ... class representatives" and investigate their claims, especially in light of the "ethical concerns and other rules constraining the solicitation of clients"); *Woods v. Google LLC*, 2018 U.S. Dist. LEXIS 143879, at *26 (N.D. Cal. Aug. 23, 2018) (finding four months a "reasonable span of time to find a new class representative, research his claims, and draft a motion to amend as well as an updated complaint").

Plaintiffs here acted far more quickly. They raised the need for amendment within weeks and filed their Motion about two months after the Court's order, despite the delay caused by ExpressVPN taking over a month to diligence the new proposed class representative and decide whether it would stipulate to the amendment. ExpressVPN identifies no case where a plaintiff acted more quickly in similar circumstances, let alone within the 16 days it contends action was necessary to constitute diligence.

Nor would it have been appropriate for Plaintiffs to file an *ex parte* application or request an extension. At the time of the Court's order, Plaintiffs did not yet know whether they could locate a suitable candidate, how long the necessary vetting would take, or ExpressVPN's position on the amendment. Seeking modification of the scheduling order based on a speculative desire to add an unknown additional class representative—if one could be found—on an unknown timeline, would have been premature and inefficient (and ExpressVPN cites no case requiring such speculative filings). Plaintiffs proceeded diligently by searching for a new class representative and then promptly seeking amendment once the necessary vetting took place.

**B.      Plaintiffs were not required to seek amendment before the Court's arbitration order.**

ExpressVPN also argues that Plaintiffs' diligence should be measured not from the Court's order, but from the time ExpressVPN first moved to compel Mr. Millar's claims to arbitration. Opp. 7. That is not the Rule 16 standard. Diligence does not require a party to assume it will lose a contested legal issue, nor to amend its complaint any time a challenge is raised. Instead, courts measure diligence from the time of the

Reply in Support of
Motion for Leave to File 2AC                    3                    Case No. 8:25-cv-01273-FWS-DFM

court's ruling that motivates the amendment. *See In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.,* 2002 U.S. Dist. LEXIS 20163, at *16 (D. Minn. Oct. 7, 2002) ("[T]he Court's ruling ... was not so foreseeable as to necessitate that Plaintiffs amend their Complaint prior to that Order. Rather, Plaintiffs have acted swiftly and diligently in the wake of that Order to protect their interests. ... The Court therefore finds that Plaintiffs have been diligent and that good cause exists for modifying the case management order to allow Plaintiffs to amend their Complaint."); *Vision Constr. Ent Inc. v. Argos Ready Mix LLC*, 2020 U.S. Dist. LEXIS 219239, at *6-7 (N.D. Fla. May 20, 2020) (same).

*Vision Construction* is illustrative. There, the court found that the plaintiff was not an adequate class representative, and denied the plaintiff's motion for class certification. 2020 U.S. Dist. LEXIS 219239, at *3. The plaintiff then filed a motion for leave to amend to add a new proposed class representative, even though the deadline to amend had passed. *Id.* at *4. The defendant argued that the plaintiff had not been diligent because plaintiff knew about the conflict that led to the court's adequacy finding years before. *Id.* The court rejected this argument and granted leave to amend. "Although aware before the deadline expired of the general facts surrounding [the conflict of interest], and aware of [the defendant's] legal position that this relationship rendered [the plaintiff] an inadequate class representative well before the Court's ruling, [the plaintiff] could not have been on notice … that the Court would ultimately rule against it on this contested issue until the ruling was entered on November 7, 2019, and the result was not obvious from the outset." *Id.* at *6-7. The court further confirmed that "there is no rule requiring a named plaintiff to seek a substitution 'as soon as a substantial challenge ... is made" noting that such a rule would create "constant interruptions of the proceeding.'" *Id.* at *12 (quoting *GB, LLC v. Certain Underwriters at Lloyd's London*, 2010 U.S. Dist. LEXIS 151767, at *9 (S.D. Fla. Apr. 16, 2010)). Accordingly, the court reasoned, "[u]ntil the ruling, [the plaintiff] was free

to pursue its good faith argument that the business relationship was unrelated to the litigation and therefore not a substantial conflict." *Id.* at *7.

