Stephen A. Broome (Cal. Bar No. 314605)
stephenbroome@quinnemanuel.com
John W. Baumann (Cal. Bar No. 288881)
jackbaumann@quinnemanuel.com
Rex N. Alley (Cal. Bar No. 346525)
rexalley@quinnemanuel.com
QUINN EMANUEL
  URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Attorneys for Defendant*

*[Continued on next page]*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TIMOTHY MILLAR, MARCO MARTINEZ, and SEAN MARIN, each individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> EXPRESS TECHNOLOGIES, LTD., <br><br> Defendant. | Case No. 8:25-cv-01273-FWS-DFM <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT UNDER RULE 12(b)(6)** <br><br> Hearing Date:  April 23, 2026 <br> Time:  10:00 AM PT <br> Action Filed:  June 13, 2025 <br> Judge:  Hon. Fred W. Slaughter <br> Trial Date:  May 11, 2027 |

-2-

Nicolas G. Keller (N.Y. Bar No. 5549522)*
nicolaskeller@quinnemanuel.com
QUINN EMANUEL
  URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
Tel:  (212) 849 7000
Fax:  (212) 849 7100
(*Admitted *Pro Hac Vice*)

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

BACKGROUND .........................................................................................2

    A.    Procedural History ..........................................................................2

    B.    ExpressVPN Provides VPN and Privacy Services............................3

    C.    Plaintiff's ExpressVPN Subscription ................................................4

        1.    As Part of the Sign Up Process, Plaintiff Received Repeated Notice That His Subscription Would Automatically Renew.......................................................4

        2.    Plaintiff Affirmatively Consented to the ExpressVPN TOS, Which Also Disclosed the Automatic Renewal Terms.........................................................................7

LEGAL STANDARD......................................................................................8

ARGUMENT................................................................................................9

I.    PLAINTIFF FAILS TO ALLEGE AN ARL VIOLATION .........................9

    A.    Per § 17602(a)(1), ExpressVPN Presented the Automatic Renewal Terms in a Clear and Conspicuous Manner Prior to Purchase........................................................................9

    B.    Per § 17602(a)(2), ExpressVPN Did Not Charge Plaintiff's Credit Card Prior to Obtaining Affirmative Consent to the TOS.........11

    C.    Per § 17602(a)(3), ExpressVPN Provided a Compliant Acknowledgment....................................................................14

II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CLRA................15

    A.    No Reasonable Consumer Would be Misled....................................15

    B.    Plaintiff Also Fails to Satisfy Rule 9(b) Heightened Pleading............18

Case No. 8:25-cv-1273
Defendant's Motion to Dismiss the SAC

III. PLAINTIFF'S CLAIM SHOULD BE DISMISSED WITH PREJUDICE .......................................................................................... 19

CONCLUSION ................................................................................................ 20

-ii-

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alamilla v. Hain Celestial Grp., Inc.*,
   30 F. Supp. 3d 943 (N.D. Cal. 2014)......................................................................8

*Alghazwi v. Beauty Health Co.*,
   801 F. Supp. 3d 982 (C.D. Cal. 2025)....................................................................8

*Argueta v. Henkel Corp.*,
   793 F. Supp. 3d 1192 (C.D. Cal. 2024)................................................................18

*Bastian v. Petren Res. Corp.*,
   892 F.2d 680 (7th Cir. 1990).................................................................................1

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................8

*Bodenburg v. Apple Inc.*,
   146 F.4th 761 (9th Cir. 2025)..............................................................................15

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016)...............................................................................18

*Goldstein v. Gen. Motors LLC*,
   445 F. Supp. 3d 1000 (S.D. Cal. 2020) ...............................................................18

*Hall v. Time, Inc.*,
   857 Fed. Appx. 385 (9th Cir. 2021) ....................................................................12

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)..............................................................................18

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)..................................................................................8

*Lacey v. Maricopa County*,
   693 F.3d 896 (9th Cir. 2012)..................................................................................1

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003)..............................................................................15

-iii-

*Lee v. DoNotPay, Inc.*,
    683 F. Supp. 3d 1062 (C.D. Cal. 2023) ............................................................10

*Loomis v. Slendertone Distrib., Inc.*,
    420 F. Supp. 3d 1046 (S.D. Cal 2019) .............................................................7

*Macaspac v. Henkel Corp.*,
    2018 WL 2539595 (S.D. Cal. June 4, 2018)......................................................19

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021)................................................................15

*Rutter v. Apple Inc.*,
    2022 WL 1443336 (N.D. Cal. May 6, 2022) .....................................................15

*Tan v. Quick Box, LLC*,
    2020 WL 7226440 (S.D. Cal. Dec. 8, 2020)......................................................18

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)............................................................18

*Viveros v. Audible, Inc.*,
    2023 WL 6960281 (W.D. Wash. 2023).........................................................12, 13

*Walkingeagle v. Google, LLC*,
    2024 WL 4379734 (9th Cir. Oct. 3, 2024)........................................................17

## **Rules**

Local Rule 7-3 ............................................................................................1