The same reasoning applies here. Plaintiffs were aware of ExpressVPN's argument that Mr. Millar's claims were bound to arbitration. But they were not on notice that the Court would accept it until November 25, when the Court issued its order. Rule 16 does not require Plaintiffs to assume they would lose and restructure the case preemptively, and Plaintiffs were permitted to litigate the contested issue in good faith.

This is especially true here, where the dispute involved an arbitration agreement through an online purchase. That is because whether an arbitration clause is binding is a "fact-intensive" inquiry that "is informed by the 'totality of the circumstances.'" *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025). There is "no bright-line test" and "'even minor differences' in the design elements" of the website "may make the difference." *Id.* Indeed, judges have acknowledged the "confusion" of this area of law and noted that it is "somewhat hard to parse" with "strange implications." *See id.* at 714, 715 n.1 (Nelson, J. concurring). As a result, Plaintiffs reasonably believed that Mr. Millar's claims would not be compelled to arbitration, despite ExpressVPN's argument otherwise. And, as the weight of caselaw makes clear, Plaintiffs were not required to assume they would lose this contested issue and immediately amend their complaint in response.

ExpressVPN's reliance on *Zyda v. Four Seasons Hotels & Resorts*, 371 F. Supp. 3d 803 (D. Haw. 2019), is misplaced. Opp. 8. That case had been pending for over two years; the dispositive motion deadline was less than a month away; trial was near; the plaintiffs never requested leave to amend and whether leave to amend should be permitted was never briefed[1]; and the court flagged the issue for plaintiffs nearly six months earlier, which the plaintiffs ignored. *Zyda,* 371 F. Supp. 3d at 810. As a result,

---

[1] The *Zyda* court decided *sua sponte* that amendment would not be permitted after it granted the defendant's partial motion for summary judgment.

Reply in Support of                                     Case No. 8:25-cv-01273-FWS-DFM
Motion for Leave to File 2AC                    5

the court found that "adding a new Class representative ... at this advanced stage would unduly delay the resolution of the case." *Id.* None of those facts are present here. This case is still in its early stages; no summary judgment motion has been filed; trial is a long way away; and Plaintiffs moved rapidly in response to the Court's arbitration order.

In sum, Plaintiffs sought leave to amend when the need to amend became concrete—after the Court compelled Mr. Millar's claims to arbitration leaving only one proposed class representative. In doing so, Plaintiffs were diligent, and the Court should find good cause to allow them to file their Second Amended Complaint.

**C.     ExpressVPN's contention that some class members were exposed to materially different disclosures is another reason to allow the amendment.**

Courts may also "consider the 'rights of the parties, the ends of justice, and judicial economy' when deciding whether Rule 16's good cause standard has been met." *Kendrick v. Cnty. of San Diego*, 2017 U.S. Dist. LEXIS 96863, at *6 (S.D. Cal. June 22, 2017) (citing *United States v. Dang*, 488 F.3d 1135, 1143 (9th Cir. 2007)).

In mid-December ExpressVPN produced documents in response to Plaintiffs' discovery requests showing changes to its automatic renewal disclosures over time. *See* Dkt. 51-1 ¶ 4. Since then, including in its Opposition, ExpressVPN has argued that those disclosures differ materially from the disclosures seen by Mr. Martinez. *See* Opp. 16 (distinguishing Mr. Marin's disclosures from Mr. Martinez). In all likelihood, at class certification ExpressVPN will therefore argue that Mr. Martinez cannot adequately represent the entire proposed class and can instead only represent the portion of the proposed class that saw disclosures most similar to those that he saw. This will create additional disputes at class certification. And if the Court agrees with ExpressVPN, then the natural solution will be to create a subclass (which will need a plaintiff to serve as a representative). *See J.P. v. Sessions*, 2019 U.S. Dist. LEXIS 217560, at *37-38 (C.D. Cal. Nov. 5, 2019) (explaining that subclasses can expedite

resolution of a case and can be used to address arguments that apply to different groups of class members). In that scenario, if there is no named plaintiff to act as the subclass's representative, then a subset of the class's claims cannot be decided on the merits. This is contrary to "Rule 16's purpose … to get cases decided on the merits." *Kirby v. McMenamins Inc.*, 2023 U.S. Dist. LEXIS 125674, at *11-12 (W.D. Wash. July 19, 2023) (finding good cause to add named plaintiffs when defendant argued that the current plaintiff could not adequately represent the entire class).