Local Rule 11-6.1 ......................................................................................21

F.R.C.P. 12(b)(6) ...............................................................................*passim*

## **Statutes**

Cal. Bus. & Prof. Code § 17601...............................................................13

Cal. Bus. & Prof. Code § 17601(a)(3)......................................................10

Cal. Bus. & Prof. Code § 17602(a)(1).....................................................8, 9

Cal. Bus. & Prof. Code § 17602(a)(2)......................................................11

-iv-

Case No. 8:25-cv-1273
Defendant's Motion to Dismiss the SAC

Cal. Bus. & Prof. Code § 17602(a)(3)........................................................ 13, 14, 15

Cal. Consumer Legal Remedies Act.................................................................*passim*

## Other Authorities

ExpressVPN, *Get ExpressVPN in 3 easy steps*,
  INTERNET ARCHIVE (Apr. 25, 2024),
  https://web.archive.org/web/20240425142235/http://express-
  vpn.com/order.......................................................................................7

Case No. 8:25-cv-1273
Defendant's Motion to Dismiss the SAC

## NOTICE OF MOTION

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, April 23, 2026, at 10:00 AM PT or at the next date and time that is available for the Court, defendant Express Technologies Ltd. ("ExpressVPN") will move this Court to dismiss plaintiff Sean Marin's claim from the Second Amended Complaint (ECF No. 58) for failure to state a claim under Rule 12(b)(6).  ExpressVPN so moves based on the following Memorandum of Points and Authorities, the argument of counsel, and any additional material as may be submitted to and accepted by the Court before its decision.

Pursuant to Local Rule 7-3, before making this motion, counsel for the parties held a pre-motion conference on March 17, 2026.  The parties did not resolve the issues that would have avoided the need for this motion.

DATED:  March 20, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:  /s/ Stephen A. Broome
Stephen A. Broome
John W. Baumann
Rex N. Alley
Nicolas G. Keller (Admitted *Pro Hac Vice*)

*Attorneys for Defendant*

-1-

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Sean Marin[1] has sued Express Technologies Ltd. ("ExpressVPN") under the Consumer Legal Remedies Act ("CLRA") based on alleged violations of California's Automatic Renewal Law ("ARL"). However, plaintiff's contention that he did not know he would be charged on a recurring basis for his yearly subscription to ExpressVPN's virtual private network ("VPN") service cannot be reconciled with ExpressVPN's repeated, clear, and conspicuous disclosures that his subscriptions would autorenew. These disclosures—the text of which is undisputed and the sufficiency of which is properly reviewable on this motion—appeared in multiple places during plaintiff's purchase, including on the ExpressVPN checkout page, in the acknowledgment email sent to him, and in the Terms of Service ("TOS") to which he agreed. Consequently, plaintiff does not and cannot state a violation of the ARL—much less a cognizable CLRA claim, which independently requires plaintiff to demonstrate that a reasonable consumer would be misled by the alleged misconduct, which he cannot do.

Indeed, at every step of plaintiff's purchase, ExpressVPN provided clear and conspicuous notification of the applicable automatic renewal offer terms, including that plaintiff's subscription would automatically renew:

---

[1] In its ruling on ExpressVPN's Motion to Dismiss the FAC, the Court addressed ExpressVPN's other arguments for dismissal—including lack of personal jurisdiction under Rule 12(b)(2), lack of subject matter jurisdiction under Rule 12(b)(1), and failure to state a claim under Rule 12(b)(6). *See* ECF No. 40. Accordingly, for efficiency of these proceedings, ExpressVPN does not repeat those arguments in detail here. However, for clarity and the avoidance of doubt, ExpressVPN stands on and shall not be deemed to have waived, forfeited, conceded, or abandoned, its prior arguments—both as to Mr. Martinez and also as to their application to Mr. Marin. *Cf. Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (plaintiff is not required to replead dismissed claims in amended complaint); *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683 (7th Cir. 1990) (Posner, J.) ("It is not waiver—it is prudence and economy—for parties not to reassert a position that the trial judge has rejected.").

Case No. 8:25-cv-1273

Motion to Dismiss/Motion to Compel Arbitration

- **On the checkout page**: "My subscription will renew on [the date a year from purchase] at the then-current rate (now $116.95/year) unless I cancel,"  where this message was placed immediately above the call to action ("CTA") button, which itself was labeled "Subscribe Now," an additional unmistakable signal that the purchase was a subscription;

- **In the confirmation email**:  "Your subscription will automatically renew . . . every 12 months until canceled;" and

- **In the TOS**: "[P]lans renew automatically by default at the completion of the billing term."

Furthermore, the TOS itself was conspicuously hyperlinked in plaintiff's checkout flow, meaning that plaintiff cannot dispute that he affirmatively consented to the agreement (*i.e.*, that TOS) containing the autorenewal terms, as the ARL required.  In fact, in compelling former plaintiff Timothy Millar to arbitration, the Court already found—under materially identical circumstances—that the hyperlinked TOS validly binds users.