Courts regularly allow amendments for a similar purpose (avoiding a typicality or adequacy dispute), even when the requests are made later in the case. *See Wiener v. Dannon Co.*, 255 F.R.D. 658, 673 (C.D. Cal. 2009) ("Because [plaintiff] fails to satisfy the typicality requirement of Rule 23(a)(3), Plaintiff's Motion for Class Certification is DENIED. Plaintiff has leave to substitute in an appropriate class representative."); *Foster v. Kraft Goods Global, Inc.*, 285 F.R.D. 343, 349 (W.D. Pa. 2012) ("In light of the Court's ... concerns as to the current named-Plaintiff's typicality under Rule 23, the Court concludes that granting Plaintiff's request for leave to add named plaintiffs is appropriate."); *Torres v. Rhoades*, 2015 U.S. Dist. LEXIS 169965, at *2 (W.D. Wis. Dec. 21, 2015) ("Although I have no doubt that plaintiffs' claims are appropriate for class treatment, I agree with defendant . . . that plaintiffs are not adequate representatives for all members of the class . . . . Accordingly, I am denying plaintiffs' motion for class certification without prejudice to give plaintiffs an opportunity to narrow the proposed class or find additional named plaintiffs whose interests more closely match the other class members."); *Kirby*, 2023 U.S. Dist. LEXIS 125674, at *11-12 (similar).

Allowing amendment also serves judicial economy. *See Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 2021 U.S. Dist. LEXIS 250481, at *12 (C.D. Cal. Feb. 16, 2021) (finding good cause to amend in light of "Rule 16's purpose … to manage the cases … efficiently and effectively" rather than "enforce deadlines mindlessly" (quoting *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir.

Reply in Support of
Motion for Leave to File 2AC                    7

Case No. 8:25-cv-01273-FWS-DFM

2005)). If Mr. Marin is not permitted to join this class action, he could need to file a separate putative class action that is extremely closely related to this case. This would achieve the same result, but in a much less efficient manner than simply adding him as a plaintiff to this action. Because a "separate legal action would extend this dispute unnecessarily and consume judicial resources" the Court should "find[] good cause to amend the scheduling order." *ImprimisRx, LLC v. Osrx, Inc.*, 2022 U.S. Dist. LEXIS 196183, at *5 (S.D. Cal. Oct. 27, 2022).

ExpressVPN brushes this basis for amendment aside, claiming that the potential need for a subclass is a "post-hoc justification" for the amendment. Opp. 10-11. But that Plaintiffs learned this basis for amendment during the meet and confer process does not take anything away from its merit; it is an independent basis to add an additional representative that will benefit the proposed class by representing a likely subclass. And it is another example of Plaintiffs diligently pursuing amendment. Plaintiffs revised the proposed Second Amended Complaint to address the updated disclosures immediately after ExpressVPN raised them during the meet and confer.[2] *See* Mot. 3-5; *M.H. v. Cnty. of Alameda*, 2012 U.S. Dist. LEXIS 168412, at *9 (N.D. Cal. Nov. 16, 2012) ("Courts routinely allow parties to amend their pleadings" under Rule 16 "after new information comes to light during discovery."); *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, 2006 U.S. Dist. LEXIS 94421, at *15-16 (E.D. Cal. Dec. 15, 2006) (collecting cases) ("Allowing parties to amend [under Rule 16] based on information obtained through discovery is common and well established.").

Plaintiffs' proposed amendment satisfies Rule 16.

## III.    Plaintiffs' proposed amendment satisfies Rule 15.

Because Rule 16's good cause standard is satisfied, leave to amend is governed

---

[2] ExpressVPN does not seriously contend that Plaintiffs should have known about the different disclosures earlier. *See* Opp. 11 at n.1. ExpressVPN produced the documents, with hundreds more, on December 19. Dkt. 51-1 at ¶ 4. ExpressVPN cites no authority for its claim that Plaintiffs should have known and acted on these specific disclosures because they were available through a third-party archiving platform.

Reply in Support of                                         Case No. 8:25-cv-01273-FWS-DFM
Motion for Leave to File 2AC                 8

by Rule 15. Rule 15 is applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). The "nonmoving party bears the burden of demonstrating why leave to amend should not be granted." *Genentech, Inc. v. Abbott Lab'ys*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989). Absent undue prejudice or a strong showing of bad faith, undue delay, or futility under *Foman*, leave should be granted. *Eminence Capital*, 316 F.3d at 1052. ExpressVPN has not met its burden.