In all events, plaintiff's CLRA claim fails for the independent reason that, given ExpressVPN's fulsome autorenewal disclosures, no reasonable consumer would be misled by any potential technical shortfalls alleged by plaintiff.  Because Mr. Marin fails to state a cognizable CLRA claim under any theory—and could not do so even if given further leave to amend—his claim should be dismissed with prejudice.

## **BACKGROUND**

### A.    **Procedural History**

The First Amended Complaint ("FAC"), filed on September 12, 2025, featured Mr. Millar and Marco Martinez as named plaintiffs and involved claims under the CLRA, California's Unfair Competition Law ("UCL"), and California False Advertising Law ("FAL").  ECF No. 24.  On November 25, 2025, the Court granted in substantial part ExpressVPN's Motion to Dismiss and, in the Alternative, to Compel Arbitration, by dismissing plaintiffs' UCL and FAL claims without leave to

-2-

amend (but without prejudice to refile in state court).  ECF No. 40 at 6.  The Court also compelled Mr. Millar's remaining CLRA claim to arbitration, finding that Mr. Millar had consented during checkout to the arbitration agreement in ExpressVPN's TOS that was hyperlinked "on a page that is not otherwise crowded with text, is not in exceedingly small font, and is not otherwise so visually obscured that would render it not reasonably conspicuous."  *Id.* at 20.

This left only Mr. Martinez's CLRA claim in the case, as to which the Court stated that "the FAC does not present the 'rare situation' where dismissal is appropriate for failure to adequately allege that a reasonable consumer could be deceived. . . . Although the webpage screenshots Plaintiffs include in the FAC certainly contain indications that a purchase would involve a renewing subscription, there are also indications that ***could possibly mislead*** a consumer into thinking the purchase was a one-time purchase."  ECF No. 40 at 14.[2]  ExpressVPN answered the FAC on December 22, 2025.  ECF No. 48.

On January 29, 2026, Mr. Martinez sought leave to file a Second Amended Complaint ("SAC") to add Mr. Marin, which the Court granted on March 3, 2026.  *See* ECF Nos. 51, 57.  In addressing ExpressVPN's argument in opposition that Mr. Marin's disclosures were compliant with the ARL on their face and therefore could not support the addition of Mr. Marin as a named plaintiff, the Court found "the sufficiency of Mr. Marin's claims" was "better addressed" after the filing of the SAC.  ECF No. 57 at 4.

On March 6, 2026, Plaintiffs filed their SAC, with Mr. Martinez and Mr. Marin as named plaintiffs, asserting only a claim under the CLRA.  SAC ¶¶ 80-94.

**B.    ExpressVPN Provides VPN and Privacy Services**

ExpressVPN is an established provider of online privacy and security solutions, including through its flagship subscription VPN service.  *See* ECF No. 26-1,

---

[2]  All emphases added unless otherwise specified.

Declaration of Jack Buckley ¶¶ 3-5 (hereinafter, "Buckley Decl."). A VPN "uses software to encrypt users' internet connections and provide a secure tunnel between users' devices and the internet." *Id.* ¶ 5. "[O]ften used by employers and organizations to enable remote employees to securely access institutional networks from across the globe," VPNs are also available to individuals "for their everyday internet browsing." *Id.* ¶ 8. ExpressVPN's VPN Service is "available entirely online" and without the need for any "hardware or other tangible product." *Id.* ¶ 9. ExpressVPN is dedicated to privacy and digital security, having launched initiatives like the ExpressVPN Rights Center. *Id.* ¶ 7. ExpressVPN's VPN service is also "routinely audited" for compliance with strict "security and privacy standards." *Id.* ¶ 6.

### C.   **Plaintiff's ExpressVPN Subscription**

Both during and after the VPN Service sign-up process, plaintiff received repeated, clear, and conspicuous disclosures that his subscription would autorenew. He also provided his affirmative consent to the TOS, which itself further set forth the automatic renewal terms in detail.

### 1.   <u>As Part of the Sign Up Process, Plaintiff Received Repeated Notice That His Subscription Would Automatically Renew</u>

On or around April 17, 2024, plaintiff signed up for a yearly ExpressVPN subscription. SAC ¶ 70. Plaintiff's checkout flow consisted of a three-step process, all presented on a single, uncluttered page. At "Step 1," plaintiff was prompted to choose between three plans of different durations. SAC, Ex. 8. At "Step 2," plaintiff entered his email address. *Id.* And "Step 3," necessary for the customer to complete the order, contained the following unavoidable text in a dark font set against a white background:

-4-

I have reviewed and consent to the Terms of Service and Privacy Policy.

My subscription will renew on Apr 25, 2025 at the then-current rate (now $116.95/year) unless I cancel via the "Edit Subscription" menu by following the "Turn Off Automatic Renewal" prompts. Canceling within 30 days entitles me to a full refund.