First, ExpressVPN repackages its Rule 16 arguments to contend that Plaintiffs were dilatory and could have amended earlier. Opp. 13. As explained above, those arguments are unpersuasive. ExpressVPN's remaining arguments—futility and undue prejudice—are addressed in turn.

### A.    Amendment is not futile.

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Jones v. Twentieth Century Studios, Inc.*, 2022 U.S. Dist. LEXIS 248130, at *11-12 (C.D. Cal. Dec. 20, 2022) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Denial on futility grounds is "rare," and courts generally defer merits challenges until after the amendment is allowed. *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010). ExpressVPN fails to meet this standard.

ExpressVPN argues that amendment is futile because the disclosures shown to Mr. Marin comply with California's Automatic Renewal Law. Opp. 13-14. The proposed Second Amended Complaint adequately alleges otherwise. *See* Dkt. 51-2 ¶¶ 51-57. Contrary to the ARL's "clear and conspicuous" requirement, ExpressVPN's disclosure was "in smaller (not larger) font than the surrounding text," the "small text was not bolded or highlighted and fades into the background" and it "was not set off from the surrounding text in a manner that clearly call[ed] attention to it." *Id.* ¶ 55; *see* Cal. Bus. & Prof. Code § 17601(a)(3). It was "designed to go unnoticed." Dkt. 51-2 ¶ 55. Contrary to the ARL's affirmative consent requirement, ExpressVPN "failed to require the user to press a button confirming that the consumer is consenting to

Reply in Support of                                   Case No. 8:25-cv-01273-FWS-DFM
Motion for Leave to File 2AC                 9

automatic renewal" for example requiring consumers to click a button saying "By clicking Join Now, I agree to automatically recurring charges of $12.95 a month," *Id.* ¶ 56; *see* Cal. Bus. & Prof. Code §§ 17602(a)(2), (4).[3] And contrary to the ARL's disclosure requirements, ExpressVPN failed "to say that the subscription will continue indefinitely until the consumer cancels," Dkt. 51-2 ¶ 57; *see* Cal. Bus. & Prof. Code § 17602(a)(8)(A).

Next, ExpressVPN argues that no reasonable consumer would be deceived by the disclosures Mr. Marin saw. The Court has already recognized that "whether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer or motions to dismiss." Dkt. 40 at p. 14 (citation omitted). That principle applies here. And it is particularly applicable in ARL cases like this one, where the legislature specifically outlawed ExpressVPN's conduct to protect consumers. *See Brown v. Hain Celestial Grp., Inc.*, 2015 U.S. Dist. LEXIS 67912, at *23-24 (N.D. Cal. May 26, 2015) (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (agreeing that the legislature's decision to prohibit defendant's conduct means "as a matter of law" that defendant's violations "are 'likely to deceive reasonable consumers'").

ExpressVPN's futility argument boils down to a merits dispute over how the ARL and CLRA should be applied to the facts. That is not the Rule 15 standard, and the proposed amendment is not futile.

**B.    Amendment will not unduly prejudice ExpressVPN.**

"In order to justify denial of leave to amend, the prejudice must be substantial." *Ellsworth v. United States Bank, N.A.*, 2013 U.S. Dist. LEXIS 179134, at *32 (N.D.

---

[3] ExpressVPN argues that the "Subscribe Now" button accomplishes this. Opp. 14. But that is a question of fact not properly decided here or in a motion to dismiss. Reasonable consumers signing up for a 1-year ExpressVPN plan may understand that they are purchasing a subscription, but not understand that the subscription automatically renews. That potential misunderstanding is why the ARL requires the clear and conspicuous disclosures that it does.

Cal. Dec. 19, 2013). The opposing party must show that it will be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the [] amendments been timely. *Butler v. Clarendon Am. Ins. Co.*, 2006 U.S. Dist. LEXIS 118118, at *10 (N.D. Cal. Nov. 27, 2006) (quotation omitted). ExpressVPN makes no such showing.

ExpressVPN does not contend that adding Mr. Marin now deprives it of an opportunity it would have had if he were added in December. It does not identify any lost evidence, missed deadline, or strategic disadvantage. Instead, it argues that amendment would require (1) additional discovery and (2) a potential additional motion to dismiss. Opp. 17. Neither constitutes substantial prejudice.