**Subscribe Now**

*Id.*  As depicted above, this text—**and only this text**—was placed immediately above the "Subscribe Now" CTA button plaintiff used to complete his purchase.  *Id.*

Further, plaintiff received a post-purchase acknowledgement email that, in an equally visible manner, both reiterated his subscription would automatically renew and set forth detailed instructions on how to cancel:

> **PLAN** . . . 12 months . . .
>
> **SUBSCRIPTION RENEWS ON** . . . 19 Apr 2025 . . .
>
> Your subscription **will automatically renew** via the same payment method at the prevailing renewal price (currently 116.95 USD) **every 12 months until canceled**.
>
> To cancel, visit My Account, select My Subscription, select Edit subscription, and then follow the prompts to Turn Off Automatic Renewal.
>
> If you're in any way unsatisfied with ExpressVPN, simply <u>contact Support</u> within your first 30 days and get a complete refund.

SAC, Ex. 9 (revised to correct technical issue with the display of certain characters). Plaintiff acknowledges that he was able to successfully "cancel[] renewal" of his subscription.  SAC ¶ 6.  Nonetheless, plaintiff implausibly maintains that the automatically renewing nature of his subscription was somehow unknown to him.  *Id.*

Plaintiff challenges ExpressVPN's stylistic choices of font colors and sizes on the checkout page, *id.* ¶¶ 51-62, but his characterizations are contradicted by the relevant webpages, which are attached to the SAC. *Compare id.*, *with* SAC, Ex. 8. Importantly, for instance, the font of the text "My subscription will renew on [date a year from purchase] at the then-current rate . . . unless I cancel" was no smaller than other important notices on the webpage, including "30-day money-back guarantee," "All amounts shown are in USD," and "Privacy guarantee: We do not share your information and will contact you only as needed to provide our service," *id.*, Ex. 8— none of which plaintiff asserts were obscured, even though they were the same size as the text he does challenge.

Plaintiff similarly complains that certain autorenewal disclosure text in formatted in such a manner that it "fades into the background," *id.* ¶ 55, but this ignores that similarly and identically formatted text was used abundantly throughout the page. *See id.*, Ex. 8. This includes the text used for key data entry fields (*e.g.*, "Your email address," "First Name," "Last Name," "Card number") and even for emphasizing that one discounted rate was a significant drop from the usual price, which for comparison was in grey and crossed out (*i.e.*, "~~$12.95~~"), *id.*, belying the suggestion that ExpressVPN's use of this formatting was intended to obscure. Moreover, the text in question was, in fact, readily visible against the white background in which the automatic renewal disclosures were situated and, notably, the automatic renewal disclosures and reference to the TOS are the only language appearing in the white space above the "Subscribe Now" CTA button. *See id.*

Lastly, plaintiff makes a conclusory allegation that the autorenew information in the post-confirmation email is non-compliant, *id.* ¶ 61, but the email itself, *id.*, Ex. 9, clearly sets forth all required information. At all points, plaintiff's assertions regarding ExpressVPN's purportedly deficient disclosures are irreconcilable with any reasonable review of the evidence attached to his own SAC.

-6-

2.    Plaintiff Affirmatively Consented to the ExpressVPN TOS, Which Also Disclosed the Automatic Renewal Terms

At the time of plaintiff's subscription, the checkout page stated, above the "Subscribe Now" CTA button, that: "I have reviewed and consent to the Terms of Service," with the words "Terms of Service" in underlined and hyperlinked text. SAC, Ex. 8. To further draw attention to itself, this hyperlink interactively "activated" when the user hovered the cursor over it to reveal dark black text with animated lime green underlining:

I have reviewed and consent to the Terms of Service and Privacy Policy.

I have reviewed and consent to the Terms of Service and Privacy Policy.

I have reviewed and consent to the Terms of Service and Privacy Policy.

I have reviewed and consent to the Terms of Service and Privacy Policy.

I have reviewed and consent to the Terms of Service and Privacy Policy.

ExpressVPN, *Get ExpressVPN in 3 easy steps*, INTERNET ARCHIVE (Apr. 25, 2024), https://web.archive.org/web/20240425142235/http://express-vpn.com/order. To sign up for the VPN service, plaintiff necessarily clicked the "Subscribe Now" button, thereby agreeing to be bound by the hyperlinked TOS. *See id*.; SAC, Ex. 8.

At all relevant times, this TOS described in detail the applicable automatic renewal terms to which plaintiff affirmatively consented. Specifically, section 4 of the TOS, titled "Subscriptions," stated that "[w]hen supported by your payment method, plans *renew automatically* by default at the completion of the billing term;" "[b]y default, the *renewal term* is for the same duration as the billing term for the original *subscription*;" "[t]he *subscription fee* will be charged *automatically* to the payment method you last selected;" "to discontinue *automatic renewal*, visit My Account, select My Subscription, select Edit Subscription, and then follow the prompts to Turn Off Automatic Renewal; contact us by live chat at

-7-

www.expressvpn.com/support; or email us at support@expressvpn.com;" and "by default, ***auto-renewal is turned on*** when [customers] use a payment method that supports auto-renewal (such as a credit card or PayPal), and turned off when [customers] use a payment method that does not support auto-renewal (such as Bitcoin)." Ex. 1 § 4, ExpressVPN, *ExpressVPN Terms of Service*, INTERNET ARCHIVE (June 30, 2024), https://web.archive.org/web/20240630093146/express-vpn.com/tos (hereinafter, "Ex. 1").[3]  The TOS further stated that "ExpressVPN reserves the right to amend ***subscription fees*** or institute new fees at any time upon reasonable advance notice.  Any changes to the pricing will not affect the Subscriber's current ***subscription period*** and will become effective upon ***subscription renewal***."  *Id*.