First, the routine additional discovery required by Mr. Marin's addition to the case does not amount to undue prejudice. The parties have already been conducting classwide discovery covering the entire class period. So ExpressVPN has already produced its checkout flows and transaction data for the period during which Mr. Marin made his purchase. Any additional discovery specific to Mr. Marin would be limited—likely including only tens of documents relating to his purchase and use of the product. Plus, during the meet-and-confer process, ExpressVPN already looked up Mr. Marin's sign-up process and account history. Courts routinely hold that the prospect of additional discovery, standing alone, does not constitute substantial prejudice. *See, e.g., Hazdovac v. Mercedes-Benz USA, LLC*, 2022 U.S. Dist. LEXIS 7110, at *8 (N.D. Cal. Jan. 13, 2022) ("[T]he prospect of some additional discovery does not translate into unfair prejudice to the defendant."); *Kelly Moore Paint Co. v. Nat'l Union Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 148064, at *19 (N.D. Cal. Oct. 17, 2014) ("[P]ossibilities of additional discovery or delay are not by themselves sufficient to demonstrate prejudice."); *Whelan v. Miles Indus.*, 2012 U.S. Dist. LEXIS 207628, at *11-12 (N.D. Cal. Sept. 10, 2012) (acknowledging that additional discovery about the new plaintiffs would be necessary, but granting leave to amend).

*In re Volkswagen* does not compel a different result. There, the proposed amendment would have "alter[ed] the nature of [the] litigation" by introducing entirely new chemicals and requiring extensive new emissions testing after the defendant had already completed testing for the substances identified in the original complaint. 2023 U.S. Dist. LEXIS 27448, at *7 (N.D. Cal. Feb. 17, 2023). The court emphasized that the discovery burden from additional emissions testing would be "undoubtedly significant." *Id.* at *5. Here, by contrast, Mr. Marin is already encompassed within the existing class definition. *See* Dkt. 24 (First Amended Complaint) ¶ 66 (defining class). His addition does not change the theory of liability, introduce new statutory claims, or expand the scope of the case. It simply ensures adequate representation for the full class and any potential subclass. *See* above § II(C). There is no comparable analog to *In re Volkswagen*; the only additional discovery ExpressVPN identifies is the limited document production discussed above.[4]

Second, the possibility of an additional motion to dismiss does not constitute undue prejudice. Courts routinely reject the notion that the need to respond to a pleading is itself prejudicial (and a response is required every time an amendment is permitted). *See* Mot. 9-10 (citing cases). Moreover, any motion directed at Mr. Marin's sole CLRA claim would necessarily be narrow. The Court has already rejected ExpressVPN's standing and personal jurisdiction arguments. Dkt. 40. ExpressVPN does not contend that Mr. Marin is subject to arbitration. So the only challenge would be whether the disclosures Mr. Marin saw violate the CLRA, an issue that the Court has already ruled "will usually be a question of fact not appropriate for decision on demurrer or motions to dismiss." *Id.* at p. 14. As a result, any additional pleading

---

[4] ExpressVPN notes that it served its first set of discovery requests on Plaintiff Martinez on January 30, after Plaintiffs filed their Motion. Opp. 18. If the amendment is granted, Plaintiffs are willing to respond to the same discovery for Mr. Marin on an expedited basis.

Reply in Support of
Motion for Leave to File 2AC

Case No. 8:25-cv-01273-FWS-DFM

12

challenge will be limited in scope, further reducing any burden or prejudice on ExpressVPN.

Because ExpressVPN identifies no substantial disadvantage or lost opportunity from the amendment, it has not shown undue prejudice.

**IV.    Conclusion.**

For the reasons given above and in Plaintiffs' Motion, the Court should grant Plaintiffs leave to file the proposed Second Amended Complaint.

Dated: February 26, 2026                    Respectfully submitted,

By: /s/ *Martin Brenner*
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Reply in Support of                                     Case No. 8:25-cv-01273-FWS-DFM
Motion for Leave to File 2AC                13

**<u>Certification of Compliance</u>**

The undersigned, counsel of record for Plaintiffs certifies that this memorandum contains 4,221 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 26, 2026                    By: */s/ Martin Brenner*
                                                          Martin Brenner