## LEGAL STANDARD

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (cleaned up).  As revealed by plaintiff's own exhibits, the SAC fails to meet this basic threshold.  *See Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) (granting motion to dismiss where complaint "incorporate[d] by reference two articles that contradict[ed] [plaintiff's] claim").

---

[3]  Plaintiff's CLRA claim requires the Court to examine the full context of ExpressVPN's representations and disclosures to him.  *See Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1082 (S.D. Cal. 2019).  Accordingly, the TOS in effect when plaintiff signed up is incorporated into his complaint by reference, as that TOS (and the other documents) provided to plaintiff at the time of his subscription "form the basis of [his] claims of misleading statements or omissions."  *Alghazwi v. Beauty Health Co.*, 801 F. Supp. 3d 982, 999 (C.D. Cal. 2025); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  Nevertheless, out of an abundance of caution, ExpressVPN also separately submits a request for judicial notice to ensure the Court may consider the closest-in-time, publicly available TOS.

## ARGUMENT

## I.  PLAINTIFF FAILS TO ALLEGE AN ARL VIOLATION

Plaintiff acknowledges there is no standalone cause of action for ARL violations—he instead has argued that ExpressVPN's purported ARL violations form a predicate for and/or presumption of a CLRA claim.  *See* SAC ¶ 83; ECF No. 33 at 11.  On its face, however, the SAC demonstrates no such underlying violation of the ARL.

### A.  Per § 17602(a)(1), ExpressVPN Presented the Automatic Renewal Terms in a Clear and Conspicuous Manner Prior to Purchase

Plaintiff alleges that ExpressVPN did not "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement [was] fulfilled."  SAC ¶ 35 (quoting Cal. Bus. & Prof. Code § 17602(a)(1)).  However, as shown above and as summarized below, a simple review of the relevant allegations and exhibits shows that ExpressVPN clearly and explicitly disclosed each automatic renewal offer term directly above the "Subscribe Now" CTA button:

| ARL § | Automatic Renewal Offer Terms | Checkout Page (SAC, Ex. 8) |
|---|---|---|
| § 17601(2)(A) | "That the subscription … will continue until the consumer cancels." | "My subscription will renew … unless I cancel."[4] |
| § 17601(2)(B) | "The description of the cancellation policy that applies." | "[C]ancel via the 'Edit Subscription' menu by following the 'Turn Off Automatic Renewal' prompts.  Canceling within 30 days entitles me to a full refund." |

[4]  As another example of the disconnect between the SAC and its exhibits, plaintiff's argument that "the purported disclosures also failed to say that the subscription will continue indefinitely until the consumer cancels," SAC ¶ 57, is plainly contradicted by ExpressVPN's actual disclosures, as shown here, *see* SAC, Ex. 8.

-9-

| § 17601(2)(C) | "The recurring charges that will be charged … and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known." | "My subscription will renew on [date one year from purchase] at the then-current rate (now $116.95/year)." |
|---|---|---|
| § 17601(2)(D) | "The length of the automatic renewal term, unless the length of the term is chosen by the consumer." | "My subscription will renew on … 19 Apr 2025." |
| § 17601(2)(E) | "The minimum purchase obligation, if any." | "12-Month Plan … $99.95 . . . Order Total:  $99.95" (displayed prominently in the "Order Summary" portion of the page) |

In addition to their clear language, these disclosures were also conspicuous, as they were "set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language," Cal. Bus. & Prof. Code § 17601(a)(3)—here, ample whitespace setting them off from the payment entry fields and placement directly above the "Subscribe Now" button:

SAC, Ex. 8; *see, e.g.*, *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1070 (C.D. Cal. 2023) (finding disclosure in "crisp gray font which contrasts the plain-white background" conspicuous where font was "of readable size and the whole screen

-10-

[was] visible at once").   Just like the TOS hyperlink in the checkout flow previously addressed by the Court in its order compelling Mr. Millar to arbitration, the remainder of the disclosures on Mr. Marin's checkout flow were "on a page that is not otherwise crowded with text, is not in exceedingly small font, and is not otherwise so visually obscured that would render it not reasonably conspicuous."  ECF No. 40 at 20.

Similarly, the minimum purchase obligation was prominently displayed in the "Order Summary" portion of the page:

SAC, Ex. 8.

### B.   Per § 17602(a)(2), ExpressVPN Did Not Charge Plaintiff's Credit Card Prior to Obtaining Affirmative Consent to the TOS

Plaintiff also alleges that ExpressVPN violated the ARL by failing to "obtain the 'consumer's affirmative consent to the *agreement containing* the automatic renewal offer terms.'"  SAC ¶ 39 (quoting Cal. Bus. & Prof. Code § 17602(a)(2)); *see also id.* ¶¶ 49, 56, 84-85.  Because the TOS contained the automatic renewal offer terms, and because Plaintiff Marin gave consent to the TOS during checkout, this theory fails as a matter of law and the law of this case.

As with the *checkout page* disclosures illustrated in the previous table, ExpressVPN's *TOS* "contain[ed] the automatic renewal terms" at all relevant times:

-11-

| ARL § | TOS § 4 (Ex. 1) |
|---|---|
| § 17601(2)(A) | "[P]lans renew automatically by default at the completion of the billing term, until canceled." |
| § 17601(2)(B) | "If you would like to discontinue automatic renewal, visit My Account, select My Subscription, select Edit Subscription, and then follow the prompts to Turn Off Automatic Renewal; contact us by live chat … or email us at support@expressvpn.com." |
| § 17601(2)(C) | "The subscription fee will be charged automatically to the payment method you last selected."<br><br>"ExpressVPN reserves the right to amend subscription fees … upon reasonable advance notice.  Any changes to the pricing will not affect the Subscriber's current subscription period and will become effective upon subscription renewal." |
| § 17601(2)(D) | "By default, the renewal term is for the same duration as the billing term for the original subscription." |
| § 17601(2)(E) | "A full list of subscription plans and pricing is available on the Site." |

Therefore, all that the ARL required of ExpressVPN with respect to "affirmative consent" was that it obtain such consent *as to the TOS*—which it did. *See Hall v. Time, Inc.*, 857 Fed. Appx. 385, 386-87 (9th Cir. 2021) ("Had the legislature intended to require a consumer's affirmative consent to the automatic renewal terms specifically, it could have omitted the words 'the agreement containing' from the provision.  It did not, and [courts] decline to rewrite the statute."); *Viveros v. Audible, Inc.*, 2023 WL 6960281, at *8 (W.D. Wash. 2023) (California's ARL "does not . . . require a separate checkbox indicating consent to the automatic renewal terms.").[5]

---

[5]    Accordingly, plaintiff's assertion that, "ExpressVPN further failed to require the user to press a button confirming that the consumer is consenting to automatic renewal (it does not say, for example:  'By clicking Join Now, I agree to automatically recurring charges of $12.95 a month.')," SAC ¶ 56, is not cognizable and is immaterial as a matter of law.

-12-

Indeed, in previously assessing ExpressVPN's process of obtaining consent to its TOS in the context of compelling former plaintiff Mr. Millar to arbitration, the Court found that such process adequately formed a binding contract:

> [A]n enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms. . . . In addition to the contrasting color, the court observes that the hyperlink is on a page that is not otherwise crowded with text, is not in exceedingly small font, and is not otherwise so visually obscured that would render it not reasonably conspicuous. . . . The court is also not persuaded by Plaintiffs' argument that clicking the "Join Now" button did not constitute an "unambiguous manifestation of assent."

ECF No. 40 at 18, 20 & n.4. The same holds true here, where the TOS hyperlink is underlined, is interactively animated using lime green coloring, and "is on a page that is not otherwise crowded with text, is not in exceedingly small font, and is not otherwise so visually obscured that would render it not reasonably conspicuous." *Id.* at 20. Moreover, plaintiff necessarily clicked the CTA "Subscribe Now" button, which likewise constituted his unambiguous manifestation of assent. *See* SAC, Ex. 8.[6] Indeed, whereas the TOS link already found by the Court to provide "reasonably

---

[6]    Although the operative ARL does make clear that the required "affirmative consent" must exist as to the TOS, it does not explicitly define the "affirmative consent" standard itself. *See* Cal. Bus. & Prof. Code § 17602. However, plaintiff provides no argument or authority in the SAC that could suggest the appropriate test for that standard is any different—much less more stringent—than the test for "unambiguous manifestation of assent" already found to be satisfied by the Court under materially identical circumstances. *Cf. Viveros*, 2023 WL 6960281, at *8 ("Affirmative consent requires that '[d]efendants conspicuously disclose[] their renewal polic[ies] in plain language.'").

-13-

conspicuous notice" to Mr. Millar was immediately ***below*** the CTA button, Mr. Marin's TOS link was immediately ***above*** the CTA button—thereby making it all the more unavoidable to Mr. Marin as he used the CTA button to sign up. *Compare* SAC, Ex. 8 (Mr. Marin's checkout page), *with id.*, Ex. 6 (Mr. Millar's checkout page).

**C.    Per § 17602(a)(3), ExpressVPN Provided a Compliant Acknowledgment**

Finally, with respect to the confirmation email he received from ExpressVPN, plaintiff meekly contends—in a wholly vague and conclusory manner—that, "While this email contained certain Automatic Renewal Terms, they were not clear and conspicuous, as required by the statute." SAC ¶ 61. Tellingly, at no point does plaintiff specify which autorenewal terms were or supposedly were not contained in the acknowledgment email or explain how those autorenewal terms were supposedly not clear and conspicuous. Plaintiff is silent in this manner for the simple reason that the acknowledgment email plainly complied with all aspects of the ARL by setting forth the "automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." *Id*. ¶ 58 (quoting Cal. Bus. & Prof. Code § 17602(a)(3)).

First, as shown above and summarized below, plaintiff's acknowledgment email does contain the automatic renewal offer terms, clearly and conspicuously:

| ARL § | Acknowledgment Email (SAC, Ex. 9) |
|---|---|
| § 17601(2)(A) | "Your subscription will automatically renew … until canceled." |
| § 17601(2)(B) | "To cancel, visit My Account, select My Subscription, select Edit subscription, and then follow the prompts to Turn Off Automatic Renewal."<br><br>"[S]imply contact Support within your first 30 days and get a complete refund." |

| § 17601(2)(C) | "Your subscription will automatically renew via the same payment method at the prevailing renewal price (currently 116.95 USD) every 12 months until canceled." |
|---|---|
| § 17601(2)(D) | "**PLAN** … 12 months."<br><br>"Your subscription will automatically renew … every 12 months." |
| § 17601(2)(E) | "You received our introductory price of 99.95 USD." |

Second, given that the "cancellation policy" and "information on how to cancel" are already part of the above "automatic renewal offer terms" themselves, those, too, were provided to plaintiff. *See* SAC, Ex. 9 ("To cancel, visit My Account, select My Subscription, select Edit subscription, and then follow the prompts to Turn Off Automatic Renewal. . . . [S]imply contact Support within your first 30 days and get a complete refund.").

Third, it is indisputable that the acknowledgment email—which plaintiff not only plainly retained but also appended as an exhibit to the SAC, *see* SAC, Ex. 9— was indeed provided by ExpressVPN "in a manner that is capable of being retained by the consumer," Cal. Bus. & Prof. Code § 17602(a)(3).

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CLRA

With no viable ARL violation (or cognizable underlying factual allegations) on which to base his CLRA claim, plaintiff is left with nothing more than the conclusory and unsupported allegation that ExpressVPN violated the CLRA "by representing that its subscription plans have certain characteristics that they do not have" and "by advertising services with the intent not to sell them as advertised." SAC ¶¶ 84-85. But even if these bare allegations could stand alone (they cannot), any such CLRA claim fails for the independent reason that no reasonable consumer would be misled as a result.

### A.    No Reasonable Consumer Would be Misled

"Courts use a 'reasonable consumer' standard to determine whether a party has violated the . . . CLRA . . . This standard considers whether 'members of the public

-15-

are likely to be deceived' by the alleged advertising or business practices." *Rutter v. Apple Inc.*, 2022 WL 1443336, at *8 (N.D. Cal. May 6, 2022) (citation omitted).  But plaintiff here could not "plausibly prove that a reasonable consumer would be deceived" because "it is simply not plausible that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Bodenburg v. Apple Inc.*, 146 F.4th 761, 769 (9th Cir. 2025) (quotation omitted) (affirming dismissal of CLRA claim).  This is particularly true as to ExpressVPN's "targeted consumers," who are technologically sophisticated consumers who, as a baseline, reasonably expect ExpressVPN's service to autorenew given its nature as a service that, once deployed, operates in the background to provide enhanced privacy and security online.  *See, e.g.*, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 883-84 (9th Cir. 2021) (consumers of "niche, specialty" products "are undoubtedly more likely to exhibit a higher standard of care" than ordinary shoppers); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 509-10 (2003) ("Where the advertising or practice is targeted to a particular group or type of consumers, either more sophisticated or less sophisticated than the ordinary consumer, the question whether it is misleading to the public will be viewed from the vantage point of members of the targeted group.").

In any event, any reasonable consumer—sophisticated or not—would have understood from the numerous visible signals that ExpressVPN's subscriptions were automatically renewing.  As demonstrated above and as summarized topically below, ExpressVPN provided ***repeated, explicit, clear, and conspicuous*** disclosures of all material information to plaintiff at multiple steps before, during, and after the checkout process:

| ARL | Checkout Page (SAC, Ex. 8) | TOS § 4 (Ex. 1) | Acknowledgment Email (SAC, Ex. 9) |
|---|---|---|---|
| Subscription renews until canceled | "My subscription will renew … unless I cancel." | "[P]lans renew automatically by default at the completion of the billing term, until canceled." | "Your subscription will automatically renew … until canceled." |
| How to cancel | "[C]ancel via the 'Edit Subscription' menu by following the 'Turn Off Automatic Renewal' prompts. Canceling within 30 days entitles me to a full refund." | "If you would like to discontinue automatic renewal, visit My Account, select My Subscription, select Edit Subscription, and then follow the prompts to Turn Off Automatic Renewal; contact us by live chat … or email us at support@expressvpn.com." | "To cancel, visit My Account, select My Subscription, select Edit subscription, and then follow the prompts to Turn Off Automatic Renewal." <br><br> "[S]imply contact Support within your first 30 days and get a complete refund." |
| Renewal term | "My subscription will renew on [date one year from purchase] at the then-current rate (now $116.95/year)." | "The subscription fee will be charged automatically to the payment method you last selected." <br><br> "ExpressVPN reserves the right to amend subscription fees … upon reasonable advance notice.  Any changes to the pricing will not affect the Subscriber's current subscription period and will become effective upon subscription renewal." | "Your subscription will automatically renew via the same payment method at the prevailing renewal price (currently 116.95 USD) every 12 months until canceled." |

-17-

| Renewal date | "My subscription will renew on Apr 25, 2025." | "By default, the renewal term is for the same duration as the billing term for the original subscription." | "**PLAN** … 12 months." "Your subscription will automatically renew … every 12 months." |
|---|---|---|---|
| Initial price | "12-Month Plan … $99.95 . . . Order Total: $99.95" | "A full list of subscription plans and pricing is available on the Site." | "You received our introductory price of 99.95 USD." |

In the face of these numerous, clearly-written, and highly visible disclosures, no reasonable consumer would be misled into thinking they were purchasing anything other than an autorenewing subscription.  Because this fact is evident from plaintiff's own pleading and exhibits, Rule 12(b)(6) dismissal is appropriate.  *See generally Walkingeagle v. Google, LLC*, 2024 WL 4379734, at *1 (9th Cir. Oct. 3, 2024) ("[A] question of fact can be resolved on a motion to dismiss when clear and conspicuous disclosures are evident in the pleadings, such that no reasonable jury could find otherwise" under the ARL.).  Put differently, where—as here—the plaintiff's allegations of consumer deception are "not plausible" in light of the "undisputed" content of the defendant's disclosures, a CLRA action is appropriately dismissed on the pleadings.  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).

**B.    Plaintiff Also Fails to Satisfy Rule 9(b) Heightened Pleading**

Because his CLRA claim sounds in fraud, plaintiff must satisfy the heightened pleading standard of Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA."); *Tan v. Quick Box, LLC*, 2020 WL 7226440, at *25 (S.D. Cal. Dec. 8, 2020) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." (cleaned up)).  Given that he fails to satisfy even the basic Rule 12(b)(6) pleading standard, *see Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1010 (S.D. Cal.

-18-

2020) ("The Court . . . need not accept as true . . . allegations contradicting the exhibits attached to the complaint."), plaintiff plainly also fails to satisfy the heightened particularity standard of Rule 9(b), *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) ("If insufficiently pled averments of fraud are disregarded, as they must be, in a complaint or claim grounded in fraud, there is effectively nothing left of the complaint.").

## III.   PLAINTIFF'S CLAIM SHOULD BE DISMISSED WITH PREJUDICE

The Court should dismiss plaintiff's claim without leave to amend, as any amendment would be futile. Particularly because the relevant disclosures are appended as exhibits to (or otherwise incorporated by reference in) the SAC and are properly evaluated on this motion, there is no set of facts plaintiff could plead to overcome the simple reality that ExpressVPN conspicuously, explicitly, and repeatedly disclosed its policies respecting automatic renewal before, during, and after plaintiff made his purchase. There is therefore no pleading plaintiff could offer that would satisfy the CLRA's reasonable consumer test. *See Argueta v. Henkel Corp.*, 793 F. Supp. 3d 1192, 1201 (C.D. Cal. 2024) (dismissing CLRA claim without leave to amend because court had concluded that defendant's disclosures could not "deceive a reasonable consumer as a matter of law"). "No amount of additionally pleaded facts could change the features" of ExpressVPN's automatic renewal disclosures—such as its express and unequivocal disclosure in the TOS that "plans renew automatically by default." Ex. 1; *Macaspac v. Henkel Corp.*, 2018 WL 2539595, at *6 (S.D. Cal. June 4, 2018).

-19-

## CONCLUSION

For the foregoing reasons, the Court should dismiss Mr. Marin's CLRA claim with prejudice for failure to state a claim upon which relief can be granted.

DATED:  March 20, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Stephen A. Broome
    Stephen A. Broome (Cal. Bar No. 314605)
    stephenbroome@quinnemanuel.com
    John W. Baumann (Cal. Bar No. 288881)
    jackbaumann@quinnemanuel.com
    Rex N. Alley (Cal. Bar No. 346525)
    rexalley@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
    Facsimile:   (213) 443-3100

    Nicolas G. Keller (N.Y. Bar No. 5549522)*
    nicolaskeller@quinnemanuel.com
    295 5th Avenue, 9th Floor
    New York, New York 10016
    Tel:  (212) 849-7000
    Fax:  (212) 849-7100
    (*Admitted *Pro Hac Vice*)

    *Attorneys for Defendant*

-20-

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for defendant Express Technologies Ltd., certifies that this brief contains 5,414 words, which complies with the word limit of L.R. 11-6.1.

DATED:  March 20, 2026

*/s/ Stephen A. Broome*
Stephen A. Broome

-21-